**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT FIREFIGHTERS' PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCURY SYSTEMS, INC., MARK ASLETT, and MICHAEL RUPPERT,<br><br>Defendants. | Case No. 1:23-cv-13065-WGY<br><br>CLASS ACTION |

**MEMORANDUM IN SUPPORT OF WISCONSIN**
**LABORERS' PENSION FUND'S MOTION FOR APPOINTMENT**
**AS LEAD PLAINTIFF, AND APPOINTMENT OF LEAD COUNSEL**

1

## INTRODUCTION

Before this Court is a securities class action brought on behalf of purchasers of Mercury Systems, Inc. ("Mercury" or the "Company") common stock between December 7, 2020 and June 23, 2023, inclusive (the "Class Period"), which alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Wisconsin Laborers' Pension Fund, ("Wisconsin Laborers") hereby moves this Court for an order: (i) appointing Wisconsin Laborers as Lead Plaintiff; and (ii) approving its selection of Block & Leviton LLP to serve as Lead Counsel.

This motion is made on the grounds that Wisconsin Laborers is the most adequate plaintiff as defined by the PSLRA because it believes it possesses the largest financial interest in the relief sought by the class, having lost $67,821.64 on its purchases of Mercury Systems shares. Wisconsin Laborers claims are also typical of the claims of the putative class, and it will fairly and adequately represent the interests of the class. Wisconsin Laborers is, therefore, the presumptive Lead Plaintiff.

Accordingly, the Court should appoint Wisconsin Laborers as Lead Plaintiff and approve Block & Leviton as Lead Counsel.

## FACTUAL BACKGROUND[1]

Mercury Systems is a technology company that produces component modules and subsystems for its clients in the aerospace and defense industries. Mercury acquired numerous

---

[1] The facts are taken from the Complaint that was filed in *North Collier Fire Control and Rescue District Firefighters' Pension Plan v. Mercury Systems, Inc., et al.,* No. 1:23-cv-13065-WGY (ECF No. 1).

companies both prior to and during the Class Period and used improper revenue recognition practices to hide its inability to generate organic growth from investors.

Throughout the Class Period, Mercury Systems prioritized generating $1 billion in revenue and set to achieve this goal through its numerous acquisitions coupled with improper revenue recognition practices to artificially inflate its financial results to maintain the appearance of being on track to achieve the $1 billion revenue goal.

Mercury Systems allowed itself a greater degree of revenue recognition subjectivity by transitioning from "point-in-time" to "long-term contracts." This switch allowed Mercury Systems to pull forward long-term contract revenues to bolster short-term financial results. However, unbeknownst to investors, those revenues were unsustainable and led to Mercury having inflated unbilled receivables and working capital. The Company blamed this on supply chain issues without alerting investors of the accounting transition or the true issues causing these increases.

Mercury's acquisition of Physical Optics Corporation in December 2020 was highly touted and Mercury assured investors that everything was going well with the integration, withholding from investors that the acquisition had negatively impacted the value of Physical Optics Corporation. Mercury also misled investors about its "1IMPACT" strategic growth initiative that was introduced to investors on August 3, 2021. Instead of increasing margins and adjusted EBITDA as promised to investors by Mercury, 1MPACT was used to conceal various regular expenses as restructuring costs.

A Glasshouse Research short report issued on July 26, 2022 highlighted some of Mercury's struggles. The Glasshouse Report revealed to investors that Mercury had overstated organic growth, the Physical Optics Corporation acquisition had destroyed value and been used to obscure Mercury's financial results, 1MPACT was a failure, and Mercury had prematurely recognized

revenue to inflate both revenue and earnings. Mercury's share price fell 7.8% on July 26, 2022 following the release of the Glasshouse short report.

Over the next several quarters Mercury continued providing investors with an unclear picture of the Company's true financial condition. On January 31, 2023, Mercury reported 2Q '23 financial results, missing guidance for both adjusted EBIDTA and adjusted EPS. That same day, Mercury announced that Defendant Ruppert would be stepping down as CFO. Then on May 2, 2023, Mercury reported 3Q '23 financial results in which it reported a GAAP net loss and slashed its fiscal year 2023 guidance. On this news, Mercury's share price fell $7.84 per share, or 17.3% on May 3, 2023.

After the market closed on June 23, 2023, Mercury announced leadership changes of its President, CEO, and Board of Directors. Mercury also disclosed that its recent strategic review did not result in a sale of the Company. One analyst stated that Mercury not being acquired raised doubts about the strength of the underlying EBIDTA and noted the potential for significant restructuring. On this news, shares of Mercury fell $3.37, or 9.6% on June 26, 2023.

## ARGUMENT

I.    **THE COURT SHOULD APPOINT WISCONSIN LABORERS AS LEAD PLAINTIFF.**

### A. The Procedure Required by the PSLRA

The PSLRA established a procedure governing the appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) & (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice (*i.e.*,

today, February 12, 2024), any person who is a member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) & (B).

*Second*, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the members of the class the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is "the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. Wisconsin Laborers Has Timely Moved for Lead Plaintiff Appointment

Pursuant to the provisions of the PSLRA and within the required time frame after publication of the notice, Wisconsin Laborers timely moves this Court to be appointed as Lead Plaintiff on behalf of all members of the class. Wisconsin Laborers has signed a certification pursuant to the PLRSA. *See* Block Decl.,[2] Ex. C. Wisconsin Laborers has selected and retained qualified counsel to represent it and the proposed class. *See* Block Decl. Ex. E.

