UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT FIREFIGHTERS' PENSION PLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCURY SYSTEMS, INC., MARK ASLETT, and MICHAEL RUPPERT,<br><br>Defendants. | Case No. 1:23-cv-13065-WGY<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL** |

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT..................................................................................... 1

II.    FACTUAL BACKGROUND ...................................................................................... 1

III.    ARGUMENT............................................................................................................... 3

    A.    UPR SHOULD BE APPOINTED LEAD PLAINTIFF ........................................ 3

        1.    The Lead Plaintiff Procedures Required by the PSLRA............................ 3

        2.    UPR Satisfies the PSLRA's Lead Plaintiff Requirements ......................... 4

            a.    UPR Filed a Timely Motion to Serve as Class Representative....... 4

            b.    UPR Has the Requisite Financial Interest in the Relief Sought by the Class....................................................................................................... 5

            c.    UPR Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure.................................................................... 6

            d.    UPR Is Not Subject to Unique Defenses ........................................ 7

    B.    The Court Should Approve UPR's Choice of Lead Counsel................................. 8

IV.    CONCLUSION............................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**

*Elas v. Prince*,
2024 WL 278220 (D. Mass. Jan. 25, 2024) ............................................................. 5

*Godinez v. Alere Inc.*,
No. 1:16-cv-10766 (PBS), ECF No. 286 (D. Mass. June 6, 2019) ...................................... 8

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) ........................................................................ 8

*In re CBL & Associates Properties, Inc. Securities Litigation*,
No. 1:19-cv-00181-JRG-CHS, ECF No. 229 (E.D. Tenn. Aug. 23, 2023) ........................ 8

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ................................................................. 6, 7

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................... 5

*Leavitt v. Alnylam Pharms., Inc.*,
378 F. Supp. 3d 60 (D. Mass. 2019) .................................................................... 5

*Leech v. Brooks Automation, Inc.*,
2006 WL 3690736 (D. Mass. Dec. 13, 2006) ........................................................ 8

*Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*,
52 F. Supp. 3d 337 (D. Mass. 2014) ................................................................. 6, 7

*Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*,
1:16-md-02742-PKC, ECF No. 708 (S.D.N.Y. Feb. 25, 2020) .................................... 8

*Utesch v. Lannett Co., Inc.*,
2021 WL 3560949 (E.D. Pa. Aug. 12, 2021), *aff'd sub nom. Univ. of Puerto Rico Ret.
Sys. v. Lannett Co.*, 2023 WL 2985120 (3d Cir. Apr. 18, 2023) .................................. 7, 8

**Statutes, Rules, and Regulations**

15 U.S.C. §78j(b) (Section 10(b)) ....................................................................... 1, 8

15 U.S.C. §78t(a) ......................................................................................... 1, 8

15 U.S.C. §78u-4(a)(1) ...................................................................................... 3

15 U.S.C. §78u-4(a)(2) ...................................................................................... 5

15 U.S.C. §78u-4(a)(3)(A) .................................................................................. 4

15 U.S.C. §78u-4(a)(3)(A)(i) ................................................................................................ 4

15 U.S.C. §78u-4(a)(3)(B) ............................................................................................... 4, 8

15 U.S.C. §78u-4(a)(3)(B)(iii) ........................................................................................ 4, 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(aa) ..................................................................................... 4

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ................................................................................. 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ................................................................................. 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) ...................................................................................... 8

17 C.F.R. §240.10b-5 (SEC Rule 10b-5) ....................................................................... 1, 8

Fed. R. Civ. P. 23 ...................................................................................................... 1, 4, 6, 7

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 6

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 6

## I.      PRELIMINARY STATEMENT

The above-captioned securities class action lawsuit asserts claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5, on behalf of all persons and entities (the "Class") that purchased or otherwise acquired the common stock of Mercury Systems, Inc. ("Mercury" or the "Company") between December 7, 2020 and June 23, 2023, inclusive (the "Class Period").  The Private Securities Litigation Reform Act of 1995 (the "PSLRA") instructs district courts to appoint a lead plaintiff and establishes the process by which the Court should do so.

