UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORTH COLLIER FIRE CONTROL AND :
RESCUE DISTRICT FIREFIGHTERS'
PENSION PLAN, individually and on behalf of :
all others similarly situated,

                             :

            Plaintiff,                Civil Action
                           :     No. 23-13065-WGY

      v.

                           :

MERCURY SYSTEMS, INC., MARK
ASLETT, MICHAEL RUPPERT, WILLIAM L. :
BALLHAUS, and DAVID E. FARNSWORTH,

                             :

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

James R. Carroll
Nigel Tamton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
nigel.tamton@skadden.com

Susan L. Saltzstein (*pro hac vice pending*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
 (212) 735-3000
susan.saltzstein@skadden.com

*Counsel for Defendants*
*Mercury Systems, Inc., Mark Aslett,*
*Michael Ruppert, William Ballhaus*
*and David Farnsworth*

Dated:  May 24, 2024

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT BACKGROUND ....................................................................................................3

 A. Mercury Grew Its Business, In Part, Through Multiple
   Acquisitions, While Warning Investors That It Faced Risks
   Regarding Its Ability To Successfully Integrate Those Acquisitions.....................3

 B. In 2023, Defendants Aslett And Ruppert Left Mercury And Were
   Replaced In Their Roles By Defendants Ballhaus And Farnsworth........................4

 C. The Complaint ...................................................................................................5

ARGUMENT....................................................................................................................6

I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS
  TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS ....................6

 A. The "Full Integration" Statements
   Are Not Actionable As A Matter Of Law..............................................................7

   1. The Complaint Mischaracterizes The "Full Integration" Statements..........7

   2. Defendants' References To "Full Integration" Would Not
     Have Been Material Or Misleading To A Reasonable Investor ..................8

   3. The Complaint Fails To Adequately Allege That The "Full
     Integration" Statements Were False Or Misleading When Made..............10

 B. The Challenged Statements Regarding Mercury's Financial
   Performance And Outlook Are Not Actionable As A Matter Of Law ..................12

   1. Defendants' Forward-Looking Statements
     Are Protected Under The PSLRA Safe Harbor ........................................12

   2. Defendants' Statements Of Opinion Are Non-Actionable ........................14

   3. The Complaint Fails To Adequately Allege That The Performance
     And Outlook Statements Were False Or Misleading When Made............14

 C. Defendants Had No Duty To Disclose Additional
   Information Regarding Mercury's Integration Efforts .........................................15

II.    THE COMPLAINT SHOULD BE DISMISSED IN
ITS ENTIRETY BECAUSE IT DOES NOT ALLEGE SPECIFIC
FACTS SUPPORTING A "STRONG INFERENCE" OF SCIENTER ............................16

    A.    The Complaint's Scattershot Circumstantial
Allegations Do Not Support A Strong Inference Of Scienter ...............................16

    B.    A Nonculpable Inference Is More
Compelling Than An Inference Of Scienter ..........................................................20

III.    COUNT II SHOULD BE DISMISSED BECAUSE
THERE IS NO PREDICATE EXCHANGE ACT VIOLATION ...................................20

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                                                **PAGE(S)**

*ACA Financial Guaranty Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008)........................................................................................6, 20

*Born v. Quad/Graphics, Inc.*,
    521 F. Supp. 3d 469 (S.D.N.Y. 2021).............................................................................10

*In re Boston Technology, Inc. Securities Litigation*,
    8 F. Supp. 2d 43 (D. Mass. 1998) ...................................................................................16

*Carney v. Cambridge Technology Partners, Inc.*,
    135 F. Supp. 2d 235 (D. Mass. 2001) ..............................................................................17

*Chun v. Fluor Corp.*,
    No. 3:18-CV-01338-X, 2021 WL 1788626 (N.D. Tex. May 5, 2021)................................7

*Corban v. Sarepta Therapeutics, Inc.*,
    No. 14-cv-10201-IT, 2015 WL 1505693 (D. Mass. Mar. 31, 2015), *aff'd*, 868
    F.3d 31 (1st Cir. 2017)....................................................................................................14

*Corban v. Sarepta Therapeutics, Inc.*,
    868 F.3d 31 (1st Cir. 2017)..............................................................................................18

*Ezra Charitable Trust v. Tyco International, Ltd.*,
    466 F.3d 1 (1st Cir. 2006)................................................................................................19

*In re Fed Ex Corp. Securities Litigation*,
    517 F. Supp. 3d 216, 236 (S.D.N.Y. 2021) ......................................................................9

*Fitzer v. Security Dynamics Technologies, Inc.*,
    119 F. Supp. 2d 12 (D. Mass. 2000) ...........................................................................8, 10

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999).......................................................................................10, 14

*Hensley v. Imprivata, Inc.*,
    260 F. Supp. 3d 101 (D. Mass. 2017) ...........................................................................8, 9

*Hill v. Gozani*,
    638 F.3d 40 (1st Cir. 2011)..............................................................................................12

*Holbrook v. Trivago N.V.*,
    17 Civ. 8348 (NRB), 2019 WL 948809 (S.D.N.Y. Feb. 26, 2019), *aff'd sub nom.*
    *Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019)..................................................20

*Local No. 8 IBEW Retirement Plan & Trust v. Vertex Pharmaceuticals, Inc.*,
    838 F.3d 76 (1st Cir. 2016) ................................................................................18

*LSI Design & Integration Corp. v. Tesaro, Inc.*,
    No. 18-cv-12352-LTS, 2019 WL 5967994 (D. Mass. Nov. 13, 2019) ...............16

*Metzler Asset Management GmbH v. Kingsley*,
    305 F. Supp. 3d 181 (D. Mass. 2018), *aff'd*, 928 F.3d 151 (1st Cir. 2019) .......19

*Metzler Asset Management GmbH v. Kingsley*,
    928 F.3d 151 (1st Cir. 2019) .................................................................................6

*Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*,
    523 F.3d 75 (1st Cir. 2008) ...................................................................................8

*In re Molycorp, Inc. Securities Litigation*,
    No. 13 Civ. 5697(PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ...........19

