UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORTH COLLIER FIRE CONTROL AND   :
RESCUE DISTRICT FIREFIGHTERS'
PENSION PLAN, individually and on behalf of   :
all others similarly situated,

                                          :

                Plaintiff,           Civil Action
                           :     No. 23-13065-WGY

        v.

                           :

MERCURY SYSTEMS, INC., MARK       Leave To File Granted:
ASLETT, MICHAEL RUPPERT, WILLIAM L.   :   March 13, 2024
BALLHAUS, and DAVID E. FARNSWORTH,

                           :

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

James R. Carroll
Nigel Tamton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
nigel.tamton@skadden.com

Susan L. Saltzstein (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000
susan.saltzstein@skadden.com

*Counsel for Defendants*
*Mercury Systems, Inc., Mark Aslett,*
*Michael Ruppert, William Ballhaus*
*and David Farnsworth*

Dated:  July 12, 2024

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

REPLY ARGUMENT ............................................................................................................2

I.      THE OPPOSITION FAILS TO DEMONSTRATE THAT
        ANY OF THE CHALLENGED STATEMENTS ARE ACTIONABLE...........................2

        *The "Full Integration" Statements* ........................................................................2

        A.      The Opposition Mischaracterizes Defendants' Argument
                Concerning The Complaint's Treatment Of Defendants' Statements ....................2

        B.      The Opposition Misses The Mark In Attempting To Rebut
                Defendants' Explanation That The "Full Integration" Statements
                Would Not Have Been Material Or Misleading To Reasonable Investors..............3

        C.      The Opposition Cannot Rely On Mr. Ballhaus's August 2023
                Remark To Demonstrate The Purported Falsity Of Earlier Statements .................6

        *Statements Regarding Mercury's Financial Performance And Outlook* ............................7

        D.      Mr. Aslett And Mr. Ruppert's Challenged Statements
                Concerning Unbilled Receivables Are Not Actionable .........................................7

        E.      Mr. Ballhaus And Mr. Farnsworth's
                Challenged Statements Are Not Actionable ..........................................................10

II.     THE OPPOSITION CANNOT SALVAGE THE
        COMPLAINT'S FAILURE TO ALLEGE SPECIFIC
        FACTS GIVING RISE TO A "STRONG INFERENCE" OF SCIENTER ......................10

        A.      The Opposition Overlooks The Relevant Pleading Standard ...............................10

        B.      The Opposition's Rehashing Of The Scattershot
                Circumstantial Scienter Allegations In The Complaint Is Unavailing .................11

        C.      The Cases Cited In The Opposition
                Only Help Demonstrate That The Complaint
                Should Be Dismissed For Failure To Adequately Allege Scienter........................13

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*In re Allaire Corp. Securities Litigation*,
    224 F. Supp. 2d 319 (D. Mass. 2002) ........................................................................ *passim*

*In re Cabletron Systems, Inc.*,
    311 F.3d 11 (1st Cir. 2002) ........................................................................................14

*Chalverus v. Pegasystems, Inc.*,
    59 F. Supp. 2d 226 (D. Mass. 1999) .........................................................................11, 14

*Childers v. Maloney*,
    247 F. Supp. 2d 32 (D. Mass. 2003) ...........................................................................15

*City of Fort Lauderdale Police & Firefighters' Retirement System v. Pegasystems Inc.*,
    683 F. Supp. 3d 120 (D. Mass. 2023) ...........................................................................7

*Collier v. ModusLink Global Solutions, Inc.*,
    9 F. Supp. 3d 61 (D. Mass. 2014) ..............................................................................13

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*,
    22 F.4th 1 (1st Cir. 2021) ...............................................................................9, 11, 12, 13

*Crowell v. Ionics, Inc.*,
    343 F. Supp. 2d 1 (D. Mass. 2004) .......................................................................11, 12, 14

*Fitzer v. Security Dynamics Technologies, Inc.*,
    119 F. Supp. 2d 12 (D. Mass. 2000) ...........................................................................5

*Galestan v. OneMain Holdings, Inc.*,
    348 F. Supp. 3d 282 (S.D.N.Y. 2018)..........................................................................4, 5

*Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*,
    523 F.3d 75 (1st Cir. 2008)........................................................................................15

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015).................................................................................................9

*Public Employees' Retirement System of Mississippi v. TreeHouse Foods, Inc.*,
    No. 16 C 10632, 2018 WL 844420 (N.D. Ill. Feb. 12, 2018)..............................................4

*In re Quality Systems, Inc. Securities Litigation*,
    865 F.3d 1130 (9th Cir. 2017) ....................................................................................10

