UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS (Boston)

No. 1:23-cv-13065-WGY

NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT
FIREFIGHTERS' PENSION PLAN, Individually and on Behalf
of all others,
            Plaintiff

vs.

MERCURY SYSTEMS, INC., et al,
            Defendants

* * * * * * * * *

For Hearing Before:
Judge William G. Young

Motion to Dismiss

United States District Court
District of Massachusetts (Boston)
One Courthouse Way
Boston, Massachusetts 02210
Wednesday, July 24, 2024

* * * * * * *

REPORTER: RICHARD H. ROMANOW, RPR
Official Court Reporter
United States District Court
One Courthouse Way, Room 5510, Boston, MA 02210
rhr3tubas@aol.com

A P P E A R A N C E S


JONATHAN ANTHONY OHLMANN, ESQ.
MICHAEL GERARD CAPECI, ESQ.
    Robbins Geller Rudman & Dowd, LLP
    58 South Service Road, Suite 200
    Melville, NY 11747
    (516) 281-6180
    Email: Johlmann@rgrdlaw.com
and
CAITLIN M. MOYNA, ESQ.
    Grant & Eisenhofer PA
    485 Lexington Avenue
    New York, NY 10017
    (646) 722-8500
    Email: Cmoyna@gelaw.com
and
THEODORE M. HESS-MAHAN, ESQ.
    Hutchings, Barsamian, Mandelcorn, LLP
    110 Cedar Street, Suite 250
    Wellesley Hills, MA 02481
    Email: Thess-mahan@hutchingsbarsamian.com
    For Plaintiff


JAMES R. CARROLL, ESQ.
NIGEL TAMTON, ESQ.
    Skadden, Arps, Slate, Meagher & Flom, LLP
    500 Boylston Street
    Boston, MA 02116
    (617) 573-4800
    Email: James.carroll@skadden.com
    For defendants

P R O C E E D I N G S

(Begins, 2:50 p.m.)

THE CLERK:  Now hearing Civil Matter 23-13065, North Collier vs. Mercury Systems.

THE COURT:  Would counsel identify themselves.

MR. CAPECI:  Good afternoon, your Honor, Michael Capeci from Robbins Geller on behalf of the plaintiffs, and with me is my colleague Jon Ohlmann.

MS. MOYNA:  And I'm Caitlin Moyna, from Grant & Eisenhofer, also for the plaintiffs.

MR. HESS-MAHAN:  Theodore Hess-Mahan, plaintiffs, local counsel.

MR. CARROLL:  Your Honor, James Carroll, and with me is Nigel Tamton, for the defendants.

THE COURT:  And good afternoon to you all.  This is the defense's motion, but I want to turn to the plaintiffs here.

(Pause.)

THE COURT:  This is very thin.  You know you've taken public statements here, it seems to be largely speculation as to who would have known what at what time?  There has to be a strong -- it's scienter that's giving me problems.  There has to be a strong inference of scienter.  So respectfully I don't see it.

MR. CAPECI:  We think we absolutely meet the

standard, and please allow me to explain why.

So the defendants' motion is fundamentally flawed here.  The key admission from Mr. Balhaus is "There was a lack of full integration of key functional areas." That phrase of "key functional areas," it's not in their opening brief and it's nowhere in their reply belief and that matters, because he put the time stamp on it, he said that that "has been occurring over the past several years through Fiscal 2020 shortly before class period begins."  Defendants avoid that portion of the statement precisely because it shows that the full integration failure prevented Mercury's acquired contracts from achieving performance obligations.

Defendants also ignore the other specific facts that we plead.  If you turn please to Paragraph 81 of the complaint, which is on Page 19, there is a chart in Paragraph 81.

THE COURT:  All right.

MR. CAPECI:  Okay?  The chart shows that starting in Fiscal Year 2020, Mercury's cash flow "quickly began evaporating in the face of diluting unbilled receivables because they were not being converted to cash."  The Legacy defendants here chose to shift to overtime accounting, which would create that exact scenario, and if unbilled receivables are not converting to cash, then

performance obligations are not being met, and there has to be a reason for that.  Mr. Balhaus supplies the reason and he says they're starting in Fiscal 2020.

Look, the defendants have not come forward here and pointed to a single other reason that could have legitimately explained why Mercury could not --

THE COURT:  Well wait a minute.  Wait a minute.  When we heard the other PLSRA case earlier, we're back on who bears the burden and at what stage?

MR. CAPECI:  Yes, your Honor.

THE COURT:  This is your complaint, they don't have a burden.

MR. CAPECI:  Well I understand, but my point, your Honor, is that if -- look, you need cash to run your business, right?  That's important.  That's a really important thing.  The company was taking this revenue, things that hadn't actually converted to cash.  They're sitting down every single quarter and they're looking at their revenue and they can't convert it to cash.  There has to be a reason for that.  The reason for that was the failure to fully integrate.  And --

THE COURT:  And what does that even mean?

