# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERCURY SYSTEMS, INC., MARK ASLETT, MICHAEL D. RUPPERT, WILLIAM L. BALLHAUS, and DAVID E. FARNSWORTH,<br><br>Defendants. | No. 1:23-cv-13065-WGY<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE THE [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.    NEW ALLEGATIONS IN THE PSAC.................................................................3

III.    ARGUMENT.......................................................................................................5

    A.    Legal Standards.........................................................................................5

    B.    The PSAC Adequately Alleges Defendants' Scienter ...............................6

    C.    The PSAC Adequately Alleges Scienter for Defendants Ballhaus and
        Farnsworth ...............................................................................................12

    D.    The PSAC Adequately Alleges Falsity and Materiality for Defendants'
        Full Integration Statements ......................................................................14

    E.    The PSAC Adequately Alleges Falsity for Defendant Aslett's Unbilled
        Receivables Statements............................................................................18

    F.    The PSAC Adequately Alleges Falsity for the Statements Made By
        Defendants Ballhaus and Farnsworth ......................................................19

IV.    CONCLUSION.................................................................................................20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
 512 F.3d 46 (1st Cir. 2008)................................................................................................5

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
 2019 WL 3451523
 (D.N.J. July 31, 2019)......................................................................................................12

*Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*,
 2018 WL 1071442
 (N.D. Ill. Feb. 27, 2018)....................................................................................................8

*Chalverus v. Pegasystems, Inc.*,
 59 F. Supp. 2d 226 (D. Mass. 1999) ...............................................................................10

*City of Miami FireFighters' & Police Officers' Ret. Tr. v. Cerence, Inc.*,
 2024 WL 1258149
 (D. Mass. Mar. 25, 2024)...............................................................................................7, 9

*Collier v. ModusLink Glob. Sols., Inc.*,
 9 F. Supp. 3d 61 (D. Mass. 2014) ...................................................................................11

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*,
 22 F.4th 1 (1st Cir. 2021)........................................................................................7, 10, 11

*Crowell v. Ionics, Inc.*,
 343 F. Supp. 2d 1 (D. Mass. 2004) .......................................................................7, 10, 11, 13

*Fitzer v. Security Dynamics Technologies, Inc.*,
 119 F. Supp. 2d 12 (D. Mass. 2000) ...............................................................................15

*Galestan v. OneMain Holdings, Inc.*,
 348 F. Supp. 3d 282 (S.D.N.Y. 2018)..............................................................................16

*Hill v. State Street Corp.*,
 2011 WL 3420439
 (D. Mass. Aug. 3, 2011)...................................................................................................17

*In re Allaire Corp. Sec. Litig.*,
 224 F. Supp. 2d 319 (D. Mass. 2002) ...................................................................9, 13, 17, 18

**Page**

*In re Razorfish, Inc. Securities Litigation*,
2001 WL 1111502
(S.D.N.Y. Sept. 21, 2001)................................................................................................16

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
2024 WL 3708800
(D. Ariz. Aug. 7, 2024)...................................................................................................12

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006)...............................................................................8

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
537 F.3d 35 (1st Cir. 2008).......................................................................................19, 20

*Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*,
2024 WL 3178638
(D. Mass. Mar. 19, 2024)...................................................................................................5

*Pizzuto v. Homology Meds., Inc.*,
2024 WL 1436025
(D. Mass. Mar. 31, 2024).................................................................................................17

*President & Fellows of Harvard Coll. v. Micron Tech., Inc.*,
230 F. Supp. 3d 46 (D. Mass. 2017) .................................................................................5

*Pub. Emps. Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
2018 WL 844420
(N.D. Ill. Feb. 12, 2018)...................................................................................................16

*Roofer's Pension Fund v. Papa*,
2018 WL 3601229
(D.N.J. July 27, 2018).......................................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)......................................................................................................5, 10

*Van Ormer v. Aspen Tech., Inc.*,
145 F. Supp. 2d 101 (D. Mass. 2000) ..............................................................................17

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Techs., Inc.*,
28 F. Supp. 3d 93 (D. Mass. 2014) .............................................................................11, 13

*Weinberg v. Grand Circle Travel, LLC*,
891 F. Supp. 2d 228 (D. Mass. 2012)................................................................................5

**Page**

## STATUTES, RULES AND REGULATIONS

15 U.S.C.

§78j(b)................................................................................................................................1

§78t(a)................................................................................................................................1

Federal Rules of Civil Procedure

Rule 12(b)(6)......................................................................................................................5

Rule 15...............................................................................................................................5

Rule 15(a)(2)...................................................................................................................1, 5

Lead Plaintiff Carpenters Pension Trust Fund for Northern California and plaintiffs University of Puerto Rico Retirement System and North Collier Fire Control and Rescue District Firefighters' Pension Plan ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for leave to file the [Proposed] Second Amended Complaint (the "PSAC") pursuant to Fed. R. Civ. P. 15(a)(2), as permitted by the Court's July 24, 2024 Order.  *See* ECF No. 77.[1]

## I.   INTRODUCTION

Plaintiffs respectfully submit that the PSAC cures the deficiencies cited by the Court during the July 24, 2024 motion to dismiss hearing.  As detailed further herein, the PSAC adds allegations that, when viewed collectively, support a strong inference of scienter.