### C. Wisconsin Laborers Has the Largest Financial Interest in the Relief Sought by the Class

Many courts have exercised discretion by applying what are known as the *Olsten-Lax* factors to guide their decisions. The *Olsten-Lax* factors direct a court to consider for each potential

---

[2] References to the "Block Decl." are to the Declaration of Jeffrey C. Block, filed contemporaneously herewith.

lead plaintiff (1) the number of shares purchased; (2) the number of net shares purchased (the difference between shares purchased and shares sold); (3) the total net funds expended (the difference between the amount spent on those shares and the amount received from sale of shares); and (4) the approximate losses suffered. *In re Olsten Corp, Sec. Litig.,* 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax v. First Merch. Acceptance Corp.,* No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug 11, 1997).

During the Class Period, as evidenced by, among other things, Wisconsin Laborers accompanying signed certification and loss chart, Wisconsin Laborers incurred a substantial loss of approximately $67,821.64 on its class period transactions in Mercury Systems securities. *See* Block Decl. Exs. C, D. These losses are calculated using a "Last In First Out" methodology.  At the time of this filing, Wisconsin Laborers believes that it possesses the largest financial interest of any movant seeking lead plaintiff status.

### D.  Wisconsin Laborers Otherwise Satisfies Rule 23

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make "a *prima facie* showing" that it satisfies the adequacy and typicality requirements of Rule 23. *State Univ. Ret. Sys. Of Ill. v. Sonus Networks, Inc.,* 2006 WL 3827441, at *2 (D. Mass. Dec. 27, 2006). Here, Wisconsin Laborers clearly satisfies both requirements.

Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all Class members. *See Local No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.,* 52. F. Supp. 3d 337, 341 (D. Mass. 2014). Wisconsin Laborers satisfies this requirement because similar to other Class members, it purchased Mercury securities during the Class Period at prices that were artificially inflated as a result of Defendants' materially

6

false and misleading statements and suffered damages as a result. *See Sonus,* 2006 WL 3827441, at \*2 (lead plaintiff movant typical when "no indication that the circumstances of its losses are markedly different than those of other class members or are based on a legal theory that is not generally applicable") (citation omitted); *see also* Fed. R. Civ. P. 23(a)(3). As such, Wisconsin Laborers satisfies the typicality requirement of Rule 23.

Wisconsin Laborers also satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the interests of the Class to be fairly and adequately protected, the Lead Plaintiff must possess "common interests and an absence of conflict with the class members" and "plaintiff's attorneys [must be] qualified, experienced, and vigorously able to conduct the litigation." *Vertex*, 52 F. Supp. 3d at 341 (citation omitted); *see also* Fed. R. Civ. P. 23(a)(4). Wisconsin Laborers satisfies these elements because its substantial financial stake in the litigation provides Wisconsin Laborers with the incentive to vigorously represent the interests of the Class. Wisconsin Laborers' interests are aligned with those of the other members of the Class and there are no facts to suggest any actual or potential conflict of interest between Wisconsin Laborers' and other Class members.

Congress's stated purpose in enacting the lead plaintiff provision in the Private Securities Litigation Reform Act of 1995 ("PSLRA") was to encourage institutional investors to come forward to serve as lead plaintiff under the theory that an institutional investor with substantial losses would have the incentive to negotiate with class counsel, in turn increasing the percentage of any recovery awarded to the class. Additionally, Congress expected institutions to play an oversight role, ensuring that class counsel vigorously pursued claims on behalf of the class. (17 C.F.R. § 240.10b-5).

Because Wisconsin Laborers is the presumptive "most adequate plaintiff" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), and no competing movant can rebut that presumption, the Could should appoint Wisconsin Laborers as Lead Plaintiff.

**II.    THE COURT SHOULD APPOINT WISCONSIN LABORERS CHOICE OF COUNSEL**

Under the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). Wisconsin Laborers has selected Block & Leviton, a firm with substantial experience in the prosecution of shareholder and securities class actions to serve as lead counsel. Block Decl. Ex. E. As noted by one district court:

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation (N.D. Cal.)*. I find the experience garnered from such representations will benefit the shareholder in this suit.

*Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21). Accordingly, the Court should approve Wisconsin Laborers selection of Block & Leviton as lead counsel.

**CONCLUSION**

For the foregoing reasons, Wisconsin Laborers respectfully requests that the Court: (i) appoint it as Lead Plaintiff in the Action; and (ii) approve its selection of Lead Counsel as set forth herein.

8

Dated: February 12, 2024

Respectfully submitted,

<table>
<tr><td>

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Jeffrey C. Block*
Jeffrey C. Block

</td></tr>
</table>

/s/ *Jeffrey C. Block*
**BLOCK & LEVITON LLP**
Jeffrey C. Block (BBO# 600747)
Jacob A. Walker (BBO# 688074)
260 Franklin St, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com

*Attorney for Wisconsin Laborers' Pension Fund and Proposed Lead Counsel*

## STATEMENT PURSUANT TO LOCAL RULE 7.1(a)(2)

Local Rule 7.1(a)(2) generally requires counsel to "certify that they have conferred and have attempted in good faith to resolve or narrow the issue" before a motion is filed. Wisconsin Laborers' Pension Fund respectfully seek relief from this requirement. Under the PSLRA, all motions seeking appointment as Lead Plaintiff must be filed 60 days after notice of the action is published—in this case, February 12, 2024. *See* 15 U.S.C. § 78u-4(a)(3)(A). However, here, no lead plaintiff motions were filed prior to February 12, 2024. Thus, it was not possible for counsel for Wisconsin Laborers' Pension Fund to identify or approach any competing movants.