Here, the University of Puerto Rico Retirement System ("UPR") respectfully submits that it is presumptively the most adequate plaintiffs in this case because it filed a timely motion in response to a notice, has the largest financial interest in the outcome of this litigation, satisfies the requirements of Federal Rule of Civil Procedure 23, and is not subject to any unique defenses.  In addition, URP's selection of Abraham, Fruchter & Twersky, LLP ("AF&T") as lead counsel for the putative Class and Cera LLP as liaison counsel for the putative Class is reasonable and should be approved.

## II.     FACTUAL BACKGROUND

Mercury, a technology company headquartered in Andover, Massachusetts, delivers modules and subsystems to the global aerospace and defense industry.  ¶23.[1]  Before the Class Period, Mercury's business model was based on a mergers and acquisition ("M&A") roll-up

---

[1] This factual background section is drawn from the Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") filed in the Action as ECF No. 1.  Citations taking the form "¶_" are to the Complaint's allegations.

1

strategy focused on the defense electronics market. Mercury claimed that this strategy helped it build scale and expand its capabilities and technological breadth. ¶24.

The Complaint alleges that, throughout the Class Period, Mercury, its former Chief Executive Officer ("CEO") Mark Aslett, and its former Chief Financial Officer ("CFO") Michael Ruppert (collectively, "Defendants") failed to disclose that: (a) Mercury's serial acquiror strategy was not working and the Company was using improper revenue recognition practices to mask deteriorating organic growth; (b) the Company's December 2020 acquisition of Physical Optics Corporation ("POC") would cause POC to lose its small business accreditation, preventing POC from winning contracts that made up a large portion of its historical business; (c) Mercury had at least twenty programs that were suffering and not performing well; and, (d) as result, Mercury's statements about its financial performance and its ability to meet its lofty projections were based on false assumptions. ¶¶32, 36, 38, 40, 42, 44, 46, 48, 51.

The Complaint further alleges that the truth about Mercury's scheme was partially revealed on July 26, 2022, when Glasshouse Research initiated coverage of Mercury with a report (the "Glasshouse Report") entitled "Roll-Up Mercury Systems Set to Unravel" giving the Company's common stock a strong sell rating. ¶53. In response to the Glasshouse Report, the price of the Company's common stock fell $4.87 per share, or 7.8%, to close at $57.26 per share. ¶58. Defendants, however, continued concealing the full scope of the Company's problems and, among other things, projected accelerating growth and profitability during 2023. ¶¶59-60.

On May 2, 2023, Mercury reported its third quarter 2023 financial results, slashing its full-year 2023 guidance such that it was predicting a net loss of $19.0 million to $11.1 million, lowered from a prior projection of net income of $13.9 million to $24.8 million. ¶61. On May 3, 2023, on this news, the price of the Company's common stock plummeted $7.84 per share, or 17.3%, to

close at $37.44 per share. *Id.* The Company also disclosed that approximately twelve of its active programs had been negatively affected by higher costs related to labor and supply chain inefficiencies, manufacturing constraints, and inflation, but Defendants continued downplaying these issues, claiming that they were "not unique to Mercury" and that "structurally, [Mercury's] business model and financial outlook are sound." ¶62.

After markets closed on June 23, 2023, Mercury disclosed that a recent strategic review of acquisition alternatives did not result in the sale of the Company and announced a series of changes to leadership and its Board of Directors. ¶64. On June 26, 2023, on this news, Mercury's share price fell an additional $3.37 per share, or 9.6%, to close at $31.50 per share. ¶64.

On August 15, 2023, Mercury disclosed its fourth quarter 2023 financial results, missing its $1 billion revenue target, as well as significant shortfalls in net earnings and EBITDA. ¶65. Mercury's new CEO, William Ballhaus, explained that the Company "didn't fully integrate some of the businesses [it acquired] and mature processes and management systems to align with Mercury's evolving business portfolio" resulting in "serious challenges … forecasting business performance over the past several quarters[,]" and essentially confirming several assertions of the Glasshouse Report. ¶¶65, 66.