*In re Nokia Corp. Securities Litigation*,
    No. 19-CV-3509, 2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021) ................9, 11

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ..............................................................................................8

*Pizzuto v. Homology Medicines, Inc.*,
    No. 1:23-CV-10858-AK, 2024 WL 1436025 (D. Mass. Mar. 31, 2024) ...........9

*Ponsa-Rabell v. Santander Securities LLC*,
    35 F.4th 26 (1st Cir. 2022) ..................................................................................15

*In re Peritus Software Servs., Inc. Securities Litigation*,
    52 F. Supp. 2d 211 (D. Mass. 1999) .................................................................8, 9

*In re Praecis Pharmaceuticals, Inc. Securities Litigation*,
    No. 04-12581-GAO, 2007 WL 951695 (D. Mass. Mar. 28, 2007) ...................13

*In re Psychemedics Corp. Securities Litigation*,
    No. 17-10186-RGS, 2017 WL 5159212 (D. Mass. Nov. 7, 2017) ....................18

*In re Razorfish, Inc. Securities Litigation*,
    No. 00 CIV. 9474 (JSR), 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001) .......8, 9, 11

*Schaeffer v. Horizon Pharma PLC*,
    No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ..............14

*Simon v. Abiomed, Inc.*,
    37 F. Supp. 3d 499 (D. Mass. 2014), *aff'd sub nom. Fire & Police Pension Ass'n
    of Colorado v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015) .............................19

*Tabor v. Bodisen Biotech, Inc.*,
     579 F. Supp. 2d 438 (S.D.N.Y. 2008).................................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007).....................................................................................................3, 20

*Tharp v. Acacia Communications, Inc.*,
     321 F. Supp. 3d 206 (D. Mass. 2018).............................................................................13

*Van Ormer v. Aspen Technology, Inc.*,
     145 F. Supp. 2d 101 (D. Mass. 2000).........................................................................9, 12

*Whitehead v. Inotek Pharmaceuticals Corp.*,
     No. 17-cv-10025-LTS, 2018 WL 4732774 (D. Mass. Jun. 27, 2018)..............................16

*Yan v. ReWalk Robotics Ltd.*,
     973 F.3d 22 (1st Cir. 2020)..............................................................................................9

## STATUTES

15 U.S.C. § 78t(a) .................................................................................................................20

15 U.S.C. § 78u-4(b)(1)(B)......................................................................................................6

15 U.S.C. § 78u-4(b)(2)(A)...........................................................................................6, 16, 17

15 U.S.C. § 78u-5(i)(1) ..........................................................................................................12

15 U.S.C. §§ 78a-78rr ..............................................................................................................1

17 C.F.R. § 240.10b-5...............................................................................................................1

## RULES & REGULATIONS

Fed. R. Civ. P. 9(b) .............................................................................................................2, 6

Fed. R. Civ. P. 12(b)(6)............................................................................................................2

## PRELIMINARY STATEMENT

Mercury Systems, Inc. ("Mercury") is a technology company that manufactures complex products and subsystems that the Company sells to the U.S. government, prime defense contractors and commercial firms.  Like many businesses, Mercury grew over time, in part, by acquiring other entities.  Rather than maintain acquired businesses as separate divisions, Mercury's strategy has been to integrate its acquisitions, such as by moving them to common enterprise resource planning, customer relationship management, engineering and human resource platforms, and by consolidating facilities.  At the same time, and at all relevant times, Mercury also warned investors that it faced risks regarding its "ability to successfully integrate acquisitions," which analysts flagged as a perseverant risk to Mercury's outlook.

At several junctures between 2022 and 2024, Mercury disclosed information that led to declines in the Company's share price, including news of reduced financial projections and news that an attempt to explore options to sell the Company did not result in a sale.  Most recently, on February 6, 2024, the Company announced a reduction to projections due in part to challenges stemming from an unexpected manufacturing process change affecting multiple of Mercury's programs that utilize a common processing architecture.

From these facts (and nothing else), Plaintiffs attempt to conjure a securities fraud case.  The Complaint[1] lacks any allegations based on so-called "confidential witness" testimony.  There are no allegations based on internal documents or other non-public material.  There are no references to any related government investigations (of which there are none).  And there are no allegations of any stock trades by the Defendants that would support an inference of scienter.

The Complaint asserts violations of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a *et seq.*) and Rule 10b-5 (17 C.F.R. § 240.10b-5) against Mercury, Mark Aslett,

---

[1]    "AC" and "Complaint" refer to the Amended Class Action Complaint, ECF No. 57.

Michael Ruppert, William Ballhaus and David Farnsworth.  The Complaint principally alleges that Defendants misled the market by claiming Mercury had "fully integrated every acquisition made by Mercury before and during the Class Period" and by "concealing the negative impact to Mercury's financial performance caused by their failure to fully integrate."  (AC ¶¶ 3, 58.)

However, the Complaint fails to meet the pleading requirements for a securities fraud suit.  Pursuant to the Private Securities Litigation Reform Act (the "PSLRA") and Rules 12(b)(6) and 9(b), the Complaint should be dismissed for two independently dispositive reasons:

*First,* none of the statements challenged in the Complaint are actionable.[2]  As a threshold matter, the Complaint overstates much of what Defendants actually said—claiming Defendants' statements that Mercury "fully integrated" acquired businesses and that its "full integration" strategy was working well somehow "left no doubt that the Company had fully integrated *every acquisition*" made during the relevant time.  (*Id.* ¶¶ 52-58 (emphasis added).) Securities fraud claims cannot rest on such mischaracterizations.  Further, Defendants' statements regarding "full integration" were simply optimistic remarks that could not be material and misleading to reasonable investors. And moreover, Plaintiffs fail to plead, as they must, that any of the challenged statements were false or misleading *when they were made*.  Several of the challenged statements are also independently non-actionable because they are statements of opinion or protected forward-looking statements.