*In re Razorfish, Inc. Securities Litigation,*
No. 00 CIV. 9474 (JSR), 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001)............................4

*Roofer's Pension Fund v. Papa,*
No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ....................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd,*
551 U.S. 308 (2007)..................................................................................................10, 11

*In re Sepracor, Inc. Securities Litigation,*
308 F. Supp. 2d 20 (D. Mass. 2004) ...................................................................................9

*In re Smith & Wesson Holding Corp. Securities Litigation,*
604 F. Supp. 2d 332 (D. Mass. 2009) .................................................................................5

*In re Stone & Webster, Inc., Securities Litigation,*
414 F.3d 187 (1st Cir. 2005).............................................................................................14

**Statutes**                                                                         **Page(s)**

15 U.S.C. § 78u-5(i)(1)(A)-(D) ..............................................................................5, 8, 10

## PRELIMINARY STATEMENT[1]

Defendants' Motion demonstrates that the Complaint should be dismissed in full because it does not plead sufficient facts (i) showing that any of the challenged statements are actionable or (ii) supporting the requisite "strong inference" of scienter.  The Opposition responds by mischaracterizing Defendants' arguments and heavily relying on a narrow set of allegations—namely, those pertaining to Mr. Ballhaus's August 2023 comment that as of that time, with the benefit of hindsight, it was his "impression" that Mercury in some way "didn't fully integrate some of [its acquired] businesses" (AC ¶ 137), and Defendants' public statements that over time, they paid attention to Mercury's affairs.  In doing so, the Opposition only confirms that dismissal is warranted.

As to the challenged statements, the Opposition repeatedly mischaracterizes Defendants' arguments and attacks straw men.  Among other things, Defendants did not assert that "statements about integration can *never* be actionable."  (Opp. at 2 (emphasis added).) Rather, Defendants explained that generic statements touting integration efforts, like the challenged "full integration" statements, are regularly held to be nonactionable by courts in the First and Second Circuits.  The same should be held here—particularly where at the same time Defendants made the challenged statements, Mercury publicly disclosed risks related to its integration efforts and investors flagged those risks in their analyses of the Company.

The Opposition's heavy reliance on Mr. Ballhaus's *post hoc* comment does not warrant a different result.  That August 2023 remark regarding a perceived "lack of full

---

[1]    Defendants file this Reply pursuant to the Court's March 13, 2024 Case Management Scheduling Order (ECF No. 48 at 2).  Unless noted otherwise, defined terms herein are used consistent with the definitions provided in Defendants' Memorandum Of Law In Support Of Defendants' Motion To Dismiss The Amended Class Action Complaint (ECF No. 65, the "Motion" or "Mot.").  Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion (ECF No. 71) is referred to as the "Opposition" or "Opp."

integration" did not contradict any of Defendants' earlier statements, including Mr. Aslett's February 2022 statement that Mercury had integrated acquired entities by taking measures such as "moving them to common collaboration and engineering platforms." (AC ¶ 181.) Indeed, the Complaint fails to allege that Mercury did not do those specific things, or that any of Defendants' non-generic statements were false or misleading when made. That failure is fatal.

As to scienter, the Opposition asserts that the Complaint's failure to muster allegations from non-public sources, such as confidential witnesses, is a non-issue. But the Opposition undermines that notion by citing almost exclusively to scienter cases that involved former employee testimony. Those cases only highlight the Complaint's shortcomings.

Lacking specific allegations from such sources, the Opposition merely rehashes the Complaint's scattershot circumstantial claims based on public material, asserting that because Defendants were paying attention to Mercury's affairs, they should have known *something* that contradicted the challenged statements in some way. The Opposition claims Defendants should have known earlier the purported "true status of Mercury's full integration efforts" (Opp. at 16) and of costs associated with certain contracts, but does not identify with *any specificity* what Defendants knew, should have known, or *could have* known that rendered any statement false or misleading when made. The Complaint's attenuated scienter allegations fail for that reason.

## REPLY ARGUMENT

I.   **THE OPPOSITION FAILS TO DEMONSTRATE THAT ANY OF THE CHALLENGED STATEMENTS ARE ACTIONABLE**

-------------------------------------*The "Full Integration" Statements*-------------------------------------

A.   **The Opposition Mischaracterizes Defendants' Argument Concerning The Complaint's Treatment Of Defendants' Statements**

The Opposition asserts Defendants "wrongly argue" that they "*never* stated that Mercury had fully integrated all of its acquisitions." (Opp. at 2 (emphasis added), 9.) But that

2

was not Defendants' argument.  Defendants' Motion asserts that the Complaint mischaracterizes "*the majority of* Defendants' statements referring to full integration," and that claims based on those statements—referring to AC ¶¶ 169, 171, 173, 175, 177, 179, 183, 187 and 189—should be dismissed.[2]  (Mot. at 7 (emphasis added).)