MR. CAPECI:  What that means, your Honor, is that in order for the contracts that they were acquiring to perform and meet the intermediate performance

obligations -- so the defendants' brief also doesn't address at all how the accounting was actually operating here.  I mean the way the accounting operates is what shows why they would have been perfectly aware of what was going on at all times.

Their former accounting system was point in time, before they started the M & A strategy.  What that means is that you ask me to make you a widget, I make you a widget, I deliver it to you, you send me a bill -- I send you a bill and you pay me.  Okay?  What's happening here with these contracts they're acquiring is that I say "I am going to make incremental progress on making a widget, I'm going to book the revenue and profit, and eventually I've got to give you the widget, and eventually I'm going to send you a bill, and eventually you're going to pay me money for it."  That's the point here.

When they're failing to fully integrate, what that means is that the company doesn't have to -- the key functional areas of the company are not operating that allow them to get from the point of taking the revenue to completing the performance obligation.  So if they can't complete the performance obligation, the business can't function.

And I would just like to direct your Honor to

Paragraph 87.  Paragraph 87, Mr. Aslett says, in May 2021, that he's going over all the individual line items in the various programs.  I mean throughout the class period he makes various other statements about how specifically he is paying attention to unbilled receivables and the status of the integration.  There's a reason they're telling investors every quarter that they're achieving full integration, because investors understand that without that they're not able to convert their cash.

You looked at what Mr. Balhaus says in making his admission.  By the way, Mr. Balhaus is not some CEO from off the street who was not involved in the company, Mr. Balhaus was a director or the board who was put there by an Activus investor to agitate for a sale of the company.  Mr. Balhaus and Mr. Aslett are looking at the same exact internal information to come up to their -- that Mr. Balhaus used to come to his conclusion, but there was a lack of full integration, and you know that because, in Paragraph 143, Mr. Balhaus says he "personally reviewed weekly personal granular reviews of Mercury's programs" and he reviewed our major unbilled receivable balances by program."  Mr. Ruppert turns that -- one of the Legacy defendants, as a key account.

So I understand your Honor's concern, but I would

respectfully submit that if you just take a step back -- the defendants are trying to complicate this case.  This case isn't complicated.  And that doesn't mean that there's no securities fraud, it means that it's just obviously and abundantly clear.  They chose to take the company's accounting in a different direction and that had an impact, and the impact is that if you can't convert cash --

THE COURT:  All right, here's what we're going to do, and this argument, in my mind, demonstrates the wisdom of it.

Respectfully I think there's too much speculation here.  If this is such a simple case, I think it can be explained in some more precise detail.  The motion to dismiss is allowed without prejudice to your filing, within 30 days of today's date, a motion for leave to file a motion to amend the complaint, um, to flesh it out, as you see fit, with factual allegations that demonstrate a strong inference of scienter.  Because I do not see it.  The defense can oppose that and I will review all those papers.

Yes?

MR. CAPECI:  Your Honor, I appreciate that.  May I speak about the replacement defendants for one moment because they're much differently situated than the

Legacy defendants?

Their scienter -- so what happens is they come out and they say there's a failure to fully integrate, and investors are obviously going to be stooped by that, right, and so they say, "But don't worry because we still have to meet those performance obligations and the thing that's going to eviscerate the company's profit is if that is more costly and more time-consuming than it ought to be."  And they said, "Don't worry, it's not going to be."  Okay?  And we're going to assure you of that, because we personally went to where all of these problematic programs are located, we looked at it on a weekly basis, in granular detail, personally met with the teams to estimate what these costs are going to be, and we're telling you they're not going to be worse. Then 3 and 6 months after that they report that they in fact are going to be worse and significantly worse.  Yet there's nothing to suggest that there was anything different being looked at in August of 2023 versus February of 2024.

So I would respectfully just submit that your Honor's concerns with scienter for the Legacy defendants, I mean I don't know if that necessarily applies.  I mean there's plenty of case law and we cite the case law where a defendant -- if the defendant comes

10

out and says what they're looking at, you don't need a confidential witness.

THE COURT:  That's the Court's order.

MR. CAPECI:  Okay, thank you.

THE COURT:  I'm not ordering that that be a confidential witness, I don't think that.  I'd like a more precise pleading and I'm giving you a chance to give me one.  That's the order.

MR. CAPECI:  Thank you, your Honor.

(Ends, 3:00 p.m.)

C E R T I F I C A T E


        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

do hereby certify that the foregoing record is a true

and accurate transcription of my stenographic notes

before Judge William G. Young, on Wednesday, July 24,

2024, to the best of my skill and ability.




/s/ Richard H. Romanow 08-09-24
_____
RICHARD H. ROMANOW    Date