This case centers on Mercury's "roll-up" acquisition M&A Strategy and Defendants' materially false and misleading statements, among others, that Mercury had "fully integrated" or was then-currently "fully integrating" its acquisitions when, in truth and in fact, the Company had not completed integrating certain of its acquisitions – including its largest ever, POC – and, as a result, was unable to generate the expected revenue and profit from these acquisitions.  The PSAC now further particularizes how Defendants failed to fully integrate certain of the Company's acquisitions (specifically, by failing to fully integrate key functional areas, such as engineering platforms and ERP, HRIS, CRM, and financial systems), how that failure negatively impacted the Company and prevented Mercury from meeting performance obligations on 20 acquired contracts

---

[1]   Clean and redlined copies of the PSAC (cited herein as "¶__") are attached as Exhibits 1 and 2, respectively, to the Declaration of Theodore M. Hess-Mahan, submitted herewith.  Like the Amended Complaint ("AC"; ECF No. 57), the PSAC asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of all purchasers of Mercury Systems, Inc. ("Mercury" or the "Company") common stock between February 3, 2021 and February 6, 2024, inclusive (the "Class Period").  ¶1.  "Defendants" are Mercury, Mark Aslett ("Aslett") and Michael D. Ruppert ("Ruppert").  "Ballhaus" refers to defendant William L. Ballhaus, and "Farnsworth" refers to defendant David E. Farnsworth.  *Id.*  "Def. Mem." refers to the memorandum of law filed by Defendants and defendants Ballhaus and Farnsworth in support of their motion to dismiss the AC, dated May 24, 2024.  ECF No. 65. "Pltf. Opp." refers to Plaintiffs' opposition brief to the motion to dismiss the AC, dated June 24, 2024.  ECF No. 71. "Def. Rep." refers to the motion to dismiss reply brief of Defendants and defendants Ballhaus and Farnsworth, dated July 12, 2024.  ECF No. 73.  Unless otherwise noted, all emphasis in quotations is added and all internal citations and quotation marks are omitted. All capitalized terms in the Introduction are defined later in this memorandum.

that comprised 20% of Mercury's revenue (by causing execution problems that rendered those contracts non-performing), and how Defendants knew, or recklessly disregarded, the pervasive execution challenges caused by the Company's admitted full integration failure (by, *inter alia*, the facts provided by FE1, the admission by defendant Ballhaus, Defendants' intentional shift to over time accounting, Defendants' repeated and detailed statements about full integration, and Defendants' motives to commit fraud), but failed to disclose them to investors, and instead chose to affirmatively misrepresent that acquisitions had been, or were being, fully integrated.

The PSAC details new allegations from FE1, a former Mercury employee who left after the AC was filed. FE1 was hired, in part, to remediate the effects of the long-standing full integration failures at Mercury. FE1 confirmed that – contrary to defendant Aslett's statement on February 1, 2022 – Mercury had not fully integrated the engineering, CRM, HRIS, or ERP systems for certain acquired businesses, *i.e.*, the "lack of full integration of key functional areas" that defendant Ballhaus admitted in August 2023 had plagued Mercury since FY20, before the Class Period began. FE1 further explained that Mercury's internal integration playbooks had not been met for certain acquisitions, and that program performance metrics reported to senior Mercury executives showed full integration failures. Indeed, according to FE1, Mercury's acquisition of POC (for $310 million in December 2020, the largest acquisition that Mercury made pursuant to the M&A Strategy) never achieved full integration before or during FE1's tenure.

Likewise, the PSAC explains that before admitting to the lack of full integration in August 2023, defendant Ballhaus reviewed internal Mercury documents and data showing a "lack of full integration of key functional areas." These same documents and data were available to Defendants during the Class Period. In addition, the PSAC explains that, by virtue of Defendants' intentional shift to contracts that used over time accounting, Defendants fully understood that when unbilled

receivables started ballooning in early 2021 and operating cash flow dropped precipitously, and as that dynamic continued during the Class Period, that meant performance obligations on contracts were not being met. This was a glaring red flag that execution problems from a lack of full integration were adversely impacting the Company. The PSAC also contains additional scienter allegations of motive, resignations, core operations, and Defendants' specific statements about integration and converting unbilled receivables to cash.

The PSAC also further buttresses the scienter allegations for defendants Ballhaus and Farnsworth by detailing the admissions they made on August 15, 2023 regarding the many personal steps they took in June and July 2023 to become apprised of the costs needed to remediate the 20 challenged contracts, which comprised 20% of Mercury's revenue, caused by Defendants' full integration failure. Defendants Ballhaus and Farnsworth were clear: they left no stone unturned in ascertaining the scope of these remediation costs. In addition, the PSAC also alleges motive, core operations, and that Mercury's FY24 adjusted EBITDA performance was nearly 95% less than what Ballhaus and Farnsworth guided investors to in 2023, as further supporting scienter.

Although the Court focused on scienter at the July 2024 hearing, for the sake of completeness, and as explained further herein, the PSAC adequately alleges falsity for: (1) the full integration statements made by Defendants from February 2021 to January 2023; (2) the unbilled receivables statements made by defendant Aslett in May 2023; and (3) the FY24 guidance (and related) statements made by defendants Ballhaus and Farnsworth in August and November 2023.

For these reasons, as well as those stated herein, Plaintiffs respectfully submit that this motion for leave to file the PSAC be granted in its entirety.

## II.     NEW ALLEGATIONS IN THE PSAC

The PSAC adds substantial particularity regarding the frauds perpetrated by Defendants and defendants Ballhaus and Farnsworth on Mercury's investors during the Class Period.