## III.   ARGUMENT

### A.   UPR SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1.   The Lead Plaintiff Procedures Required by the PSLRA

The PSLRA establishes a procedure governing the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). *First*, within twenty days of a complaint being filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of

3

the action, the claims asserted therein, and the purported class period" and "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). *Second*, within 60 days after publication of the notice, any person who is a member of the proposed class may apply to the Court to be appointed as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). *Third*, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). UPR meets these requirements and should be appointed Lead Plaintiff.

### 2.      UPR Satisfies the PSLRA's Lead Plaintiff Requirements

#### a.      UPR Filed a Timely Motion to Serve as Class Representative

The December 13, 2023 statutory notice published in connection with, and on the day of, the Complaint's filing advised putative Class members of the pendency of the action, the claims asserted, and the right to move the Court to be appointed as lead plaintiff within 60 days (*i.e.*, by February 12, 2024). *See* Levit Decl., Ex. A.[2] By filing a timely motion in response to the notice within sixty days of its publication, UPR satisfies the first statutory requirement for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(aa).

---

[2]      References to "Levit Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of Lawrence D. Levit in Support of UPR's Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel.

The PSLRA separately requires persons applying to be lead plaintiff to file a sworn certification making certain attestations. *See* 15 U.S.C. §78u-4(a)(2). In connection with the instant motion, UPR submits a signed certification (the "Certification") attesting, among other things, that it is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. B. Accordingly, UPR satisfies the first requirement to serve as Lead Plaintiff of the Class.

> **b.      UPR Has the Requisite Financial Interest in the Relief Sought by the Class**

The PSLRA requires courts to "adopt a [rebuttable] presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that … in the determination of the court, has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. §78u-4(a)(3)(B)(iii). "While the PSLRA does not provide a methodology for determining which putative class member has the largest financial interest, many courts have considered '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period'" with the last factor being the most important. *Elas v. Prince*, 2024 WL 278220, at \*2 (D. Mass. Jan. 25, 2024) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64 (D. Mass. 2019)).

As of the time of the filing of this motion, UPR believes that it has the largest financial interest of any of the lead plaintiff movants based on the four applicable factors articulated by, inter alia, *Elas*, *supra*. During the Class Period, UPR: (1) purchased 15,200 shares of Mercury common stock; (2) expended $996,045.25 on its purchases of Mercury common stock; (3) had net purchases of 15,200 shares of Mercury common stock; and (4) suffered a loss of approximately

$439,874.21 in connection with its Class Period purchases of Mercury common stock. *See* Levit Decl. Exs. B, C. Because UPR possesses the largest financial interest in the outcome of this litigation, it is presumed to be the "most adequate" plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

      **c.**      **UPR Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

The PSLRA requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. Those findings need only be 'preliminary.'" *Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*, 52 F. Supp. 3d 337, 341 (D. Mass. 2014) ("*Vertex*") (citation omitted).

Rule 23's typicality requirement requires the claims or defenses of the representative parties to be typical of those of the Class. Fed. R. Civ. P. 23(a)(3). Typicality exists where the plaintiff's claims "arise from the same course of events and involve the same legal theory as to the claims of the rest of the class." *Vertex*, 52 F. Supp. 3d at 341 (citing *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001)). UPR meets this requirement because, like all other Class members, it purchased Mercury's common stock in reliance upon Defendants' allegedly materially false and misleading statements and suffered damages when the truth was disclosed. Thus, UPR's claims are typical of those of other Class members because the claims of UPR, like the claims of each Class member, arise out of the same events and are based on the same legal theories.

Rule 23's adequacy requirement requires the representative parties to fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). A plaintiff is "capable of adequately protecting the interests of the class" if it "possesses 'common interests and an absence of conflict