*Second,* Plaintiffs fail to adequately plead particularized facts supporting a "strong inference" of scienter.  Lacking any "confidential witness" allegations or other non-public material uncovered via Plaintiffs' referenced "investigation," the Complaint points to nothing showing Defendants had specific contradictory information available at the time they

---

[2]    Exhibit A attached hereto lists the challenged statements, contextual statements that precede or follow them, and the reasons the challenged statements are not actionable.

made the challenged statements.  The Complaint relies on conjecture instead of particularized facts to allege scienter.  Dismissal is warranted as a result.

## RELEVANT BACKGROUND[3]

**A.    Mercury Grew Its Business, In Part, Through Multiple Acquisitions, While Warning Investors That It Faced Risks Regarding Its Ability To Successfully Integrate Those Acquisitions**

Mercury is a technology company that manufactures products and subsystems that it sells to the U.S. government, prime defense contractors and commercial firms.  (AC ¶¶ 43, 44.) Before and during the Class Period,[4] Mercury grew its business, in part, by acquiring other companies.  (*Id.* ¶¶ 45, 47.)  Rather than maintain acquisitions as separate divisions, Mercury sought to integrate its acquired businesses with its own.  (*Id.* ¶ 50.)  As publicly described by Mr. Aslett, Mercury integrated acquisitions "by moving them to common collaboration and engineering platforms as well as common ERP [Enterprise Resource Planning], HRIS [Human Resource Information Systems] and CRM [Customer Relationship Management] systems while also consolidating facilities," and unifying business "under the Mercury brand with the combined sales force and single go-to-market strategy as well as the shared culture and values." (*Id.* ¶ 181.)

Both before and throughout the Class Period, Mercury warned investors that there were risks associated with its growth strategy.  In its 2021 Annual Report publicly filed on August 17, 2021, Mercury identified numerous "Risks Related to Our Growth Strategy," including that "our ability to successfully integrate acquisitions . . . could have a material adverse effect on our business, financial condition, and results of operations."  (Tab 6 at 21-22 (2021

---

[3]    Defendants treat the factual allegations in the Complaint as true solely for purposes of this Motion.  In describing the relevant facts, Defendants rely on documents referenced in the Complaint and of which the Court may take judicial notice, including public records and analyst reports.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  Copies of pertinent documents are included in the Appendix Of Public Records (cited as "Tab __").

[4]    The "Class Period" is defined as February 3, 2021 to February 6, 2024.  (*Id.* ¶ 1.)

3

Form 10-K).)  Mercury made substantively identical risk disclosures in its 2022 and 2023 Annual Reports.  (Tab 8 at 23 (2022 Form 10-K); Tab 10 at 22 (2023 Form 10-K).)

Analysts reporting on Mercury throughout the Class Period noted that Mercury's ability to successfully integrate its acquisitions posed a risk to the Company.  In a February 3, 2021 report issued on the first day of the Class Period, William Blair identified "uncertainty regarding ability to continue to integrate acquisitions" as one of the three "[p]rimary risks for Mercury's stock."  (Tab 28 at 2 (2/3/21 Report).)  William Blair reemphasized this risk through the Class Period.  (*See* Tabs 29-40 (Reports dated 6/2/21 (cited at AC ¶ 57); 11/2/21, 5/3/22, 6/9/22, 11/1/22, 2/1/23, 5/3/23, 6/26/23, 6/29/23, 8/16/23, 11/8/23, 2/7/24 (cited at AC ¶ 163)).)

## B.   In 2023, Defendants Aslett And Ruppert Left Mercury And Were Replaced In Their Roles By Defendants Ballhaus And Farnsworth

At the beginning of the Class Period, Mr. Aslett was Mercury's CEO and Mr. Ruppert was its CFO.  (AC ¶¶ 32, 33.)  On August 2, 2022, the Company announced financial results and disclosed that Mercury was facing challenges attributable to supply chain issues—which the Complaint refers to as a "partial corrective disclosure."  (*Id.* ¶¶ 102, 103.)

On January 31, 2023, the Company then announced that Mercury's Board had approved a plan to explore a potential sale of the Company and that Mr. Ruppert was resigning. (*Id.* ¶¶ 127, 128.)  On May 2, 2023, Mercury announced financial results, a reduction in its financial guidance, and execution challenges affecting a dozen of its programs—which the Complaint refers to as another "partial corrective disclosure." (*Id.* ¶¶ 102, 107.)

On June 23, 2023, Mercury announced that it was concluding its sale process and Mr. Aslett was resigning.  (*Id.* ¶¶ 130, 132.)  Mr. Ballhaus became Mercury's CEO on June 24, 2023.  (*Id.* ¶ 34.)  Mr. Farnsworth became CFO on July 17, 2023.  (*Id.* ¶ 35.)

On August 15, 2023, Mercury conducted its first earnings call with Mr. Ballhaus

4

as CEO.  (*Id.* ¶ 137.)  On that call, Mr. Ballhaus commented that among his "initial impressions" at that time was that, "over the past several years, the company grew inorganically into strategically attractive areas, but didn't fully integrate some of the businesses."  (*Id.*)  Mr. Ballhaus said that, despite this issue, "the majority of our business is performing well."  (*Id.*)

On November 7, 2023, Mercury announced financial results and temporary profit and loss impacts stemming from certain contracts—referred to as another "partial corrective disclosure" in the Complaint.  (*Id.* ¶¶ 18, 21, 151.)  On February 6, 2024, Mercury reported financial results, a reduction in guidance, and challenges stemming from an unexpected manufacturing process change affecting multiple Mercury programs that utilize a common processing architecture.  (*Id.* ¶¶ 158-61; Tab 24 at 5 (2/6/2024 Transcript).)  On this news, Mercury's share price fell approximately 11.4%, to a trading price roughly 65% below where the stock traded at the beginning of the Class Period.  (AC ¶ 165.)

### C.    The Complaint

The initial complaint was filed on December 13, 2023, and alleged claims against Mercury, Mr. Aslett and Mr. Ruppert based primarily on purported "improper revenue recognition practices" and the withholding of information regarding Mercury's acquisition of Physical Optics Corporation.  (*See* ECF No. 1 ¶¶ 2, 4.)  The amended complaint was filed on April 18, 2024, and the allegations of improper revenue recognition were abandoned.