Instead of responding to Defendants' argument regarding *those statements*, the Opposition claims Defendants *once* stated that Mercury had fully integrated all of its acquisitions, and points to *the only* "full integration" statement Defendants did not claim should be dismissed as mischaracterized—AC ¶ 181, Mr. Aslett's statement that Mercury fully integrated acquired businesses by "moving them to common collaboration and engineering platforms," among other things.  (Opp. at 3, 9-10.)  That statement is not actionable for other reasons, but regardless, it certainly cannot be used to show that the Complaint does not mischaracterize other statements.

Those other statements, enumerated above, should be dismissed for the independent reason that they are mischaracterized in the Complaint.  The Opposition's retort to that argument is non-responsive and does nothing to show otherwise.

**B.     The Opposition Misses The Mark In Attempting To Rebut Defendants' Explanation That The "Full Integration" Statements Would Not Have Been Material Or Misleading To Reasonable Investors**

The Opposition raises two other off-base arguments attempting to rebut Defendants' explanation that the challenged "full integration" statements are not actionable.

***First***, the Opposition attacks a straw man in claiming it is Defendants' position that "statements about integration can *never* be actionable."  (Opp. at 2 (emphasis added).)

---

[2]     For example, the Complaint mischaracterizes Mr. Ruppert's lone integration-related statement, where he stated that "[w]e've integrated our acquisitions because that's core to our strategy."  (AC ¶ 183.)  That statement did not reference "full integration" at all and could not have led investors to believe "the Company had fully integrated every acquisition made by Mercury before and during the Class Period" as the Complaint claims.  (*Id.* ¶ 58.)

Defendants said no such thing.  Instead, Defendants explained that courts in the First and Second

Circuits have regularly held that generic statements about a company's integration efforts—like

the "full integration" statements challenged here—are not actionable.  (Mot. at 8-9.)  For

instance, the court in *Razorfish* held that a statement saying an integration was "complete" was

not actionable because "integration" was "too loose and uncertain a term on which to premise a

claim of securities fraud in [that] context."  *In re Razorfish, Inc. Sec. Litig.*, No. 00 CIV. 9474

(JSR), 2001 WL 1111502, at *2 (S.D.N.Y. Sept. 21, 2001).  Calling an integration "complete"

and describing it as "full" are of comparable generic character.  Thus the logic of *Razorfish* and

cases like it applies here.

      For its part, the Opposition cites three out-of-circuit district court cases in support

of its claim that "courts routinely sustain integration statements much less definitive than the full

integration statements challenged in the AC"—*TreeHouse*, *Papa* and *Galestan*.  (Opp. at 10.)

Each of those cases is distinguishable:

    (i)      In *Public Employees' Retirement System of Mississippi v. TreeHouse Foods, Inc.*, No. 16 C 10632, 2018 WL 844420 (N.D. Ill. Feb. 12, 2018), the court found integration statements actionable because evidence before the court actually demonstrated the statements were material to investors.  There, analysts reported on the challenged statements "and often used the same wording as Defendants." *Id.* at *2.  The *opposite* is true in this case where, despite Defendants' references to "full integration," analysts flagged "uncertainty regarding ability to continue to integrate acquisitions" as a risk to Mercury's outlook.  (Mot. at 4.)

    (ii)     In *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018), the court held that certain integration statements were misleading because the complaint alleged, based on information provided by former employees, that there were multiple, specific impediments affecting the integration and "disclosure of the known impediments to successful integration would have significantly altered the total mix of information available to a reasonable investor." *Id.* at 14.  Here, there are no allegations, from former employees or otherwise, of *specific* information that rendered the challenged statements false or misleading when made.

    (iii)     Similarly, in *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282 (S.D.N.Y. 2018), the court held that integration statements were actionable where the

defendants made "specific references" to integration matters, including positive statements about "new loan offerings . . . all while being aware of material productivity and delinquency concerns relating to the new loans that contradicted their public statements." *Id.* at 303. The Opposition is wrong that the challenged statements in *Galestan* were "much less definitive" than the statements challenged here. They were much more specific, and they are distinguishable on that basis.