- 3 -

With respect to Defendants, among other things, the PSAC specifies numerous facts provided by FE1, Mercury's former Director of Engineering, Process and Tools, from February 2023 to June 2024 (¶131), which were unavailable when the AC was filed. FE1 was hired, in part, to help remediate then-existing integration failures for certain acquisitions. ¶136. Among other things, FE1 confirmed that: (1) Mercury's acquisition of Physical Optics Corporation ("POC") – the largest acquisition Mercury made pursuant to the M&A Strategy – never achieved full integration before or during FE1's tenure (¶¶134, 136); (2) Mercury had internal integration playbooks that were not met for certain acquisitions, meaning full integration had not occurred (¶138); (3) FE1 submitted program performance metrics on a weekly basis to members of Mercury's executive leadership team, which showed that full integration had not been achieved for certain acquisitions (¶140); (4) Mercury had not achieved full integration for certain acquisitions of common engineering platforms or ERP, HRIS, CRM, or financial systems (¶139); and (5) Mercury's full integration failure was widely known throughout the Company, meaning defendant Aslett should have been apprised of it. ¶137.

In addition, among other things, the PSAC explains that Mercury's quarterly results for unbilled receivables and operating cash flow in 2021 and 2022 necessarily apprised Defendants that Mercury was not meeting performance obligations on acquired contracts that utilized over time accounting, thereby indicating execution challenges caused by full integration failures. ¶¶79-102. Indeed, the PSAC provides substantial detail explaining that the success of "roll-up" acquisition strategies, like the M&A Strategy, hinges on achieving full integration. ¶¶103-111. Without full integration, acquired contracts will become non-performing, precluding increased revenue and profit from that acquisition. *Id.* Mercury's 2021 and 2022 quarterly results for unbilled receivables and operating cash flow prove that this is precisely what occurred at Mercury.

- 4 -

With respect to defendants Ballhaus and Farnsworth, among other things, the PSAC specifies the numerous, detailed admissions they made on August 15, 2023 about the steps they took in June and July 2023 to fully understand how long it would take, and how much it would cost, to meet the performance obligations in FY24 on the acquired contracts that had were non-performing due to Defendants' full integration failure.  ¶¶198-202.

## III.    ARGUMENT

### A.    Legal Standards

Leave to amend is "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. ("Rule") 15(a)(2).  "Generally, a court ought grant leave to amend unless such an amendment was made in bad faith, was unduly delayed, or would prove futile."  *President & Fellows of Harvard Coll. v. Micron Tech., Inc.*, 230 F. Supp. 3d 46, 47 (D. Mass. 2017) (Young, J.).[2]

In deciding whether an amendment is futile, this Court applies the Rule 12(b)(6) motion to dismiss standard.  *See Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, 2024 WL 3178638, at *3-*4 (D. Mass. Mar. 19, 2024) (Young, J.).  Thus, in assessing this motion, the Court must accept Plaintiffs' factual allegations as true, view the allegations in their entirety, and draw reasonable inferences in Plaintiffs' favor.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 234 (2007); *see also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 52 (1st Cir. 2008) (holding that *Tellabs* applies on a Rule 15 motion); *cf.* Pltf. Opp. at 8.  As explained below, the PSAC adequately alleges scienter for *all* defendants – through, *inter alia*, the first-hand account of FE1 and additional allegations that clarify the AC's scienter allegations – and also bolsters the AC's falsity and materiality allegations, meaning that filing the PSAC is not be futile.

---

[2]    The PSAC is the second pleading filed by Lead Plaintiff in this action, and comes only eight months after the initial complaint was filed, meaning there is no undue delay or bad faith.  *See, e.g.*, *Weinberg v. Grand Circle Travel, LLC*, 891 F. Supp. 2d 228, 236 (D. Mass. 2012) (Young, J.) (no undue delay where "plaintiff filed the second motion to amend three months after oral argument" on a motion to dismiss and "eight months after the original complaint").

## B.    The PSAC Adequately Alleges Defendants' Scienter

The PSAC adds allegations that, taken collectively and considered holistically (Pltf. Opp. at 15-16), firmly establish that Defendants knew or recklessly disregarded that Mercury had not fully integrated the key functional areas of certain acquired businesses, meaning that performance obligations were not being met, unbilled receivables were not being converted to cash, and Mercury's financial performance was negatively impacted.  *See* ¶¶56-197.

***First***, the PSAC includes detailed allegations from FE1 – Mercury's former Director of Engineering, Process and Tools, from February 2023 to June 2024 (¶131) – that were unavailable when the AC was filed in April 2024.  *See* Ex. 3 at 2 (explaining that Mercury eliminated ~100 positions in June 2024).  FE1 was hired, in part, to help fix the effects of integration failures for certain acquisitions that were then-existing, meaning full integration was never achieved for those acquisitions.  ¶136.  For example, FE1 stated that POC had never achieved full integration from when it was acquired by Mercury for $310 million in December 2020, through the conclusion of FE1's tenure with Mercury in June 2024.  ¶¶134, 136.  In addition, *inter alia*:

- FE1 stated that Mercury had internal processes, known as "playbooks," that had set parameters in various engineering playbooks that needed to be met – but never were – in order for the Company to conclude that full integration had been achieved for engineering platforms (¶138);

- FE1 confirmed that Mercury had not achieved full integration for certain acquisitions of common: (1) engineering platforms; (2) ERP systems; (3) HRIS systems; (4) CRM systems; or (5) financial systems (¶139);

- FE1 personally submitted program performance metrics on a weekly and monthly basis to members of Mercury's executive leadership team, including Mercury's Senior Vice President of Execution Excellence.  These metrics demonstrated that full integration had not been achieved for certain acquisitions (¶140);

- FE1 believed it was impossible for defendant Aslett to have not known about the failure to fully integrate because "everyone was talking about it" at all levels of the Company during FE1's tenure (¶137); and

- FE1 specified that Mercury's failure to fully integrate caused execution problems on certain acquired contracts, because it prevented the Company from identifying or easily fixing problems once the contracts came under Mercury's control (¶135).