with the class members" and has retained counsel that is "qualified, experienced, and vigorously able to conduct the litigation.'" *Vertex*, 52 F. Supp. 3d at 341 (citing *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d at 46). UPR is an adequate representative of the Class because its interest in the Action is aligned and not in conflict with the interests of the Class. UPR also amply demonstrates, through its Certification, its ability and willingness to serve as lead plaintiff, confirming that it is willing to serve as a representative party, and to provide testimony at deposition and at trial. *See* Levit Decl., Ex. B. In fact, while this Court's review is only preliminary at this point, UPR was recently certified as a class representative in an analogous federal securities class action, over defendants' opposition, with the Third Circuit very recently affirming that decision. *See Utesch v. Lannett Co., Inc.,* 2021 WL 3560949 (E.D. Pa. Aug. 12, 2021), *aff'd sub nom. Univ. of Puerto Rico Ret. Sys. v. Lannett Co.*, 2023 WL 2985120 (3d Cir. Apr. 18, 2023). Here, there is no antagonism between UPR's interests and those of the Class, and UPR's losses demonstrate that it has a sufficient interest in the outcome of this litigation to adequately protect the Class's interests.

Finally, as explained below, UPR selected experienced and qualified counsel, further evidencing its ability to represent the Class's interests fairly and competently. UPR, therefore, satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### d.      UPR Is Not Subject to Unique Defenses

The presumption in favor of appointing UPR as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that it:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

7

15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  UPR is unaware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.

### B.   The Court Should Approve UPR's Choice of Lead Counsel

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. §78u-4(a)(3)(B)(v).  "Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class."  *Leech v. Brooks Automation, Inc.*, 2006 WL 3690736, at *4 (D. Mass. Dec. 13, 2006) (citing *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005)).  UPR has selected and retained AF&T to serve as Lead Counsel and Cera LLP to serve as Liaison Counsel.

AF&T has the commitment and ability to serve as Lead Counsel because it has extensive experience and is highly competent in prosecuting similar actions. *See, e.g.*, *Utesch*, 2021 WL 3560949, at *4 (holding, in a case brought pursuant to Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, that "Plaintiffs have established that [AF&T] is qualified, experienced, and generally able to conduct the proposed litigation") (internal quotation marks omitted).  AF&T has successfully prosecuted numerous securities fraud class actions, in this Circuit and nationwide, including: *Godinez v. Alere Inc.*, No. 1:16-cv-10766 (PBS), ECF No. 286 (D. Mass. June 6, 2019), in which AF&T achieved a $20 million settlement; *In re CBL & Associates Properties, Inc. Securities Litigation*, No. 1:19-cv-00181-JRG-CHS, ECF No. 229 (E.D. Tenn. Aug. 23, 2023), in which AF&T served as co-lead counsel in a case that settled for $17.5 million despite the issuer having declared bankruptcy; and *Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*, 1:16-md-02742-PKC, ECF No. 708 (S.D.N.Y. Feb. 25, 2020), in which AF&T acted as sole lead counsel in securing a $48.75 million settlement.  AF&T's firm resume, further detailing its extensive

experience and indisputable competence, is submitted for the Court's convenience.  *See* Levit Decl., Ex. D.

At UPR's request, Cera LLP, a law firm with substantial experience in this District and nationwide experience with securities class action litigation, has agreed to act as Liaison Counsel on behalf of the putative Class. Cera LLP's firm resume, further detailing its extensive experience and indisputable competence, is submitted for the Court's convenience.  *See* Levit Decl., Ex. E.

## IV.    CONCLUSION

For the reasons set forth herein, UPR respectfully requests that the Court: (i) appoint UPR as Lead Plaintiff; (ii) approve UPR's selection of AF&T to serve as Lead Counsel and Cera LLP as Liaison Counsel for the Class; and (iii) grant such further relief as the Court may deem just and proper.

Dated: February 12, 2024

By:  /s/  C. Andrew Dirksen
C. Andrew Dirksen
**CERA LLP**
529 Main St., Suite P200
Boston, MA 02129
Telephone: (857) 453-6555
Email: cdirksen@cerallp.com

Mitchell M.Z. Twersky
Atara Twersky
Lawrence D. Levit
Michael J. Klein
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
450 7th Avenue, 38th Floor
New York, New York 10123
Telephone: (212) 279-5050
Email: mtwersky@aftlaw.com
        atwersky@aftlaw.com
        llevit@aftlaw.com
        mklein@aftlaw.com

## Certificate of Service

I hereby certify that this document(s) filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on February 12, 2024.

/s/ C. Andrew Dirksen

C. Andrew Dirksen