The amended complaint adds two new Defendants (Mr. Ballhaus and Mr. Farnsworth), shifts the putative class period, drops all allegations regarding "improper revenue recognition practices" and contains but one passing mention of Physical Optics Corporation.  (*See generally* AC.)  The amended complaint principally alleges that Defendants misled the market by falsely claiming Mercury had "fully integrated every acquisition made by Mercury before and during the Class Period," and by "concealing the negative impact to

5

Mercury's financial performance caused by their failure to fully integrate."  (AC ¶¶ 3, 58.)

Notably, the Complaint claims Plaintiffs conducted an "investigation," but does not include any reference to any non-public information or so-called "confidential witness" testimony uncovered during that investigation that supports Plaintiffs' allegations.  (AC, Preamble.)  Rather, the Complaint largely consists of block quotations from Mercury earnings calls and public SEC filings, analyst reports and conference transcripts.[5]

## ARGUMENT

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5(b), Plaintiffs must plead (i) a material misrepresentation or omission; (ii) scienter; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation. *Metzler Asset Mgmt. GmbH v. Kingsley*, 928 F.3d 151, 158 (1st Cir. 2019).  *See also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008).

Securities fraud pleadings are also subject to the rigorous pleading requirements of Rule 9(b) and the PSLRA.  Rule 9(b) requires that the circumstances constituting the alleged fraud be stated "with particularity."  Fed. R. Civ. P. 9(b).  Under the PSLRA, Plaintiffs must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1)(B).  Plaintiffs must also allege with particularity specific facts giving rise to a "strong inference" of scienter.  *Id.* § 78u-4(b)(2)(A).

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS

The Complaint challenges statements that fall into two categories, regarding

---

[5]    While the Complaint does not assert claims based on purported improper revenue recognition practices, it contains numerous paragraphs regarding Mercury's use of over time revenue recognition (*e.g.*, AC ¶¶ 63-82).  The Complaint asserts nothing new on this score.  Mercury publicly disclosed its use of over time revenue recognition (*e.g.*, *id.* ¶ 72) and the relationship between its revenue and operating cash flow.  Indeed, all of the information included in the chart within Paragraph 81 of the Complaint comes from Mercury public filings.  (*See* Tabs 1-5, 7, 11 (Press Releases dated 8/15/23, 8/2/22, 8/3/21, 8/4/20, 7/30/19, 7/31/18, 8/1/17).)

references to either (a) "full integration" or (b) Mercury's financial performance and outlook. None are actionable.  (*See* Ex. A.)

### A.    The "Full Integration" Statements Are Not Actionable As A Matter Of Law

The first category of challenged statements are statements by Mr. Aslett and Mr. Ruppert in the February 2, 2021 to January 31, 2023 timeframe, referring to Mercury's strategy of "fully integrating" the businesses it acquired.  (AC ¶¶ 169, 171, 173, 175, 177, 179, 181, 183, 187, 189.)  These statements are non-actionable for multiple reasons.

#### 1.    The Complaint Mischaracterizes The "Full Integration" Statements

As an initial matter, a securities fraud complaint cannot rest on mischaracterized statements.  *See Chun v. Fluor Corp.*, No. 3:18-CV-01338-X, 2021 WL 1788626, at *7 (N.D. Tex. May 5, 2021) (holding statements not false or misleading where plaintiff mischaracterized statements or defendants "never said" what plaintiff alleged).

The Complaint alleges Defendants misled the market by claiming Mercury "fully integrated every acquisition made by Mercury before and during the Class Period."  (AC ¶ 58.) But the majority of Defendants' statements referring to "full integration" said no such thing. Defendants stated Mercury was in the process of "fully integrat-*ing*" acquisitions (*id.* ¶¶ 169, 171, 175, 177, 179), that *some* of Mercury's acquisitions had been "fully integrated" (*id.* ¶¶ 173, 187, 189), and that acquisitions had been "integrated" (*id.* ¶ 183 (not using the word "fully")).

The Complaint mischaracterizes those statements in an effort to paint them as false.  In truth, those statements do not say Mercury had *fully and successfully integrated every* acquisition made before and during the Class Period.  For that reason alone, Plaintiffs' claims based on those statements should be dismissed.  *See Chun*, 2021 WL 1788626, at *7.

7

### 2.    Defendants' References To "Full Integration" Would Not Have Been Material Or Misleading To A Reasonable Investor

The litmus test for whether a statement is material or misleading under the securities laws is whether a reasonable investor would find it to be so.  *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 85 (1st Cir. 2008); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).  In this case, no reasonable investor could have found Defendants' references to "full integration" to be either material or misleading:

***First***, general statements of corporate optimism are immaterial as a matter of law. *See Fitzer v. Sec. Dynamics Techs., Inc.*, 119 F. Supp. 2d 12, 23 (D. Mass. 2000) (Young, J.) (dismissing; noting statements of "loose optimism" are non-actionable).  Courts have regularly found that comments regarding the status of a company's integration efforts are non-actionable statements of optimism.  For example, in *In re Razorfish, Inc. Sec. Litig.*, plaintiffs alleged securities fraud claims based on statements that an integration was "successful" and "complete." No. 00 CIV. 9474 (JSR), 2001 WL 1111502, at \*1 (S.D.N.Y. Sept. 21, 2001).  The court rejected those claims and dismissed the complaint, finding that "'integration' is far too loose and uncertain a term on which to premise a claim of securities fraud in this context."  *Id.* at \*2 (citing cases).  Similarly, in *Hensley v. Imprivata, Inc.*, plaintiffs alleged that a CEO's comment that an integration was "going on plan, on target" was an actionable misstatement "because the integration was actually 'a complete nightmare.'"  260 F. Supp. 3d 101, 125 (D. Mass. 2017). Dismissing the complaint, the court held that *even if* the remark was assumed to be a misrepresentation made with scienter, the CEO's statement touting the status of his company's integration efforts was an immaterial "rosy affirmation" that could not support a claim.  *Id.* at 126.  *See also In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 227-29 (D. Mass. 1999) (dismissing; statement that integration "has been a success" was "exactly the type of

8

'rosy affirmation' frequently held nonactionable under the corporate puffery doctrine"); *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 236 (S.D.N.Y. 2021) (dismissing; statements that "touted the progress of integration" are nonactionable optimism); *In re Nokia Corp. Sec. Litig.*, Nos. 19-cv-3509, 19-cv-3982, 2021 WL 1199030, at \*17 (S.D.N.Y. Mar. 29, 2021) (same).