In sum, none of the cases cited in the Opposition warrant deviating from the logic of those cited in Defendants' Motion, which held that generic "integration" statements are not actionable.[3]

*Second*, the Opposition misses the point of Defendants' reference to Mercury's risk disclosures in connection with Defendants' argument that the "full integration" statements are not actionable. Defendants' Motion explains that Mercury's risk disclosures—which stated that Mercury faced present risks regarding its "ability to successfully integrate acquisitions"— show that the "full integration" statements would not have been material to reasonable investors, as those generic remarks would not have significantly altered the total mix of information available regarding Mercury's integration efforts. (Mot. at 9-10.) Defendants further explained that analyst reports support Defendants' view—as analysts flagged "uncertainty regarding ability to continue to integrate acquisitions" as a risk to Mercury's outlook throughout the Class Period.[4] (*Id.*) Defendants did not invoke the PSLRA safe harbor for forward-looking statements—15 U.S.C. § 78u-5(c)(1)(A)(i)—or a "truth-on-the-market defense" in making this point. The

---

[3]     The Opposition cites *In re Smith & Wesson Holding Corp. Securities Litigation*, 604 F. Supp. 2d 332, 342 (D. Mass. 2009) for the proposition that "only purely forward-looking statements are entitled to protection as 'mere puffery.'" (Opp. at 10.) In relying on that non-binding opinion, the Opposition ignores this Court's holding that "[t]he corporate puffery rule applies to loose optimism about both a company's *current* state of affairs and its future prospects." *Fitzer v. Sec. Dynamics Tech., Inc.*, 119 F. Supp. 2d 12, 23 (D. Mass. 2000) (Young, J.) (emphasis added). In any event, whether the "full integration" statements are protected under the "puffery" doctrine is a secondary technical question. The statements are not actionable because they would not have been material or misleading to a reasonable investor.

[4]     The Opposition suggests that certain declines in Mercury's stock price support an inference that investors were unaware of any risk regarding Mercury's integration efforts. (Opp. at 11 n.7.) That does not work. For one thing, that suggestion presupposes a direct causal connection between the stock drops and alleged integration issues, which there is no evidence to support. Further, even if the stock drops were due to investors' reaction to integration-related issues, that does not mean that investors did not consider integration-related risks beforehand. The more logical inference would be that investors were reacting to the *materialization* of risks.

5

Opposition's response to those phantom arguments is thus inapposite.  (*See* Opp. at 11.)

    **C.**    **The Opposition Cannot Rely On Mr. Ballhaus's August 2023**
        **<u>Remark To Demonstrate The Purported Falsity Of Earlier Statements</u>**

In claiming the Complaint adequately alleges falsity as to the "full integration" statements, the Opposition singularly relies on Mr. Ballhaus's August 2023 remark that one of his "initial impressions" upon stepping in as CEO was that Mercury "didn't fully integrate some of [its acquired] businesses."  (Opp. at 9; AC ¶ 137.)  That reliance is misguided.

Mr. Ballhaus's August 2023 remark did not render the earlier "full integration" statements "objectively false" as the Opposition contends.  (Opp. at 9.)  Mr. Ballhaus's remark simply expressed his "impression" regarding an imprecise concept ("full integration") that could mean different things to different people, and which could change over time.[5]  Moreover, Mr. Ballhaus did not say anything that contradicted any of Defendants' *specific* integration-related remarks, of which the Complaint identifies only one—Mr. Aslett's February 1, 2022 statement that Mercury had "fully integrated . . . acquired entities by moving them to common collaboration and engineering platforms, as well as common ERP, HRIS and CRM systems while also consolidating facilities," and by unifying business "under the Mercury brand with the combined sales force and single go-to market strategy as well as the shared culture and values." (AC ¶ 181.)  Mr. Ballhaus's August 2023 remark did not state that Mercury had not done any of

---

[5]    The Opposition argues that reliance on Mr. Ballhaus's August 2023 remark is not impermissible fraud by hindsight by (i) claiming Mr. Ballhaus was clear that "acquisitions had not been fully integrated at all times from [2020] to August 2023," and by (ii) citing to this Court's opinion in *In re Allaire Corp. Securities Litigation*, 224 F. Supp. 2d 319 (D. Mass. 2002) (Young, J.).  (Opp. at 11.)  Neither argument is persuasive.  ***First***, Mr. Ballhaus did not state that Mercury lacked full integration "at all times."  He only stated that it was his view that Mercury "didn't fully integrate some of [its acquired] businesses" at some undefined points "over the past several years."  (AC ¶ 137.)  The issues he perceived could well have post-dated some or all of Defendants' earlier statements. ***Second***, in *Allaire*, this Court found that allegations stating a non-deteriorating product did not work at "time 'x+1'" could be used to allege that the product did not work at time "x."  224 F. Supp. 2d at 330.  The characterization of a technology company's "full integration" with another is not like an observation of whether a non-deteriorating product works or does not work.  An integration can be fairly described as "full" at time "x"—for instance, if a merger has been successfully completed, certain functions are combined, and no issues have arisen—but become "not full" at time "x+1"—if points of dissonance between combined entities emerge.  *Allaire* is thus inapplicable.

those things, and therefore his August 2023 remark cannot be used to show the falsity of any earlier, non-generic "full integration" statement.