The allegations from FE1 strongly support scienter because it is "evidence in the form of particularized allegations by [a] knowledgeable" former employee of Mercury who witnessed Mercury's failure to fully integrate. *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 16, 19 (D. Mass. 2004) (Young, J.).   Indeed, FE1 particularizes internal documents (the playbooks), data (the metrics FE1 reported weekly to senior Mercury executives), and specific instances of integration failure (engineering platforms and ERP, CRM, HRIS, and financial systems) that showed a lack of full integration since POC was acquired in December 2020, meaning that Mercury was not fully integrating, had not fully integrated, or had not achieved full integration during the Class Period in direct contrast to Defendants' Class Period statements. *See City of Miami FireFighters' & Police Officers' Ret. Tr. v. Cerence, Inc.*, 2024 WL 1258149, at *6 (D. Mass. Mar. 25, 2024) (former employee allegations supported scienter when, as here, they detailed internal documents and data that were available to the company's executives).[3]

***Second***, on August 15, 2023, defendant Ballhaus admitted that "over the past ***several years***," *i.e.*, by the start of the Class Period in February 2021,[4] Mercury "didn't fully integrate some of the businesses" acquired pursuant to the M&A Strategy, meaning there was a "***lack of full integration of key functional areas***[.]"   ¶193.   Specifically, Ballhaus admitted that Defendants' failure to fully integrate caused "execution challenges on approximately 20 programs."   *Id.* According to defendant Ballhaus, these execution challenges caused the Company's ballooning

---

[3]   The PSAC's allegations from FE1 render moot Defendants' concerns raised about *Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021) in moving to dismiss the AC (*see* Def. Rep. at 11-14), meaning *Carbonite* fully supports a finding that the PSAC adequately alleges scienter.  22 F.4th at 9.

[4]   The definition of "several" is "being more than two but fewer than many in number."   *See* https://www.dictionary.com/browse/several (last visited August 23, 2024).

- 7 -

unbilled receivables, and related "negative $107 million in free cash flow, which is clearly unacceptable," and began in "FY '20" – *i.e.*, before the Class Period.  *Id.*; *see also* ¶¶79-102, 193.

Defendant Ballhaus, Mercury's current CEO and Chairman of the Board, is a highly credible source of facts relevant to the issue of scienter due to his current positions and motivation to sell Mercury since December 2021.  ¶98.  Moreover, before making his admission in August 2023, defendant Ballhaus undertook a comprehensive review of the same internal Mercury documents and data that were available to Defendants in 2021 and 2022, including meeting with "all relevant functions from engineering, manufacturing, our program managers, [and] our program management leadership[.]"  ¶¶198-202.  Thus, Plaintiffs have not pled fraud by hindsight; they have alleged specific facts establishing that Defendants' statements were false when made. *See Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442, at *6 (N.D. Ill. Feb. 27, 2018) (rejecting fraud by hindsight argument for post-class period scienter admission because the admission "does not merely indicate that [the CEO's] assurances to investors . . . were incorrect in retrospect; it suggest that they were incorrect when made"); *see also Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 237 (S.D.N.Y. 2006) (post-class period admission that "Goldman did not do 'as good a job as [it] might have in preserving and protecting the appearance of independence'" sufficient to allege scienter).

***Third***, the PSAC adds particularized allegations demonstrating that at the time each of Defendants' full integration statements were made in 2021 and 2022 during Mercury's quarterly earnings calls, Defendants knew that the Company's unbilled receivables were ballooning and operating cash flow was being decimated.  ¶¶79-102.  This placed Defendants on notice before each earnings release in 2021 and 2022 that performance obligations on over time contracts were not being met; otherwise, the unbilled receivables would have been converting to cash.  *Id.*

As the architect of the M&A Strategy, defendant Aslett purposely shifted Mercury to primarily holding over time contracts, particularly through the acquisition of POC (¶¶56-102), which FE1 confirmed was never fully integrated by Mercury during the Class Period. ¶¶134, 136. Because over time contracts that experience execution problems prevent the conversion of unbilled receivables to cash, and because POC was not fully integrated (*id.*), Defendants must have known that Mercury's failure to fully integrate was causing the non-performance of Mercury's over time contracts. ¶¶79-102. In other words, Defendants fully understood when reporting quarterly results for unbilled receivables and operating cash flow in 2021 and 2022 that Mercury's acquired over time contracts were experiencing execution challenges caused by the failure to fully integrate acquisitions. *See Cerence*, 2024 WL 1258149, at *17 (public data supports an inference of scienter when, as here, it "suggest[s] that Defendants knew, at the time they were making the challenged statements" that the company's "practice could negatively impact revenue in the future"); *cf. In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 325-26 (D. Mass. 2002) (Young, J.) (recognizing that it is permissible for "Plaintiffs . . . [to] establish scienter from publicly available documents").

***Fourth***, during each Mercury quarterly earnings call in 2021 and 2022, Defendants told investors that the Company was then-currently fully integrating, had fully integrated, or had achieved full integration. ¶¶80-97. Defendants also conducted due diligence on each business Mercury acquired pursuant to the M&A Strategy, placing them on notice that Mercury was shifting towards contracts that used over time accounting. ¶270. In addition, defendant Aslett started the 1MPACT initiative during the Class Period to derive additional synergies from Mercury's supposed fully integrated acquisitions. ¶¶143-150. And defendant Aslett told investors in May 2021 that he had been "going over all the individual line items . . . in the various programs" at Mercury (¶142) – the very same effort that defendant Ballhaus undertook before August 2023

when he concluded that there was a "lack of full integration of key functional areas" since FY20. ¶¶193, 198-202 ("[we] reviewed our major unbilled receivables balances by program"). In other words, both defendants Aslett and Ballhaus reviewed the same objective internal Mercury data, meaning defendant Ballhaus's admission was not the result of a difference of opinion. These statements provide "a very strong inference that the senior executives who gave those apparently prepared remarks touting [full integration] would have paid at least some attention to the . . . status [of full integration]." *Carbonite*, 22 F.4th at 9.