So too here.  Reasonable investors would have understood that the integration of technology companies is complex, cannot be done perfectly, and that Defendants' references to "full integration" were statements of optimism.  Like the statements in *Razorfish, Hensley, Peritus, Fed Ex* and *Nokia*, those statements cannot support a claim.[6]

***Second,*** statements that do not significantly alter the total mix of information available to investors—including relevant risk disclosures—are not actionable.  *See Pizzuto v. Homology Meds., Inc.*, No. 1:23-CV-10858-AK, 2024 WL 1436025, at \*12 (D. Mass. Mar. 31, 2024) (dismissing; challenged statements did not alter total mix of information on topic that was a subject of company risk disclosures).  Here, Mercury specifically identified "our ability to successfully integrate acquisitions" as a risk throughout the Class Period.  (*See* Relevant Background § A.)  Defendants' references to "full integration" could not have misled any reasonable investor into believing Mercury had perfectly completed all possible integration tasks, when at the same time, Mercury warned the market it faced risks regarding its "ability to successfully integrate acquisitions."  *See Van Ormer v. Aspen Tech., Inc.*, 145 F. Supp. 2d 101, 106 (D. Mass. 2000) (dismissing claims challenging optimistic statements about a merger where defendant "specifically warned about the potential for integration problems").

Indeed, investors were not misled.  Throughout the Class Period, analysts specifically flagged "uncertainty regarding ability to continue to integrate acquisitions" as one of

---

[6]     The Complaint states that "full integration of an acquisition is binary and not a matter of degree," but this Court is not required to assume the truth of such conclusory and counterfactual claims.  *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 30-31 (1st Cir. 2020) ("disregarding conclusory allegations" in evaluating motion to dismiss).

the "[p]rimary risks for Mercury's stock." (*See* Relevant Background § A.)  The fact that analysts readily understood that Defendants' references to "full integration" were optimistic in nature and did not signify that Mercury had perfectly completed all possible integration tasks further demonstrates that the "full integration" statements are non-actionable.  *See Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 485-86 (S.D.N.Y. 2021) (dismissing; "[t]he Court's inability to infer that the statements were misleading is bolstered by contemporaneous statements by market analysts," showing they "readily understood" the statements in their proper context).

### 3.    The Complaint Fails To Adequately Allege That The "Full Integration" Statements Were False Or Misleading When Made

A complaint must plead specific facts showing challenged statements were false or misleading when made.  *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193-94 (1st Cir. 1999).  In this regard, it is typically not enough for a complaint to rely on allegations of "fraud by hindsight"—the theory that a statement must have been false when made because it was later shown to be untrue.  *E.g.*, *Fitzer*, 119 F. Supp. 2d at 20-21, 24 (dismissing; plaintiff could not "use simple hindsight" to infer a problem later disclosed must have been known before).

Here, the Complaint does not point to *any* contemporaneous information showing that the challenged statements were false or misleading when made.  For instance, there are zero allegations that internal documents or testimony from percipient witnesses show Defendants' references to "full integration" contradicted specific information existing at the time Defendants made those remarks.  Instead, the Complaint relies *exclusively* on allegations of "fraud by hindsight," claiming that an August 2023 comment by new CEO Mr. Ballhaus—where he said it was his "impression" at that time that Mercury "didn't fully integrate some of the businesses" it acquired—constitutes an "admission" demonstrating "Mercury had not fully integrated the Company's acquisitions during the Class Period."  (AC ¶¶ 83, 137.)  That does not work.

10

Mr. Ballhaus's August 2023 comment cannot be used to show the falsity of Defendants' references to "full integration" months and years earlier. Among other things, Mr. Ballhaus's comment does not identify any specifics with respect to the perceived integration issues he referenced, including *when* those issues might have occurred. Of course, if Mercury had experienced integration issues *after* Defendants' "full integration" statements, that would have no bearing on the veracity of those statements when made. Further, as noted above, integration of technology companies is a complex process, and the conditions of an integration process may change over time. That an integration was at one point perceived to be "not full" does not mean it could not have been properly characterized earlier as "full." Different individuals could also have different views of what "full integration" means. *See Razorfish*, 2001 WL 1111502, at *2 (describing "integration" as a "loose and uncertain" term).

Also, in a February 1, 2022 statement, Mr. Aslett expanded on what *he* meant by "full integration," explaining that at that time, Mercury had "fully integrated . . . acquired entities by moving them to common collaboration and engineering platforms as well as common ERP, HRIS and CRM systems while also consolidating facilities," and by unifying business "under the Mercury brand with the combined sales force and single go-to market strategy as well as the shared culture and values." (AC ¶ 181.) The Complaint contains *no allegations* asserting Mercury did not do any of those things, and thus pleads no particularized facts that show that statement—or any statement referencing "full integration"—was false when made. *Razorfish*, 2001 WL 1111502, at *2 (dismissing where plaintiffs did not allege facts contradicting specific integration activities described in statements); *Nokia*, 2021 WL 1199030, at *17 (same).

In sum, the Complaint cannot rely on Mr. Balhaus's August 2023 comment to generally allege "fraud by hindsight." But that is all the Complaint has to offer. It is not enough.

11

*See Aspen Tech.*, 145 F. Supp. 2d at 106 (rejecting "fraud by hindsight" allegations).

**B.      The Challenged Statements Regarding Mercury's Financial Performance And Outlook Are Not Actionable As A Matter Of Law**

The second category of statements challenged in the Complaint are statements by Defendants regarding Mercury's financial performance and outlook at various times (AC ¶¶ 185, 191, 195, 198, 200), through which the Complaint asserts Defendants "conceal[ed] the negative impact to Mercury's financial performance caused by their failure to fully integrate" Mercury's acquisitions (*id.* ¶ 3). These statements are also non-actionable for multiple reasons.