The Opposition cites two inapposite cases in peddling the supposed import of Mr. Ballhaus's August 2023 remark—*City of Fort Lauderdale Police & Firefighters' Retirement System v. Pegasystems Inc.*, 683 F. Supp. 3d 120 (D. Mass. 2023) (Young, J.), and *In re Allaire Corp. Securities Litigation*, 224 F. Supp. 2d 319 (D. Mass. 2002) (Young, J.).  (Opp. at 9.) There, the complaints alleged falsity based on *specific* contradictory information that was alleged to have existed *contemporaneous* with the challenged statements.  In *Pegasystems*, allegations that a company's promise not to misappropriate trade secrets was false were buttressed by specific facts developed during a state court trial, where the company was found to have been engaging in misappropriation at the time the promise was made.  Similarly, in *Allaire*, allegations that a product was overhyped were supported by specific facts taken from former employee and consultant testimony, which stated the product was experiencing problems at the same time the positive statements were made.  In contrast, the Complaint here is devoid of *any specific* allegations that contradictory information rendered the "full integration" statements false or misleading when made.  The Opposition's emphasis on Mr. Ballhaus's nonspecific, after-the-fact remark regarding his impressions as of August 2023 does not cure that deficiency.

*--------------Statements Regarding Mercury's Financial Performance And Outlook--------------*

**D.      Mr. Aslett And Mr. Ruppert's Challenged Statements**
**<u>Concerning Unbilled Receivables Are Not Actionable</u>**

The Opposition contends that Mr. Aslett and Mr. Ruppert's statements concerning unbilled receivables are (i) "false because of defendant Ballhaus's admission in August 2023," (ii) not protected by the PSLRA safe harbor for forward-looking statements, and (iii) not statements of opinion.  (Opp. at 12.)  The Opposition is wrong on each point.

*First*, for the reasons noted above, the Opposition cannot rely on Mr. Ballhaus's August 2023 remark to show the purported falsity of the "full integration" statements—and even less so to show the falsity of statements concerning unbilled receivables. Mr. Aslett and Mr. Ruppert's statements concerning unbilled receivables addressed operational and financial metrics, not the status of integrations. Mr. Ballhaus's generic comment about his perception of Mercury's integration efforts in August 2023 simply does not show that any prior statement concerning unbilled receivables was false or misleading based on any specific information that existed when the statement was made.[6]

*Second*, all of the unbilled receivables statements—including statements describing present facts—were made in connection with statements of future economic performance and therefore fall within the PSLRA's safe harbor. *See* 15 U.S.C. § 78u-5(i)(1)(A)-(D) (defining forward-looking statements to include "any statement of the assumptions underlying or relating to any statement" concerning "future economic performance"). For instance, Mr. Aslett's statement that certain challenges were "not unique to Mercury" was made in connection with his statement that he was "very optimistic about the future" and Mercury's "stronger fiscal '24 results." (AC ¶ 191.) The statement falls within the PSLRA's safe harbor.

Further, all of the unbilled receivables statements were accompanied by meaningful cautionary statements. The Opposition contends that Mr. Ruppert's August 2022 statement concerning unbilled receivables only cited "generic risk warnings that do not mention unbilled receivables or execution costs" and therefore is unprotected. (Opp. at 13.) But

---

[6]    In addition, Mr. Ballhaus's August 2023 remark did not "admit" that a "lack of full integration" "caused execution problems in 20 *acquired* over time contracts," which led to issues affecting unbilled receivables as the Opposition suggests. (Opp. at 5 (emphasis added).) Mr. Ballhaus never stated that the 20 challenged programs he referenced in his August 2023 remark were *acquired* contracts, and the Complaint does not (nor could it) otherwise contain allegations that the 20 challenged programs Mr. Ballhaus referenced were programs that Mercury acquired.