**Fifth**, while motive is not needed to plead scienter (*Tellabs*, 551 U.S. at 325), the PSAC provides compelling motives for Defendants' fraud: (1) tens of millions of dollars in additional severance if a sale of the Company was achieved; and (2) achieving the "milestone" of $1 billion in revenue. ¶¶171-191. Indeed, defendant Aslett's failed attempt to get over $30 million in severance for a sale that never happened (¶¶190-191) shows that his focus was on growing Mercury by any means necessary. This Court recognizes these types of motive as supporting scienter. *See Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226, 236 (D. Mass. 1999) (Young, J.) (finding a desire to achieve a "fiftieth consecutive profitable quarter" and access "compensation packages" contributed to scienter); *Crowell*, 343 F. Supp. 2d at 15-16, 19 (finding that "pecuniary motives," such as trying to "consummate a major sale or acquisitions," contributed to scienter).

**Sixth**, both Defendants resigned in connection with the fraud alleged by Plaintiffs. Defendant Aslett resigned on June 23, 2023, the same day the Board announced that: (1) Mercury needed "refreshed leadership"; and (2) Mercury's sale process had failed after receiving just two "no premium" offers, even though Mercury engaged in due diligence with 20 potential buyers. ¶¶186-187. Defendant Ruppert resigned in February 2023, during the sales process and just before Mercury announced in May 2023 that the Company had to significantly reduce Mercury's adjusted

EBITDA guidance for FY23 due to execution challenges on 12 acquired contracts.  ¶184.  The close tie between Defendants' resignations and the effects of Mercury's full integration failure supports a finding of scienter.  *See Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 76 (D. Mass. 2014) (resignations of senior executives contributed to scienter); *cf. Washtenaw Cnty. Emps. Ret. Sys. v. Avid Techs., Inc.*, 28 F. Supp. 3d 93, 112-13 (D. Mass. 2014) (Young, J.) (resignations support scienter when, as here, they are "link[e]d . . . [to] the alleged fraud").

*Finally*, Defendants have previously conceded that fully integrating acquisitions was a core operation of Mercury.  *See* Def. Mem. at 17-18.  That concession is unsurprising – Defendants repeatedly labeled achieving full integration "a core part of our strategy[.]"  ¶¶116-122.  Thus, the core operations doctrine supports scienter.  *See Crowell*, 343 F. Supp. 2d at 19 ("Facts critical to a business's core operations . . . generally are so apparent that their knowledge may be attributed to the company and its officers"); *Avid*, 28 F. Supp. 3d at 115 (same).

The only plausible inference to be drawn from the PSAC's numerous scienter allegations is that Defendants "either inquired about [whether Mercury's acquisitions were fully integrating, had fully integrated, or had achieved full integration] before deciding to promote it to investors or were reckless in failing to do so."  *Carbonite*, 22 F.4th at 10-11.  Defendants' proffered non-culpable inference in moving to dismiss the AC – that "Mercury's integration efforts could be fairly characterized as 'full' at the time they made their challenged statements" (Def. Mem. at 20) – is wholly untenable in light of the PSAC's allegations, which make clear that Mercury had never achieved full integration of certain businesses, including POC, of numerous "key functional areas," *i.e.*, engineering systems and CRM, HRIS, ERP, and financial platforms.  ¶¶56-197.  Accordingly, the facts supporting Defendants' scienter are simple, straightforward, and abundant.

- 11 -

### C.    The PSAC Adequately Alleges Scienter for Defendants Ballhaus and Farnsworth

The PSAC adequately alleges scienter for defendants Ballhaus and Farnsworth by detailing the personal efforts they **_admittedly_** undertook in July 2023 **_before_** making their challenged statements on August 15, 2023, about the time and cost needed in FY24 to remediate the execution challenges on the 20 contracts caused by Defendants' failure to fully integrate. ¶¶198-202. Indeed, defendants Ballhaus and Farnsworth stated that they had **_detailed personal knowledge_** of these matters, admitting that they **_personally_**: (1) "spent significant time with the team digging into the details of the business" (¶199); (2) "visited our major centers of operation and personally led reviews of our challenged programs and . . . their estimated cost to complete and any roadblocks or risk to completion" (_id._); (3) "reviewed our major unbilled receivables balances by program . . . in detail to establish burn-down plans and drive improved free cash flow conversion" (¶200); (4) "we literally have reviewed every development program" with "the senior team across all relevant functions from engineering, manufacturing, [and] our program managers" and "[we] took a very stringent eye on the activities to complete those programs and our estimates to complete" (¶201); and (5) "we're getting very granular when it comes to things like burning down our unbilled in our inventory and literally looking at it program by program every week." ¶202.

These repeated admissions of personal knowledge before making their challenged statements are more than sufficient, standing alone, to adequately allege scienter for defendants Ballhaus and Farnsworth. _See Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd._, 2024 WL 3708800, at *16 (D. Ariz. Aug. 7, 2024) (finding a strong inference of scienter where defendants "regularly acknowledged that they tracked Garena's user engagement, monetization metrics, and trends for specific games on a granular basis"); _see also Carmignac Gestion, S.A. v. Perrigo Co. PLC_, 2019 WL 3451523, at *16  (D.N.J. July 31, 2019) ("Defendants' verbal

statements and Perrigo's 10-K disclosures about drug pricing further support the conclusion that Defendants were aware of the increased competition in the generic drug market and failed to disclose the impact it could have on Perrigo's pricing strategy.").