**1.      Defendants' Forward-Looking Statements Are Protected Under The PSLRA Safe Harbor**

The PSLRA defines forward-looking statements to include (i) projections of revenue, income or earnings, (ii) management plans and objectives, (iii) statements of future economic performance and (iv) statements concerning the assumptions underlying the foregoing. 15 U.S.C. § 78u-5(i)(1)(A)-(D).  Under the PSLRA's safe harbor, a forward-looking statement cannot be a basis for a Section 10(b) claim if it is "not made with knowledge of falsity" or if "the statement itself is identified as forward-looking and is accompanied by 'meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'" *Hill v. Gozani*, 638 F.3d 40, 54 (1st Cir. 2011).  All of the statements regarding Mercury's financial performance and outlook fall under the safe harbor.

***First***, all of the statements concerned financial projections (*e.g.*, AC ¶ 200), management plans, future economic performance (*e.g.*, *id.* ¶¶ 185, 191, 195, 198, 200), or the assumptions underlying those matters (*e.g.*, *id.* ¶ 191 (describing recent challenges as "not unique to Mercury" as a basis for assumptions regarding future economic performance); ¶ 195 (discussing historical margin profile and "unanticipated" and "temporary" nature of program challenges as a basis for assumptions regarding future economic performance)).  They thus fall

12

within the PSLRA's definition of "forward-looking" statements.

   ***Second***, all of the challenged statements were made in publicly filed Form 8-Ks (*e.g.*, *id.* ¶¶ 191, 200) or on Company earnings calls (*e.g.*, *id.* ¶¶ 185, 191, 195, 198, 200), and were accompanied by meaningful cautionary language.  Each relevant Form 8-K advised that the statements therein may "involve risks and uncertainties that could cause actual results to differ materially from those projected or anticipated," and listed many factors that could impact results, including "challenges in integrating acquired businesses and achieving anticipated synergies." (Tab 9, Ex. 99.1 at 6 (5/2/2023 Form 8-K); Tab 12, Ex. 99.1 at 5 (11/7/2023 Form 8-K).) Similarly, each relevant earnings call began with a warning that statements made on the calls "are subject to future risks and uncertainties that could cause [ ] actual results or performance to differ materially," and should be considered in conjunction with the risks disclosed in Mercury's public filings.  (Tab 18 at 4 (8/2/2022 Earnings Call); Tab 21 at 4 (5/2/2023 Earnings Call); Tab 22 at 4 (8/15/2023 Earnings Call); Tab 23 at 4 (11/7/2023 Earnings Call).)  In those filings, Mercury listed many factors that could impact its business, including "our ability to successfully integrate acquisitions."  (*See* Relevant Background § A.)

   Thus, in conjunction with Defendants' forward-looking statements, Mercury cautioned investors of the very risks that Plaintiffs claim materialized—impacts to Mercury's performance due to integration issues.[7]  The Complaint's claims based on those statements fail. *See Tharp v. Acacia Commc'ns, Inc.*, 321 F. Supp. 3d 206, 223, 226 (D. Mass. 2018) (Young, J.) (dismissing; "Defendants are not liable for 'forward-looking statements'").

---

[7] Even if the cautionary language that accompanied Defendants' forward-looking statements was found to be lacking, for the reasons discussed in Argument § II, the forward-looking statements are still non-actionable because the Complaint fails to adequately allege the statements were made with "knowledge of falsity."  *See In re Praecis Pharm., Inc. Sec. Litig.*, No. 04-12581-GAO, 2007 WL 951695, at *9 (D. Mass. Mar. 28, 2007) (dismissing).

### 2.    Defendants' Statements Of Opinion Are Non-Actionable

Statements of opinion or belief are not actionable unless it is alleged "that (1) the company's opinions were both objectively and subjectively false . . . (2) self-embedded facts within the opinion are untrue, or (3) 'material facts about the [opinion holder's] inquiry into or knowledge concerning a statement of opinion' were omitted." *Corban v. Sarepta Therapeutics, Inc.*, No. 14-cv-10201-IT, 2015 WL 1505693, at *6 (D. Mass. Mar. 31, 2015) (dismissing), *aff'd*, 868 F.3d 31 (1st Cir. 2017).  Multiple of the challenged statements regarding Mercury's financial performance and outlook are statements of opinion (*e.g.*, AC ¶ 185 ("we think . . ."); *id.* ¶ 191 ("We expect . . ."); *id.* ¶ 195 ("here are my initial impressions and takeaways . . .")).  The Complaint does not allege with particularity that any of Defendants' opinions were insincerely held, that self-embedded facts within the opinions were untrue, or that any material facts concerning the opinion-holder's knowledge were omitted. Claims based on Defendants' opinion statements should be dismissed on that basis.  *See Schaeffer v. Horizon Pharma PLC,* No. 16-CV-1763 (JMF), 2018 WL 481883, at *10 (S.D.N.Y. Jan. 18, 2018) (dismissing; statements such as "I think," "we believe" and "we expect" "qualify as inactionable opinions").

### 3.    The Complaint Fails To Adequately Allege That The Performance And Outlook Statements Were False Or Misleading When Made

Plaintiffs are required to plead *particularized facts* showing the challenged statements were false or misleading when made.  *Greebel*, 194 F.3d at 194-95.  The Complaint generally alleges that Defendants' descriptions of Mercury's performance and outlook were false or misleading because they failed to account for purported integration issues.  (*See* AC ¶ 168.) But the Complaint does not allege *what* specific integration issues existed at the time of the challenged statements that rendered the challenged statements false or misleading.

For example, the Complaint does not allege any *specifics* showing Mr. Aslett's

14

August 2, 2022 statement that "we think [unbilled receivables] will unwind" was false or misleading—it simply claims Mercury's unbilled receivables would not unwind "because the Company had failed to fully integrate Mercury's acquisitions." (*Id.* ¶¶ 185-86.)  Similarly, the Complaint alleges no *specifics* showing that Defendants' reiteration of Mercury's guidance on November 7, 2023 was false or misleading—it only asserts that the "failure to fully integrate" made the guidance unachievable. (*Id.* ¶¶ 200-01.)  That is insufficient. *See Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 452-53 (S.D.N.Y. 2008) (dismissing; plaintiffs failed to plead falsity where they did not explain "how the statements were false, but instead rely on vague and conclusory statements that are not supported by any specific factual allegations").