Mr. Ruppert's statement was accompanied by disclosures noting risks relating to Mercury's potential "inability to fully realize the expected benefits from acquisitions . . . or delays in realizing such benefits" and "challenges in integrating acquired businesses." (ECF No. 66-7 at 9.) The Opposition contends Mr. Ruppert's unbilled receivables statement was false because it did not disclose purported issues relating to Mercury's integration efforts. (Opp. at 13.) That is exactly the risk that Mercury disclosed in connection with Mr. Ruppert's statement. Pursuant to the Complaint's own theory of falsity, the unbilled receivables statements are protected.[7]

*Third*, The Opposition contends that because Mr. Ruppert's statement that "we think [unbilled receivables] will unwind in fiscal '23" proved to be inaccurate, whether it "is a statement of opinion is irrelevant." (Opp. at 13.) The Opposition has it wrong. The test of whether a statement qualifies as a nonactionable opinion does not depend on whether it proves to be accurate.[8] The test depends on whether the statement conveys certainty. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189-90 (2015). Defendants' statements concerning what "we think" and "expect" with respect to unbilled receivables did not convey certainty and are independently nonactionable for that reason.

---

[7]     *In re Sepracor, Inc. Securities Litigation*, 308 F. Supp. 2d 20 (D. Mass. 2004), cited in the Opposition, is distinguishable. (Opp. at 13.) There, the court held that cautionary statements warning of potential risks related to a drug's *future* trials and potential FDA approvals were inadequate to protect allegedly misleading statements that failed to disclose specific negative results obtained in *prior* trials. 308 F. Supp. 2d at 34. Here, the Complaint does not allege that any specific information existed at the time of Defendants' forward-looking statements, which would have undermined the applicability of the cautionary disclosures that accompanied those statements.

[8]     The Opposition's reliance on *Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021) is misplaced. There, the First Circuit analyzed a statement saying "we think" a product is "completely competitive" in the context of a complaint that included allegations that employees within the company had reported that the product never worked at the time the statement was made. *Id.* at 1, 7. The "we think" statement was held to be actionable because it was contradicted by specifically alleged facts that would have been accessible to the speaker if he had made the type of inquiry an investor would have expected before stating his opinion. Here, there are no allegations that any comparable contradictory facts were available to Mr. Ruppert at the time he made his "we think" statement.

### E.    Mr. Ballhaus And Mr. Farnsworth's Challenged Statements Are Not Actionable

The Opposition asserts that Mr. Ballhaus and Mr. Farnsworth's statements regarding Mercury's financial outlook from August 2023 and onward are actionable because they are false and not protected forward-looking statements.  (Opp. at 13-15.)  On this score—where the Opposition cannot rely on the retrospective application of Mr. Ballhaus's August 2023 remark— the Opposition's theory of falsity breaks down.  The Opposition essentially contends that Defendants' statements were false because they were later proven to be wrong, but cannot point to any *specific* information that shows the statements were false when made.  That shortcoming dooms claims based on those statements.  And for the same reasons explained in Section I.D, above, the Opposition also fails to show that Mr. Ballhaus and Mr. Farnsworth's statements are not protected by the PSLRA safe harbor.[9]  Both grounds warrant dismissal.

### II.    THE OPPOSITION CANNOT SALVAGE THE COMPLAINT'S FAILURE TO ALLEGE SPECIFIC FACTS GIVING RISE TO A "STRONG INFERENCE" OF SCIENTER

#### A.    The Opposition Overlooks The Relevant Pleading Standard

The Opposition relies on *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) to suggest that the Complaint need only plead facts giving rise to an inference of scienter that is "at least as likely as any plausible opposing inference."  (Opp. at 15.)  "At least as likely" is not the relevant pleading standard.

The plain language of the PSLRA requires plaintiffs to plead "with *particularity* facts giving rise to a *strong inference*" of scienter "*with respect to each* [challenged] act or

---

[9]    The Opposition cites the Ninth Circuit case, *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130 (9th Cir. 2017), for the proposition that false statements of present fact, or mixed statements, cannot be protected as forward-looking.  That case held that statements of present fact that were shown to be materially false or misleading were not entitled to forward-looking protection.  As discussed, here, there has been no showing that any of Defendants' statements of present fact were false or misleading when made, and thus *Quality Systems* is inapposite.

omission." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). *Tellabs* did not abrogate those requirements. *Tellabs* held that allegations *must also* give rise to an inference of scienter "at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 314.

Accordingly, plaintiffs must still "allege with particularity the who, what, when, where, and why of each materially false or misleading misrepresentation or omission." *E.g.*, *Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226, 232 (D. Mass. 1999). The Complaint's failure to do so is dispositive.