But the PSAC alleges more. Defendant Ballhaus was motivated to engage in the alleged fraud because he took over as CEO the same day that Mercury's sale process – which defendant Ballhaus had personally put in motion (¶¶171-172) – failed. *See Crowell*, 343 F. Supp. 2d at 19. As of August 15, 2023, there was nothing more important to Mercury than the amount of time and cost it would take to fix the execution challenges on the 20 contracts comprising 20% of Mercury's revenue (¶¶198-202), meaning that the core operations doctrine applies. *See Allaire*, 224 F. Supp. 2d at 329. And the magnitude by which defendants Ballhaus and Farnsworth misled investors with respect to Mercury's FY24 adjusted EBITDA – promising at least $160 million of adjusted EBITDA for FY24 in August and November 2023, but achieving only $9.3 million by July 2024, a miss of ***nearly 95%*** (¶223) – further demonstrates scienter. *Cf. Avid*, 28 F. Supp. 3d at 114 (finding that the magnitude of the difference between reported financials and a later restatement amounted to "an extreme departure from the standards of ordinary care").

The only plausible inference that can be drawn from the PSAC's scienter allegations is that defendants Ballhaus and Farnsworth fully understood by August 15, 2023, that Mercury's profit in FY24 would be decimated by the significant costs needed to remediate the execution problems caused by Defendants' failure to fully integrate. In moving to dismiss, Defendants largely avoided addressing scienter for defendants Ballhaus and Farnsworth (and did not directly address it at all on reply (Def. Rep. at 10-15)), weakly arguing that the more plausible non-culpable inference is that "their descriptions of Mercury's performance and outlook were accurate based on information known at the time." Def. Mem. at 20. That theory fails under the thrust of the PSAC's additional

- 13 -

scienter allegations that the very "information known at the time" *was* the significant costs Mercury had to incur to fix the execution challenges, which would preclude the Company from achieving barely any adjusted EBITDA in FY24, let alone at least $160 million.

### D.    The PSAC Adequately Alleges Falsity and Materiality for Defendants' Full Integration Statements

Defendants made three sets of present or historical false and misleading statements about integrating the acquisitions made pursuant to the M&A Strategy during the Class Period: (1) that Mercury had "fully integrated" these businesses;[5] (2) that Mercury had achieved "full integration" of these businesses;[6] and (3) that Mercury was then-currently "fully integrating the businesses we acquire to generate cost and revenue synergies over time[.]"[7]

For the same reasons Plaintiffs articulated in opposing Defendants' motion to dismiss the AC, falsity has been adequately alleged for these statements. *See* Pltf. Opp. at 8-12.  The PSAC's allegations from FE1 further demonstrate that Mercury's failure to fully integrate certain businesses was widely known throughout the Company and objectively based on, *inter alia*, the failure to achieve the required parameters of the integration "playbooks."  ¶¶131-140.  Moreover, with respect to the statements in ¶239, FE1 confirms that Mercury never "fully integrated these acquired entities by moving them to common collaboration and engineering platforms as well as common ERP, HRIS and CRM systems," rendering those statements false.  ¶239.

---

[5]    These false and misleading statements were made on May 11, 2021, February 1, 2022, and March 15, 2022, respectively.  ¶¶231, 239, 241.

[6]    These false and misleading statements were made on May 3, 2022, August 2, 2022, November 1, 2022, and January 31, 2023, respectively.  ¶¶243, 245, 247, 249.

[7]    These false and misleading statements were made on February 2, 2021, May 4, 2021, June 2, 2021, August 3, 2021, and November 2, 2021, respectively.  ¶¶227, 229, 233, 235, 237.

In moving to dismiss the AC, Defendants made four falsity arguments, each of which also fail for the PSAC: (1) that each integration statement other than ¶239 is mischaracterized; (2) that integration statements are puffery; (3) that full integration is not material; and (4) that relying on defendant Ballhaus's admission is fraud by hindsight. *See* Def. Mem. at 7-12; Def. Rep. at 2-7.

Defendants' mischaracterization argument fails because it ignores the plain reading of the challenged statements, which all reference the full integration of Mercury's "acquisitions" or "businesses," *i.e.*, all of the acquisitions made pursuant to the M&A Strategy. ¶¶227-250. For example, the then-currently "fully integrating" statements all directly implicate the "businesses" Mercury had "acquired." ¶¶227, 229, 233, 235, 237. These statements do not indicate that a subset of Mercury's acquisitions were being referenced. *Id.* In arguing that these statements apply to undefined select acquisitions, it is Defendants who engage in mischaracterization. Moreover, each statement made after defendant Aslett's February 1, 2022 statements – which Defendants agree were not mischaracterized (Def. Rep. at 3) – necessarily were made with the context provided by defendant Aslett, *i.e.*, that Defendants' full integration statements pertained to ***all*** of Mercury's acquisitions.[8] Thus, none of the post-February 2022 statements can be deemed mischaracterized.

Defendants' puffery argument fails for the statements in ¶¶231, 239, and 241, which Defendants concede are historical and, therefore, cannot be puffery under this Court's ruling in *Fitzer v. Security Dynamics Technologies, Inc.*, 119 F. Supp. 2d 12, 23 (D. Mass. 2000) (Young, J.), which held that puffery applies only to current or future statements. *See* Def. Rep. at 5 n.3.

Defendants' puffery argument fails for the remaining full integration statements because the PSAC adequately alleges through FE1, defendant Ballhaus's admission, and Mercury's

---

[8]    Defendant Ruppert's statement from March 15, 2022 (¶241) is false even without the qualifier "fully," as demonstrated by the cases Plaintiffs cited that sustained statements about "integration" only. *See* Pltf. Opp. at 10.