### C. Defendants Had No Duty To Disclose Additional Information Regarding Mercury's Integration Efforts

The Complaint alludes to claims based on purported "omissions regarding Mercury's full integration" of companies it acquired. (*E.g.*, AC ¶ 168.)  In order to "get past 'go'" on an omissions claim, Plaintiffs must "identify a statement made by defendants, show how the omission rendered that statement misleading, and finally establish that there was a duty to disclose the omitted information." *Ponsa-Rabell v. Santander Sec. LLC*, 35 F.4th 26, 34 (1st Cir. 2022) (affirming dismissal).  The Complaint fails to get past go.  Defendants had no duty to disclose any more information than they did concerning Mercury's integration efforts.

Throughout the Class Period, Mercury disclosed risks relating to "our ability to successfully integrate acquisitions." (*See* Relevant Background § A.)  Investors were warned of possible integration issues, and none of the challenged statements created any duty to disclose more.  As noted in Argument § I.A.2, Defendants' references to "full integration" were the sort of optimistic remarks that could not have misled reasonable investors into believing Mercury had perfectly completed all possible integration tasks, in contravention to Mercury's risk disclosures.

15

Accordingly, there are no actionable omissions.  *See In re Bos. Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d 43, 63 (D. Mass. 1998) (dismissing; alleged omissions were non-actionable where purportedly omitted information was "obvious to a reasonable investor").

## II.   THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE IT DOES NOT ALLEGE SPECIFIC FACTS SUPPORTING A "STRONG INFERENCE" OF SCIENTER

Scienter is a "conscious intent to defraud" or "a high degree of recklessness," meaning "not merely simple, or even inexcusable[ ] negligence, but an extreme departure from the standards of ordinary care."  *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 44 (D. Mass. 2016), *aff'd*, 857 F.3d 34 (1st Cir. 2017).  Plaintiffs must plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" "with respect to each act or omission."  15 U.S.C. § 78u-4(b)(2)(A).  "To qualify as 'strong,' 'an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  *LSI Design & Integration Corp. v. Tesaro, Inc.*, No. 18-cv-12352-LTS, 2019 WL 5967994, at *3 (D. Mass. Nov. 13, 2019). Assessing scienter, courts "must weigh not only inferences urged by the plaintiff but also competing inferences rationally drawn from the facts alleged."  *Whitehead v. Inotek Pharms. Corp.*, No. 17-cv-10025-LTS, 2018 WL 4732774, at *3 (D. Mass. June 27, 2018).

Here, the Complaint falls far short of meeting its pleading burden.  There are no facts supporting a strong inference of scienter; a nonculpable inference is far more compelling.

### A.   The Complaint's Scattershot Circumstantial Allegations Do Not Support A Strong Inference Of Scienter

Lacking "confidential witness" allegations or any other factual allegations showing Defendants knew or had access to contradictory information when they made the challenged statements, the Complaint relies on a scattershot approach to attempt to plead

16

scienter.  That approach fails—each species of scienter allegation in the Complaint is flawed:

*Status And Access.*  The Complaint alleges that because of Defendants' "positions with the Company," they must have had access to some unspecified "adverse undisclosed information about Mercury's business."  (AC ¶ 37.  *See also id. ¶¶* 38, 40, 203-07.) In the same vein, the Complaint asserts that because Defendants at times stated they were personally involved with various aspects of Mercury's business, they must have been aware of some unspecified information that contradicted the challenged statements.  (*E.g.*, *id. ¶¶* 86-101, 141-45, 208-09.)  However, "[a]ttempts to plead scienter by general allusions to unspecified corporate information are insufficient to withstand a motion to dismiss."  *Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 255 (D. Mass. 2001) (dismissing; rejecting allegations that "because of their positions," defendants must have known information at odds with public statements).  The Complaint does not point to a single piece of specific information that Defendants had access to at the time of their challenged statements, which would render those statements false or misleading.[8]  The Complaint's generalized allegations regarding Defendants' status and access to information do not remedy that failure.

*Core Operations.*  The Complaint suggests that because the topics of the challenged statements were important to Mercury, Defendants must have known of some information on those topics that contradicted their statements.  (*E.g.*, AC ¶¶ 86-101, 205.)  While it "is true that the importance of a particular item to a defendant can support an inference that the defendant is 'paying close attention' to that item," simply pointing out that a topic is important is not enough—a plaintiff must still point to some *specific information* regarding that topic

---

[8]    The Complaint repeatedly lumps the Defendants—who held different roles at Mercury at different times— together in attempting to plead scienter.  (*E.g.*, AC ¶¶ 202-12).  Allegations that are not specific to individual Defendants or specific time periods do not meet the mandates of the PSLRA, which require Plaintiffs to plead "particularized facts giving rise to a strong inference" of scienter "*with respect to each*" alleged misstatement.  15 U.S.C. § 78u-4(b)(2)(A) (emphasis added).

17

that defendants may have seen, which shows the challenged statements were false or misleading when made. *See Loc. No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharm., Inc.*, 838 F.3d 76, 82-83 (1st Cir. 2016) (affirming dismissal where plaintiff failed to allege specific facts showing that defendant's "close attention" to a topic "would have revealed an incongruity").  The Complaint here does not identify any such specific information, and thus does not benefit from simply pointing out that the challenged statements addressed important topics.[9]  *See In re Psychemedics Corp. Sec. Litig.*, No. 17-10186-RGS, 2017 WL 5159212, at *6 (D. Mass. Nov. 7, 2017) (dismissing; "core operations" allegations do not give rise to inference of scienter where "'core operations' theory stands naked, unadorned by any other piece of evidence").