**B.      The Opposition's Rehashing Of The Scattershot
Circumstantial Scienter Allegations In The Complaint Is Unavailing**

The Opposition does not (because it cannot) point to any specific allegations in the Complaint that show Defendants knew or had access to specific, contradictory information at the time they made their challenged statements. Instead, the Opposition simply rehashes the Complaint's generalized status and core operations allegations—stressing that Defendants were paying attention to aspects of Mercury's integration efforts and financial outlook over time, and therefore must have known *something* that contradicted their challenged statements. (Opp. at 16-20.) Because the Opposition does not make clear *what* contradictory information Defendants knew or should have known, or *when* they knew or should have known it, it fails to properly invoke either the status or core operations doctrine.

The three status and core operations cases cited in the Opposition—*Allaire*, *Carbonite* and *Crowell*—all demonstrate this point. (Opp. at 17-19.) There, the complaints included detailed allegations describing what precise contradictory information defendants knew or should have known at the time they made their challenged statements. Those types of allegations, which are not present here, were integral to the courts' determinations that scienter was adequately alleged in those cases:

11

(i)    In *Allaire*, the complaint included detailed allegations—based on testimony from former employees and consultants—that a product "did not work" at the same time defendants described it as having completed "successful" testing.  *In re Allaire Corp. Sec. Litig.*, 224 F.Supp.2d at 328-29.  In light of the specific allegations put forth that contradicted the challenged statements, including evidence of "internal communications," the court found it "inconceivable that management could not have known that the program did not work satisfactorily." *Id.* at 329.  In conjunction with its assessment of allegations concerning suspicious insider stock sales, the court concluded scienter was adequately pled. *Id.* at 331.

(ii)   In *Carbonite*, the complaint included allegations that a product "never worked" at the same time an executive stated it was "completely competitive."  *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th at 5.  Because the complaint—which was aided by allegations based on interviews with former employees—pled that "employees working on [the product] had reported internally before launch that the product was not ready for market" the court found the complaint did not "leave open the possibility that Carbonite management was somehow in the dark about [the product's] true status" and that scienter was adequately alleged.[10]

(iii)  In *Crowell*, the complaint—supported by allegations from former employees—included allegation that a company was engaged in fraudulent sales practices involving a business segment the company was trying to sell at the same time the company made incorrect disclosures regarding the segment's sales.  *Crowell v. Ionics, Inc.*,  343 F. Supp. 2d 1, 16.  This Court held that in light of the specific allegations put forth, which included an internal email showing that a company vice president was involved in the fraud—it could be inferred that company executives should have known of the "systemically" fraudulent scheme.  *Id.* at 19.

Here, the Complaint does not include any remotely comparable allegations describing what contradictory information existed that Defendants knew or should have known at the time they made their challenged statements.  The Complaint does not (because it cannot) allege that someone presented specific facts to Defendants that contradicted their challenged

---

[10]    The Opposition also references *Carbonite* in criticizing Defendants' "proffered non-culpable inference." (Opp. at 18-19.)  On this issue too, *Carbonite* is distinguishable.  There the First Circuit held that executives acted with scienter in hyping a product that was alleged to have "never worked."  Whether a product works is a black-or-white matter, unlike whether technology companies have been "fully integrated," which as Defendants note, can mean different things to different people and can change over time (*see* Section I.B, above).  It is entirely plausible that Mercury's integration efforts could be fairly characterized as "full" at the time Defendants made their challenged statements, even if others would later describe them as having been "not full."

statements, or that specific contradictory facts were widely known throughout Mercury at those times, or even that such specific contradictory facts *existed* at the time of the statements.

At best, the Complaint could be read to allege that because of Mr. Ballhaus's August 2023 remark concerning his perceived "lack of full integration" "over the past several years," some facts existed during the Class Period from which Defendants could have earlier concluded that Mercury had not fully integrated its acquired businesses.  But still, the Complaint does not identify with any specificity *what* those facts were and *when* they existed relative to the challenged statements.  The Complaint thus fails to plead fraud.[11]

### C.    The Cases Cited In The Opposition Only Help Demonstrate That The Complaint Should Be Dismissed For Failure To Adequately Allege Scienter

The Opposition notes that Defendants "criticize the lack of former employee allegations in the AC" (Opp. at 11), but claims that shortcoming is a non-issue.  The cases in the Opposition show otherwise.  Indeed, the Opposition cites seven new cases on scienter that were not addressed in Defendants' Motion.  *All but one* assessed allegations from former employees or confidential witnesses before determining that scienter was adequately pled:

| Case | Source(s) Of Allegations |
|---|---|
| *Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 64 n.1 (D. Mass. 2014) | "Plaintiffs rely in the complaint on the statements of six CWs [confidential witnesses]" |
| *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021) | The complaint includes allegations based on "interviews with former Carbonite employees"[12] |