- 15 -

unbilled receivables and operating cash flow performance in 2021 and 2022 that full integration was never achieved for certain acquisitions, especially POC. ¶¶56-197. Thus, Defendants cannot rely on *In re Razorfish, Inc. Securities Litigation*, 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001), as they did in moving to dismiss the AC (Def. Rep. at 3-4), because in *Razorfish* the plaintiff conceded at oral argument that there were no facts alleged about the failure to conduct specific integration activities. 2001 WL 1111502, at *2.[9] The PSAC does not suffer from that defect.

In addition, the cases cited by Plaintiffs in opposing Defendants' motion to dismiss the AC now apply even more forcefully in light of the allegations from FE1. *See Pub. Emps. Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, 2018 WL 844420, at *2-*3 (N.D. Ill. Feb. 12, 2018) (when, as here, a company is relying on acquisitions for growth, and specifically the "largest acquisition[] to date" like POC, statements about integration efforts are highly material); *see also Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *4-*5, *13-*15, *23 (D.N.J. July 27, 2018) (principally relying on one former employee, who was not a direct report to the CEO, in concluding that the existence of stalled integration efforts was adequately alleged and not puffery). Indeed, the specific integration statement at issue in *Galestan* – that "[t]he integration of Springleaf and OneMain remains on track" (Ex. 4 at ¶161), which was found to not be puffery (348 F. Supp. 3d at 293, 303), is far less definitive than Defendants' full integration statements here.

Defendants' materiality argument fails because Defendants ignore their repeated statements that achieving full integration was "core" to the M&A Strategy, *i.e.*, material. ¶¶116-122. By choosing to speak about current or historical full integration efforts during every earnings calls in 2021 and 2022 (¶¶80-97), Defendants signaled to investors that full integration was highly

---

[9]    As evidenced by *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282 (S.D.N.Y. 2018), *Razorfish* does not articulate any rule in the Second Circuit that integration statements are always puffery. Def. Rep. at 4.

material.  *See Allaire*, 224 F. Supp. 2d at 332 (finding that specific current or historical statements are material to investors).  Likewise, the four over 10% declines in Mercury's stock caused by the revelations of Mercury's full integration failure (¶¶279-286) also indicates materiality.  *See Hill v. State Street Corp.*, 2011 WL 3420439, at *15 (D. Mass. Aug. 3, 2011) (finding just one decline of less than 10% to demonstrate materiality on a motion to dismiss, even though "other factors may have contributed to this decline.").  Thus, the risk warnings cited by Defendants about possible future integration challenges (Def. Mem. at 9-10) cannot render Defendants' misstatements about current and historical full integration efforts immaterial as a matter of law.[10]

Defendants' fraud by hindsight argument fails because the PSAC now supplies what Defendants argued was missing from the AC (¶¶131-140), namely allegations from "internal documents" and "testimony from [a] percipient witness[]" that "show[s] Defendants' references to 'full integration' contradicted specific information existing at the time Defendants made those remarks."  Def. Mem. at 10.  Indeed, FE1 confirms that "Mercury did not do any of those things" (*id.*), *i.e.*, the specific integration activities in ¶239 described by defendant Aslett.  ¶139.

In moving to dismiss the AC, Defendants ignored the portion of defendant Ballhaus's admission in ¶193 that specifies that the lack of full integration was of "key functional areas" (*see* Def. Mem. at 4-5, 10, 19; Def. Rep. at 1, 6 & n.5), *i.e.*, Defendants failed to address that defendant Ballhaus admitted that Mercury's most critical functions were not fully integrated.  Furthermore, Defendants do not deny that their intentional shift to primarily having contracts that utilize over

---

[10]    Defendants' reliance on *Pizzuto v. Homology Meds., Inc.*, 2024 WL 1436025 (D. Mass. Mar. 31, 2024) and *Van Ormer v. Aspen Tech., Inc.*, 145 F. Supp. 2d 101 (D. Mass. 2000), is misguided.  Def. Mem. at 9-10.  In *Pizzuto*, the court found that the plaintiff failed to allege the omission of additional risks beyond those included in the company's risk warnings.  2024 WL 1436025, at *12 ("Homology was not required to disclose all the details of the risk involved when 'the overall risk is disclosed and the nature of the future risk remains uncertain'").  *Van Ormer* dismissed "optimistic statements about the success of a merger" (145 F. Supp. 2d at 106), not current and historical statements that numerous businesses acquired to grow revenue and profit had definitively been fully integrated, achieved full integration, or were then-currently fully integrating.  Thus, neither *Pizzuto* nor *Van Ormer* are applicable to the PSAC.

- 17 -

time accounting placed them on notice that full integration had not been achieved due to Mercury's ballooning unbilled receivables, dissipated cash flow, and failure to meet performance obligations. *See* Def. Mem. at 6 n.5. Thus, defendant Ballhaus's admission properly supports falsity and is supported by contemporaneous facts establishing Defendants' knowledge of Mercury's full integration failure. *See Allaire*, 224 F. Supp. 3d at 330 ("[t]he proof offered to prove that the product did not work at time 'x' is that, at time 'x+1,' the product did not work").

### E.    The PSAC Adequately Alleges Falsity for Defendant Aslett's Unbilled Receivables Statements

On May 2, 2023, shortly before resigning, and amidst disclosing that execution challenges for 12 contracts had materially reduced the Company's adjusted EBITDA for FY23, defendant Aslett made three misrepresentations about the underlying cause of those challenges. ¶251.