> ***Generalized Financial Motivations.***  The Complaint asserts that Defendants were financially motivated to commit fraud because it was their goal to increase Mercury's revenue (AC ¶ 60), obtain equity awards (*id.* ¶ 123), sell the Company (*id.*), and because Mr. Aslett was purportedly motivated to obtain personal benefits "at all times"—as somehow evidenced by his later request for certain severance payments following his resignation (*id.* ¶ 135).  But it is well-settled that "[i]t is not enough for a plaintiff to point to 'the ever present desire to improve results' . . .  as supporting a motive to commit fraud, particularly when it is a common practice for executive compensation to be linked to performance." *Psychemedics*, 2017 WL 5159212, at *7. *See also Corban v. Sarepta Therapeutics, Inc.*, 868 F.3d 31, 41 (1st Cir. 2017) (citing cases).  The Complaint does nothing to specifically tie Defendants' financial motivations to the purported fraud.  The Complaint also lacks any allegations that Defendants sold shares of Mercury stock.  Thus the Complaint's allegations concerning Defendants' obvious interest in

---

[9]    The Complaint's lengthy descriptions of Mercury's revenue recognition practices, based entirely on publicly disclosed information (*see* Relevant Background § C), do not show that Defendants were aware of any specific facts that contradicted their public statements.  On the contrary, those allegations illustrate that Mercury publicly disclosed the very issue about which Plaintiffs complain—the alleged impact to Mercury's finances from acquired businesses that used over time revenue recognition—and thus *negate* any inference of scienter.

18

their own financial success do nothing to support an inference of scienter.

*Resignations.*   The Complaint claims that the fact and timing of Mr. Aslett's and Mr. Ruppert's resignations in 2023 "supports a strong inference of scienter."  (AC ¶ 210.)  Yet "without factual allegations linking Defendants' resignations to the alleged fraud, the mere fact of the resignations provides no support for a finding of scienter."  *In re Molycorp, Inc. Sec. Litig.*, No. 13 Civ. 5697(PAC), 2015 WL 1097355, at *12 (S.D.N.Y. Mar. 12, 2015) (dismissing).  Because the Complaint does not plead particularized facts showing that Mr. Aslett's or Mr. Ruppert's resignations were connected with the alleged fraud, the allegations concerning their resignations do not help Plaintiffs show scienter.  *See Metzler Asset Mgmt. GmbH v. Kingsley*, 305 F. Supp. 3d 181, 219 (D. Mass. 2018) (dismissing; resignation allegations did not support inference of scienter where complaint did not plead with particularity that resignation was connected to alleged fraud), *aff'd*, 928 F.3d 151 (1st Cir. 2019).

*"Fraud By Hindsight."*   The Complaint also alleges that Mr. Ballhaus's August 2023 comment that Mercury "didn't fully integrate some of the businesses" it had acquired means that Defendants earlier "knew, or recklessly disregarded, that Mercury had not fully integrated the Company's acquisitions during the Class Period."  (AC ¶¶ 83, 137.)  Just as the Complaint cannot plead the falsity prong of their claims by hindsight, they cannot plead the scienter element by hindsight either.  *See Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 6 (1st Cir. 2006) (affirming dismissal; "Pleading 'fraud by hindsight,' essentially making general allegations 'that defendants knew earlier what later turned out badly,' is not sufficient").

In sum, the Complaint's scattershot circumstantial allegations fail to support the required "strong inference" of scienter needed.  Thus dismissal is warranted.  *See Simon v. Abiomed, Inc.*, 37 F. Supp. 3d 499, 524 (D. Mass. 2014) (dismissing; even allegations of scienter

19

that are "plausible" and "reasonable" but not "compelling" do not state a claim), *aff'd sub nom. Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015).

### B.  A Nonculpable Inference Is More Compelling Than An Inference Of Scienter

An inference of fraudulent intent must be "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  More compelling than any inference of fraud here is that Defendants believed (i) Mercury's integration efforts could be fairly characterized as "full" at the time they made their challenged statements, and fairly believed investors would understand their references to "full integration" in the spirit they were intended, and (ii) that their descriptions of Mercury's performance and outlook were accurate based on information known at the time.  Further, it defies reason to infer Defendants endeavored to mislead the market into believing Mercury had perfectly completed all possible integration tasks, when at the same time, Mercury disclosed risks regarding its "ability to successfully integrate acquisitions." *See Holbrook v. Trivago N.V.*, No. 17 Civ. 8348(NRB), 2019 WL 948809, at *22 (S.D.N.Y. Feb. 26, 2019) (dismissing; "any semblance of an inference of fraudulent intent raised by plaintiffs is rendered implausible by [defendant's] numerous and fulsome disclosures"), *aff'd sub nom. Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019).

### III.  COUNT II SHOULD BE DISMISSED BECAUSE THERE IS NO PREDICATE EXCHANGE ACT VIOLATION

Without a viable primary violation of the Exchange Act, there is no basis to maintain a claim under Section 20(a).  *See* 15 U.S.C. § 78t(a); *ACA Fin.,* 512 F.3d at 67-68. As there is no Exchange Act violation here, there can be no Section 20(a) liability.

### CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted, and the Complaint (ECF No. 57) dismissed with prejudice.

Dated: May 24, 2024                          Respectfully submitted,
      Boston, Massachusetts

                                     /s/ *James R. Carroll*
                                     James R. Carroll (BBO #554426)
                                     Nigel Tamton (BBO #696396)
                                     SKADDEN, ARPS, SLATE,
                                       MEAGHER & FLOM LLP
                                     500 Boylston Street
                                     Boston, Massachusetts 02116
                                     (617) 573-4800
                                     james.carroll@skadden.com
                                     nigel.tamton@skadden.com

                                   Susan L. Saltzstein (*pro hac vice pending*)
                                   SKADDEN, ARPS, SLATE,
                                       MEAGHER & FLOM LLP
                                   One Manhattan West
                                   New York, New York 10001
                                   (212) 735-3000
                                   susan.saltzstein@skadden.com

                                   *Counsel for Defendants*
                                   *Mercury Systems, Inc., Mark Aslett,*
                                   *Michael Ruppert, William Ballhaus*
                                   *and David Farnsworth*

21