---

[11]    The Opposition cites a handful of cases in support of its claim that Mr. Aslett and Mr. Ruppert's departures from Mercury should "contribute" to a finding of scienter (Opp. at 18), and that Defendants' general financial motives should also "contribute" (Opp. at 20).  Defendants disagree with those assertions for the reasons set forth in the Motion, including because the Complaint does not directly link any of those issues to the alleged fraud.  But at a minimum, it should be noted that, as seen in the cases the Opposition cites, circumstantial allegations concerning purported resignations and financial motivations can at most "contribute" to an inference of scienter.  They cannot support a strong inference of scienter on their own.

[12]    Consolidated Amended Complaint at 4, *Constr. Indus. and Laborers Joint Pension Tr. et al. v. Carbonite, Inc. et al.*, No. 1:19-cv-11662 (D. Mass. filed Jan. 15, 2020), ECF No. 45.

| *Case* | *Source(s) Of Allegations* |
|---|---|
| *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 16 (D. Mass. 2004) (Young, J.) | Plaintiff "provides evidence in the form of particularized allegations by knowledgeable former employees" |
| *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 328 (D. Mass. 2002) (Young, J.) | "Plaintiffs offer the testimony of (i) Ashley King [a developer of the product at issue], as well as information obtained from (ii) two unidentified former Allaire consultants, (iii) a former Allaire salesperson [and] (iv) a former Allaire technical recruiter" |
| *In re Cabletron Sys., Inc.*, 311 F.3d 11, 24 (1st Cir. 2002) | "The complaint supports these allegations by reference to one or more of a half dozen anonymous Cabletron employees who say they have personal knowledge of the practices they describe" |
| *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 200, 202, 206 (1st Cir. 2005) | The complaint includes quotations from "former S&W insiders," including "a former senior accountant" a "former controller," and "[a] confidential source, identified as the 'head of S&W's Development Corporation." |

*Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226 (D. Mass. 1999) (Young, J.) is the *only* new scienter case cited in the Opposition that did not include allegations from former employees, but there, the complaint alleged GAAP violations—not asserted here—which were the foundation of this Court's determination that scienter was adequately pled. *Id.* at 236 ("GAAP violations, combined with other circumstances indicative of fraudulent intent, raise a strong inference that the defendants knowingly or recklessly misled investors").

Accordingly, the scienter cases cited in the Opposition only help demonstrate that the allegations in the Complaint are lacking. While former employee allegations are not *per se* required to plead scienter, there is a reason why they are a common feature of adequately pled complaints. Without them or something more (such as allegations of GAAP violations) it is difficult for plaintiffs to meet their burden of alleging specific facts supporting a strong inference of scienter under the PSLRA's heightened pleading requirements. In fact, the Opposition points to *no case* where a plaintiff successfully did so.

14

**CONCLUSION**

For all of the foregoing reasons and those set forth in Defendants' Motion, the

Complaint (ECF No. 57) should be dismissed with prejudice.[13, 14]

Dated: July 12, 2024                          Respectfully submitted,
      Boston, Massachusetts

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Nigel Tamton (BBO #696396)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
nigel.tamton@skadden.com

Susan L. Saltzstein (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000
susan.saltzstein@skadden.com

*Counsel for Defendants*
*Mercury Systems, Inc., Mark Aslett,*
*Michael Ruppert, William Ballhaus*
*and David Farnsworth*

---

[13]    In addition to the cases addressed above, the Opposition cites only two new cases that were not addressed in Defendants' Motion:  *Childers v. Maloney*, 247 F. Supp. 2d 32 (D. Mass. 2003), and *Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*, 523 F.3d 75 (1st Cir. 2008).  The Opposition cites those cases for general propositions of law only.  Nothing in those cases warrants denial of Defendant's Motion.

[14]    In one sentence in a footnote, the Opposition requests leave to amend the Complaint "should the Court grant any part of Defendants' motion."  (Opp. at 20 n.11.)  The Opposition's footnote request does not explain why leave to amend would be appropriate in this case, other than citing the standard that "court[s] should freely give leave [to amend] when justice so requires."  (*Id.*)  Here, the Opposition has done nothing to show that amendment would be appropriate in the interests of justice.  It is not.  Dismissal with prejudice is warranted.

15