First, defendant Aslett falsely stated that Mercury's challenge in meeting performance obligations on the 12 contracts were "not unique to Mercury," incorrectly implying that external factors were to blame. *Id.* The true cause, as defendant Ballhaus admitted and FE1 confirmed, was that Defendants failed to fully integrate Mercury's acquisitions, meaning the cause of the challenge *was* unique to Mercury. ¶252. Second, defendant Aslett falsely stated that "[t]he cost growth we're experiencing is associated with certain new technology developments[.]" ¶251. In reality, the true source of Mercury's cost growth was the expenses needed to meet the performance obligations that could not be achieved due to Defendants' full integration failure. ¶253. Finally, defendant Aslett falsely stated that Mercury would "quickly relieve unbilled receivables through . . . cash collections." ¶251. Again, this statement was false because Defendants' failure to fully integrate Mercury's acquisitions meant that performance obligations would not be quickly met, which prevented the rapid conversion of unbilled receivables to cash. ¶254.

- 18 -

These statements are adequately alleged to be false in the PSAC for the same reasons they were actionably false in the AC. *See* Pltf. Opp. at 12-13.[11]  In addition, the PSAC's allegations from FE1 demonstrate that defendant Aslett's statements on May 2, 2023 were false when made because, when FE1 began working at Mercury in February 2023, the Company's integration playbooks and weekly program performance metrics made clear that fully integration of certain acquisitions had not occurred.  ¶¶131-140.  Likewise, defendant Aslett's May 2023 statements are not forward-looking, as Defendants have previously conceded, and thus are not protected by the safe harbor.  *See* Def. Rep. at 8 (characterizing them as "statements describing present facts[.]").  This ends the analysis.  *See N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 45 n.13 (1st Cir. 2008) ("In analyzing a forward-looking statement, the aspect of the statement that is based on the present fact must be distinguished from the aspect of the statement that is a future projection.  The safe harbor . . . is intended to apply only to allegations of falsehood as to the forward-looking aspects of the statement.").

### F.    The PSAC Adequately Alleges Falsity for the Statements Made By Defendants Ballhaus and Farnsworth

Like the AC, the PSAC challenges several statements made by defendants Ballhaus and Farnworth on August 15, 2023, and November 7, 2023.  ¶¶255-263.  Essentially, defendants Ballhaus and Farnsworth falsely stated on those dates that Mercury would quickly and cheaply resolve the execution challenges plaguing the 20 contracts that comprised 20% of the Company's revenue caused by Defendants' full integration failure, even going as far as promising at least $160 million in adjusted EBITDA for FY24 – far more than Mercury achieved in FY23.  *Id.*  But the

---

[11]    The PSAC does not challenge defendant Ruppert's statement from ¶185 of the AC.

costs needed to remediate these challenges directly caused Mercury to achieve a paltry $9.3 million in adjusted EBITDA in FY24 – nearly **95% less** than the guidance that was provided.  ¶223.

For the same reasons as before, these statements in the PSAC are adequately alleged to be false.  *See* Pltf. Opp. at 13-15.  Further, the two misstatements made by defendant Ballhaus on August 15, 2023 – "our reported margin in 2023 does not at all reflect a structural shift in our margin profile" and the execution challenges caused "unanticipated and temporary impacts on our overall performance" (¶255) – are not forward-looking.  *See N.J. Carpenters*, 537 F.3d at 45 n.13. Nor have defendants Ballhaus or Farnsworth identified any narrowly-tailored risk warnings related to the costs of remediating the execution problems on the 20 challenged contracts.  *See* Def. Rep. at 10.  Instead, defendants Ballhaus and Farnsworth point to risk warnings about generic future integration problems (*id.*), which say nothing about quickly or cheaply fixing execution challenges.

In addition, defendant Ballhaus's two August 15, 2023 misstatements are not opinions, which Defendants have seemingly conceded.[12]  *Compare* Pltf. Opp. at 14 *with* Def. Rep. at 10.

Finally, in contesting falsity in moving to dismiss the AC, defendants Ballhaus and Farnsworth never once addressed the allegations from ¶¶198-202 of the PSAC (cited as ¶¶141-145 in the AC), and for good reason – these statements leave no doubt that defendants Ballhaus and Farnsworth fully understood the "estimated cost to [fix the execution challenges] and any roadblocks or risk to completion" **before** the challenged statements were made.  *Id.*

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to file the PSAC.

---

[12]    Defendant Farnsworth's August 15, 2023 statement and the August and November 2023 guidance statements were not previously challenged by defendants Ballhaus or Farnsworth as being opinions.  *See* Pltf. Opp. at 15 n.8.

DATED: August 23, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (*pro hac vice*)
MICHAEL G. CAPECI (*pro hac vice*)
JONATHAN A. OHLMANN (*pro hac vice*)


                    */s/ Michael G. Capeci*
                  MICHAEL G. CAPECI

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com
johlmann@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com

GRANT & EISENHOFER P.A.
DANIEL L. BERGER (*pro hac vice*)
CAITLIN M. MOYNA (*pro hac vice*)
CECILIA E. STEIN (*pro hac vice*)
TIMOTHY CLARK B. DAUZ (*pro hac vice*)
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone: 646/722-8500
646/722-8501 (fax)
dberger@gelaw.com
cmoyna@gelaw.com
cstein@gelaw.com
tdauz@gelaw.com

*Co-Lead Counsel for Plaintiffs*

- 21 -

HUTCHINGS, BARSAMIAN,
MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO
#557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

*Local Counsel for Plaintiffs*

WEINBERG, ROGER & ROSENFELD, P.C.
EZEKIEL D. CARDER
1375 55th Street
Emeryville, CA 94608
Telephone: 510/337-1001
510/337-1023 (fax)
ecarder@unioncounsel.net

*Additional Counsel for Lead Plaintiff*

ABRAHAM, FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
JACK G. FRUCHTER
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone:  212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
jfruchter@aftlaw.com

*Additional Counsel for UPRRS*