UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORTH COLLIER FIRE CONTROL AND  :
RESCUE DISTRICT FIREFIGHTERS'
PENSION PLAN, individually and on behalf of  :
all others similarly situated,

                                            :

               Plaintiff,               Civil Action
        v.                     :      No. 23-13065-WGY

MERCURY SYSTEMS, INC., MARK  :    **ORAL ARGUMENT REQUESTED**
ASLETT, MICHAEL RUPPERT, WILLIAM L.
BALLHAUS, and DAVID E. FARNSWORTH,  :

               Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THE [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

James R. Carroll
Nigel Tamton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
nigel.tamton@skadden.com

Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
 (212) 735-3000
susan.saltzstein@skadden.com

*Counsel for Defendants*
*Mercury Systems, Inc., Mark Aslett,*
*Michael Ruppert, William Ballhaus*
*and David Farnsworth*

Dated:  September 6, 2024

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT ........................................................................................................................3

I.    AMENDMENT WOULD BE FUTILE BECAUSE THE PSAC
      DOES NOT CURE PLAINTIFFS' DEFICIENT SCIENTER ALLEGATIONS ..............4

      A.    The PSAC's Allegations Concerning The
            "Full Integration" Statements Are Inadequate ..........................................................4

            1.    Allegations Attributed To FE 1 Do Not Show That
                  The "Full Integration" Statements Were False When Made .......................5

            2.    Mr. Ballhaus's August 2023 Remark
                  Does Not Show That The "Full Integration" Statements
                  Made By Others Months Earlier Were False When Made ..........................8

            3.    Publicly Available Revenue And
                  Operating Cash Flow Data Does Not Show That
                  The "Full Integration" Statements Were False When Made ......................9

            4.    Plaintiffs' Remaining Scienter Allegations
                  Are Merely Repackaged Versions Of Insufficient
                  Allegations That Were Included In The AC And Dismissed ...................11

      B.    The PSAC's Allegations Concerning Statements About Mercury's
            Financial Performance And Outlook Are Merely Repackaged Versions
            Of Insufficient Allegations That Were Included In The AC And Dismissed........12

II.   AMENDMENT WOULD BE FUTILE BECAUSE THE PSAC FAILS
      TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS ..................14

      A.    The "Full Integration" Statements Are Not Actionable.........................................14

      B.    Mr. Aslett's Unbilled Receivables Statements Are Not Actionable......................18

      C.    Mr. Ballhaus's And Mr. Farnsworth's Statements About
            Mercury's Financial Performance And Outlook Are Not Actionable ...................19

III.  THE PSAC DOES NOT STATE A CONTROL PERSON CLAIM...............................20

CONCLUSION....................................................................................................................20

i

## TABLE OF AUTHORITIES

**CASES**                                                                                                                          **PAGE(S)**

*ACA Financial Guaranty Corp. v. Advest, Inc.*,
      512 F.3d 46 (1st Cir. 2008) ................................................................................................4, 20

*In re Allaire Corp. Securities Litigation*,
      224 F. Supp. 2d 319 (D. Mass. 2002) ................................................................10, 13, 17, 18

*Aponte-Torres v. University of Puerto Rico*,
      445 F.3d 50 (1st Cir. 2006) .............................................................................................3

*In re Biogen Inc. Securities Litigation*,
      857 F.3d 34 (1st Cir. 2017) ...............................................................................................4

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
      No. 17-10467, 2019 WL 3451523 (D.N.J. July 31, 2019) ................................................13

*Carpenters Pension Trust Fund for Northern California v. Allstate Corp.*,
      No. 16 C 10510, 2018 WL 1071442 (N.D. Ill. Feb. 27, 2018)............................................9

*Chalverus v. Pegasystems, Inc.*
      59 F. Supp. 2d 226 (D. Mass. 1999) ................................................................................12

*City of Miami Firefighters' & Police Officers' Ret. Tr. Cerence, Inc.*
      No. 22-cv-10321-ADB, 2024 WL 1258149 (D. Mass. Mar. 25, 2024).........................7, 10

*Collier v. ModusLink Global Solutions, Inc.*,
      9 F. Supp. 3d 61 (D. Mass. 2014) ....................................................................................12

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*
      22 F.4th 1 (1st Cir. 2021)................................................................................................7, 8

*Corban v. Sarepta Therapeutics, Inc.*,
      868 F.3d 31 (1st Cir. 2017)...............................................................................................14

*Crowell v. Ionics*,
      343 F. Supp. 2d 1 (D. Mass. 2004) .........................................................................7, 12, 14

*In re Fed Ex Corp. Securities Litigation*,
      517 F. Supp. 3d 216 (S.D.N.Y. 2021)...............................................................................16

*Fitzer v. Security Dynamics Technologies, Inc.*,
      119 F. Supp. 2d 12 (D. Mass. 2000) .................................................................................15

*Galestan v. OneMain Holdings, Inc.*
      348 F. Supp. 3d 282 (S.D.N.Y. 2018)...............................................................................16

*Glassman v. Computervision Corp.*,
　　90 F.3d 617 (1st Cir. 1996)..................................................................................................4

*Hensley v. Imprivata, Inc.*,
　　260 F. Supp. 3d 101 (D. Mass. 2017) ..................................................................................16

*Hill v. State Street Corp.*,
　　794 F.3d 227 (1st Cir. 2015).................................................................................................17

*Kader v. Sarepta Therapeutics, Inc.*,
　　No. 1:14-CV-14318-ADB, 2017 WL 72396 (D. Mass. Jan. 6, 2017) ..................................4

*Laborers District Council Construction Industry Pension Fund v. Sea Ltd.*,
　　No. CV-23-01455-PHX-DLR, 2024 WL 3708800 (D. Ariz. Aug. 7, 2024) ...............13, 14

*Lapin v. Goldman Sachs Group, Inc.*,
　　506 F. Supp. 2d 221 (S.D.N.Y. 2006)...................................................................................9

*Local No. 8 IBEW Retirement Plan v. Vertex Pharmaceuticals Inc.*,
　　140 F. Supp. 3d 120 (1st Cir. 2016).......................................................................................5

*Metzler Asset Management GMBH v. Kingsley*,
　　928 F.3d 151 (2019)...............................................................................................................7

*In re Molycorp, Inc. Securities Litigation*,
　　No. 13 Civ. 5697(PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ......................11, 12

*New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
　　537 F.3d 35 (1st Cir. 2008)...............................................................................................5, 19

*In re Nokia Corp. Securities Litigation*,
　　Nos. 19-cv-3509, 19-cv-3982, 2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021)...................16

*Oklahoma Firefighters Pension & Retirement System v. Biogen Inc.*
　　No. 10-10200, 2024 WL 3178638 (D. Mass. Mar. 19, 2024) ..............................................20

*In re Peritus Software Services, Inc. Securities Litigation*,
　　52 F. Supp. 2d 211 (D. Mass. 1999) ....................................................................................16

*President & Fellows of Harvard College v. Micron Technology, Inc.*
　　230 F. Supp. 3d 46 (D. Mass. 2017) ....................................................................................20

*In re Psychemedics Corporation Securities Litigation*,
　　No. 17-10186-RGS, 2017 WL 5159212 (D. Mass. Nov. 7, 2017) .......................................11

*Public Employees' Retirement System of Mississippi v. TreeHouse Foods, Inc.*,
　　No. 16 C 10632, 2018 WL 844420 (N.D. Ill. Feb. 12, 2018)..............................................16

*In re Razorfish, Inc. Securities Litigation*,
 No. 00 CIV. 9474 (JSR), 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001)..........................16

*Rife v. One West Bank, F.S.B.*,
 873 F.3d 17 (1st Cir. 2017) .............................................................................................4

*Roofer's Pension Fund v. Papa*,
 No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ..................................................16

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
 96 F. Supp. 3d 325 (S.D.N.Y. 2015).................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)........................................................................................................20

*Van Ormer v. Aspen Technology, Inc.*,
 145 F. Supp. 2d 101 (D. Mass. 2000) ...............................................................................9

*Washtenaw County Employees Retirement System v. Avid Technologies, Inc.*,
 28 F. Supp. 3d 93 (D. Mass. 2014) ............................................................................12, 14

*Weinberg v. Grand Circle Travel, LLC*
 891 F. Supp. 2d 228 (D. Mass. 2012) ...............................................................................20

*Yan v. ReWalk Robotics Ltd.*,
 973 F.3d 22 (1st Cir. 2020) ...............................................................................................7

## **STATUTES**

15 U.S.C. § 78j(b) .......................................................................................................................4

15 U.S.C. § 78t(a) .....................................................................................................................20

15 U.S.C. § 78u-4(b)(2) ..............................................................................................................4

17 C.F.R. § 240.10b-5(b) ............................................................................................................4

## **RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................4

Fed. R. Civ. P. 15(a)(2)...............................................................................................................3

iv

## PRELIMINARY STATEMENT

In July, this Court dismissed the AC[1] for failure to allege particularized facts supporting a strong inference of scienter. (*See* ECF No. 78, 7/24/2024 Hearing Tr. at 3:19-24 (observing that allegations in the AC are "very thin" and "seem[] to be largely speculation as to who would have known what at what time").) Plaintiffs' proposed amendment does not cure that deficiency, nor the other deficiencies in the AC that this Court did not need to address when it dismissed the AC on scienter grounds—including that Plaintiffs' claims are entirely premised on forward-looking financial projections and non-actionable statements of corporate optimism.

Rather than come forth with particularized facts showing that Defendants' challenged statements were knowingly false when made, Plaintiffs' [Proposed] Second Amended Class Action Complaint (the "PSAC") simply adds references to additional public statements and vague allegations from a single purported former employee who worked at Mercury for a little over a year, at the end of the proposed Class Period, and who only joined the Company *after* the challenged "full integration" statements were made. Neither the new public material, nor the vague allegations from a purported employee *who was not even at the Company* when the challenged integration statements were made, can breathe life into Plaintiffs' defective claims.

The First Circuit has instructed that trial courts need not give plaintiffs an "endless number of trips to the well" when a proposed amendment would be futile. That is the case here:

*First*, the PSAC fails to plead particularized facts demonstrating the requisite "strong inference" of scienter with respect to any challenged statement. In their Motion,

---

[1] All capitalized terms not otherwise defined shall have the meanings ascribed to them in Defendants' brief in support of their Motion to Dismiss the Amended Complaint ("AC"). Defendants' MTD Brief (ECF No. 65) is cited herein as "MTD Br.," and Defendants' Reply Brief (ECF No. 73) is cited as "Reply Br." Citations to Plaintiffs' paragraphs in the [Proposed] Second Amended Class Action Complaint are referred to as "PSAC ¶ __."

Plaintiffs tout new allegations attributed to a single former employee who only allegedly worked at Mercury *after all* of the challenged "full integration" statements were made.  Plaintiffs attempt to stretch allegations from FE 1's limited tenure by adding vague qualifiers to his observations— claiming that according to FE 1, "*everybody* was talking" about integration failures "at *all* levels of the Company," and some unspecified acquisitions had not been fully integrated, as purportedly shown by certain unidentified "program performance metrics."  (PSAC ¶¶ 137, 139- 40 (emphasis added).)  Such vague allegations, which necessarily come from observations that *post-dated* the alleged misstatements, do not help Plaintiffs simply because they come with a "confidential witness" label.  Beyond references to previously referenced public materials, those are the only new factual allegations the PSAC proposes to add.  That is not enough.

*Second*, the PSAC asserts claims based on the same categories of statements as the AC, all of which are not actionable as a matter of law.[2]  Although the Court dismissed the AC on scienter grounds without addressing falsity, at the July hearing, the Court asked Plaintiffs what does "fully integrate" "even mean?"  (*See* ECF No. 78, 7/24/2024 Hearing Tr. at 5:22.) That question persists and is certainly not answered by the proposed amendment.  While the PSAC at least attempts to address the AC's deficient scienter allegations, aside from bolding and italicizing already-cited language from the challenged statements, the PSAC does nothing to address the fact that many of those statements are non-actionable expressions of corporate optimism, many are protected forward-looking statements, and none have been adequately alleged as false or misleading when made.

Because the proposed amendment would be futile, the Motion should be denied.

---

[2]     The PSAC challenges two additional statements concerning Mercury's efforts to fully integrate acquisitions, and one other about Mercury's expected financial performance.  (*See* PSAC ¶¶ 243, 245 (additional statements referencing integration, which also pre-date FE 1's tenure); *id.* ¶ 260 (additional statement discussing expected revenue and EBITDA).)  Those statements are substantively identical to other already-challenged statements and thus are not actionable for reasons addressed in Defendants' prior submissions and herein.

## BACKGROUND

This case was filed more than eight months ago on December 13, 2023.  (ECF No. 1.)  Plaintiffs amended their complaint four months later on April 18, 2024.  (ECF No. 57.)  The AC generally alleged that Defendants misled the market by falsely claiming Mercury had "fully integrated every acquisition made by Mercury before and during the Class Period," and by "concealing the negative impact to Mercury's financial performance caused by their failure to fully integrate."  (AC ¶¶ 3, 58.)

On July 24, 2024, the Court heard oral argument on Defendants' motion to dismiss and granted the motion from the bench based on the AC's failure to adequately plead scienter.  The Court observed that the allegations in the AC were "very thin," that it didn't "see" a strong inference of scienter, and that the AC contained "too much speculation."  (ECF No. 78, 7/24/2024 Hearing Tr. at 3:19, 3:23-24, 8:12-13.)

The Court allowed Plaintiffs to file a motion for leave to amend the AC.  In so doing, the Court instructed Plaintiffs to explain their claims in "more precise detail" and to include in their amended pleading "factual allegations that demonstrate a strong inference of scienter," which were lacking in the AC.  (*Id.* at 8:13-14, 8:18-19.)  Plaintiffs have not done so.

## ARGUMENT

The First Circuit instructs trial courts that Federal Rule of Civil Procedure 15(a)(2) does not require "that a trial court must mindlessly grant every request for leave to amend."  *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006) (affirming denial of leave to amend because "busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well").  For example, the First Circuit has held that leave to amend should be denied where—as here—the proposed amendments are futile.  "'Futility' means that the complaint, as amended, would

fail to state a claim upon which relief could be granted." *Rife v. One W. Bank, F.S.B.*, 873 F.3d 17, 21 (1st Cir. 2017) (citation omitted). In assessing futility, therefore, the trial court is guided by Rule 12(b)(6). *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (affirming denial of motion for leave to file second amended complaint).

To state a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and SEC Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b), Plaintiffs must plead: (i) a material misrepresentation or omission; (ii) scienter; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation. *In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 41 (1st Cir. 2017); *accord ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008). Further, under the PSLRA, a complaint must allege specific facts giving rise to a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2).

Here, the PSAC fails to allege specific, particularized allegations raising a strong inference of scienter, and like the AC, challenges statements that are not actionable as a matter of law. Accordingly, amendment is futile, and the Motion should be denied. *Kader v. Sarepta Therapeutics, Inc.*, No. 1:14-CV-14318-ADB, 2017 WL 72396 (D. Mass. Jan. 6, 2017) (denying motion to amend for failure to adequately plead scienter), *aff'd*, 887 F.3d 48 (1st Cir. 2018).

## I.    AMENDMENT WOULD BE FUTILE BECAUSE THE PSAC DOES NOT CURE PLAINTIFFS' DEFICIENT SCIENTER ALLEGATIONS

### A.    The PSAC's Allegations Concerning The "Full Integration" Statements Are Inadequate

Plaintiffs assert that "[t]he PSAC adds allegations that, taken collectively and considered holistically . . . firmly establish that Defendants knew or recklessly disregarded that Mercury had not fully integrated the key functional areas of certain acquired businesses" when they spoke about Mercury's integration efforts. (Mot. at 6.) These additional allegations consist of non-particularized facts attributed to FE 1 and repackaged scienter allegations from the

4

deficient AC that are not sufficient to create a strong inference of scienter.

### 1.    Allegations Attributed To FE 1 Do Not Show That The "Full Integration" Statements Were False When Made

In the First Circuit, "there must be a hard look at [former employee] allegations to evaluate their worth." *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 51 (1st Cir. 2008). This "hard look" requires such allegations to comply with the heightened pleading requirements of the PSLRA, and for a court to "evaluate . . . factors such as 'the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations . . . and similar indicia.'" *Local No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*, 140 F. Supp. 3d 120, 127 n.5 (quoting *N.J. Carpenters*, 537 F.3d at 51). The requisite "hard look" at the allegations attributed to FE 1 demonstrates that those allegations fail to give rise to any inference of scienter.

As an initial matter, FE 1 began his tenure at Mercury in February 2023, after *all* of Defendants' challenged statements about integration were made.[3] Accordingly, he could not possibly have knowledge of any specific facts that existed *contemporaneously* with the challenged integration statements, which could have rendered those statements false or misleading *when made*. Moreover, FE 1 offers only vague observations from his tenure at Mercury, asserting that:

- The failure to integrate was "common knowledge" within the company and unidentified "Vice Presidents and Directors" were "constantly communicating" about operations problems in Torrance, which "indicated" that the program had not been fully integrated (PSAC ¶ 132)—without specifying *who* knew or said *what* and *when* on these topics;

- When FE 1 joined Mercury, the company was experiencing execution problems caused by the failure to fully integrate acquisitions and FE 1 "believed" those

---

[3]    This individual's purported tenure at Mercury does not appear to have overlapped *at all* with Mr. Ruppert's.

5

problems persisted before he was hired by the company (*id.* ¶ 135)—an allegation admittedly based on FE 1's speculation, not facts;

- It was not possible for Mr. Aslett "to have not known about the failure to fully integrate certain acquisitions" because "everyone was talking about it" at "all levels" of the company during FE 1's tenure (*id.* ¶ 137)—again, without specifying *who* knew or said *what* and *when* on these topics;

- Mercury "had internal processes in place that had to be met in order for an acquisition to be considered fully integrated" that were guided by "various playbooks" and "certain" requirements of "several" playbooks had not been met for "certain" Mercury acquisitions during the putative class period (*id.* ¶ 138)— without specifying what the playbooks purportedly required, which acquisitions did not meet the playbook requirements, or in what respects the acquisitions had purportedly not met the requirements; and

- Mercury had not achieved full integration for "certain" acquisitions (*id.* ¶ 139)— without specifying which ones, and with that observation inherently limited to what FE 1 could have observed during his short tenure that did not begin until after all the challenged integration statements were made.

Such vague and non-specific allegations, replete with generic adjectives and adverbs and lacking any references to particular acquisitions, documents, people or times, fall far short of the particularized allegations required to state a claim for securities fraud. *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 344 (S.D.N.Y. 2015) ("[Adjectives and] adverbs are not facts, and the addition of [adjectives and adverbs] . . . does not prove scienter").

FE 1 additionally states that he "submitted program performance metrics on a weekly and monthly basis to members of Mercury's executive leadership team," including to a senior vice president who allegedly reported to Mr. Aslett and then to Mr. Ballhaus. (PSAC ¶ 140.) Again, these metrics were necessarily submitted *after* each of the challenged statements about integration were made, and thus do not have any bearing on whether those statements were knowingly false *when made*. Moreover, there is no allegation that any Defendant reviewed (or even received) this information, and even if there was such an allegation, it is not enough to

6

allege that Defendants reviewed reports; instead, "one would need to know what [a defendant] learned from such monitoring, and whether what he learned was at odds with any of his . . . statements." *Metzler Asset Management GMBH v. Kingsley*, 928 F.3d 151, 162 (1st Cir. 2019). No such allegations appear in the PSAC.

Finally, FE 1 purportedly "confirms" (i) that POC "had never achieved full integration through the conclusion of [his] tenure at Mercury in June 2024" (PSAC ¶ 134) and (ii) that "Mercury had not achieved full integration for certain acquisitions of common:  (1) engineering platforms, (2) ERP systems; (3) HRIS systems; (4) CRM systems; or (5) financial systems" (*id.* ¶ 139).  But FE 1 provides *no particularized facts whatsoever* supporting those allegations, and they thus need not be credited here.  *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 30-31 (1st Cir. 2020) ("disregarding conclusory allegations" on Rule 12(b)(6) motion).

For these reasons, Plaintiffs are wrong that FE 1 has provided "evidence in the form of particularized allegations" about Mercury's alleged failure to fully integrate.  (Mot. at 7 (citing *Crowell v. Ionics*, 343 F. Supp. 2d 1 (D. Mass. 2004)).)  FE 1 offers only non-specific and vague, adjective-laden allegations that do not support a strong inference of scienter.  *Cf. Crowell* (denying motion to dismiss and crediting "particularized" former employee allegations that described in detail individuals defendants' role in alleged fraud).)[4]  Those allegations cannot give rise to a strong inference of scienter as a matter of law.  *See Metzler*, 928 F.3d at 162.

---

[4]     *City of Miami Firefighters' & Police Officers' Ret. Tr. v. Cerence, Inc.* does not help Plaintiffs.  Plaintiffs assert that case is analogous because there, the former employee witness "detailed internal documents and data that were available to the company's executives." (Mot. at 7.)  But the former employee in *Cerence* did far more than FE 1 has done here—that witness provided particularized details about how individual defendants personally sought to engage the former employee in the alleged fraudulent scheme.  *Id.* at *3.  FE 1's allegations are far less specific than those in *Cerence*.  *Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021) does not help Plaintiffs either.  (Mot. at 7 n.3.)  *Carbonite* involved specific allegations that executives acted with scienter in hyping a product that, according to former employees, "never worked."  *Id.* at 5.  The former employees in *Carbonite* alleged to have reported product issues internally *before the product launched*—unlike FE 1, whose allegations all are based on after-the-fact observations.  Further, whether a product has ever worked is a

### 2.    Mr. Ballhaus's August 2023 Remark Does Not Show That The "Full Integration" Statements Made By Others Months Earlier Were False When Made

The PSAC's rehashed allegations concerning Mr. Ballhaus's remark that one of his "initial impressions" upon stepping in as CEO was that Mercury "didn't integrate some of [its acquired] businesses" (PSAC ¶ 193; ECF No. 66-3, at PDF pp. 291-92) suffer from the same infirmities that made those allegations insufficient when they were included in the AC. Indeed, on this point, Plaintiffs largely appear to have simply bolded and italicized language attributed to Mr. Ballhaus that was already included in the AC (*compare* AC ¶ 137 *with* PSAC ¶ 193). Reformatting allegations does not create liability where none existed before. As explained in Defendants' MTD Brief (at 10-12, 19) and Reply Brief (at 6-7, 12-13 & n.5), Plaintiffs use Mr. Ballhaus's remark to impermissibly allege fraud by hindsight.

Plaintiffs argue that they do not plead fraud by hindsight because, in connection with Mr. Ballhaus's comment, he "undertook a comprehensive review of the same internal Mercury documents and data that were available to Defendants in 2021 and 2022." (Mot. at 8.) But as Plaintiffs themselves allege, Mr. Ballhaus's review did not begin until July 2023 (PSAC ¶ 201), and there is no allegation that circumstances at that time were the same as they were one or two years prior. Thus, Plaintiffs are incorrect in their assertion that in May 2021, Mr. Aslett "reviewed the same objective internal Mercury data" as Mr. Ballhaus did years later. (Mot. at 9-10.) That assertion is wholly unsupported by any factual allegation in the PSAC. Accordingly, Mr. Ballhaus's August 2023 remark only supports a fraud by hindsight theory of

---

black-or-white matter, unlike whether technology companies have been "fully integrated," which has no universally understood meaning. *Carbonite* is thus inapplicable.

8

liability, which does not work.  *See Van Ormer v. Aspen Technology, Inc.*, 145 F. Supp. 2d 101, 106 (D. Mass. 2000) (rejecting "fraud by hindsight" allegations).[5]

### 3. Publicly Available Revenue And Operating Cash Flow Data Does Not Show That The "Full Integration" Statements Were False When Made

Plaintiffs assert they have added "particularized allegations demonstrating that at the time each of Defendants' full integration statements were made in 2021 and 2022 during Mercury's quarterly earnings calls, Defendants knew that the Company's unbilled receivables were ballooning and operating cash flow was being decimated . . . plac[ing] Defendants on notice before each earnings release in 2021 and 2022 that performance obligations on over time contracts were not being met; otherwise, the unbilled receivables would have been converting to cash." (Mot. at 8.)  Thus, according to Plaintiffs, Defendants "fully understood when reporting quarterly results for unbilled receivables and operating cash flow in 2021 and 2022 that Mercury's acquired over time contracts were experiencing execution challenges caused by the failure to fully integrate acquisitions." (*Id.* at 9.)  This argument misses the mark.

Central to Plaintiffs' contorted argument is the supposed but-for link between the increase in Mercury's unbilled receivables and alleged issues Mercury experienced fully integrating its acquisitions.  (*See* PSAC ¶¶ 71, 98-99, 194.)  But that increase in unbilled

---

[5]     The cases Plaintiffs offer to attempt to show that they do not plead fraud by hindsight are easily distinguished.  In *Carpenters Pension Trust Fund for Northern Cal. v. Allstate Corp.*, the defendants made allegedly false and misleading statements about the cause of an increase in the frequency of claims, then later made a directly contradictory post-class period admission about the true cause of the increase.  No. 16 C 10510, 2018 WL 1071442, at *6 (N.D. Ill. Feb. 27, 2018).  But in *Allstate*, the plaintiffs specifically alleged that the true cause of the claims increase—a reduction of underwriting standards—was in place during the entire class period.  In contrast, here, Plaintiffs cannot use Mr. Ballhaus's August 2023 remark concerning his impressions *at that time* to show that Mercury acquisitions were never fully integrated previously.  And *Lapin v. Goldman Sachs Grp., Inc.* is totally inapposite:  the cited portion of that decision stands only for the generic, irrelevant proposition that post-class period statements may be relevant in determining what a defendant should have known during the class period.  Like in *Allstate*, the alleged misconduct at issue in *Lapin* was specifically alleged to have been occurring throughout the class period, which the defendants later publicly conceded.  Here, Defendants never publicly stated that they *never* fully integrated any acquisitions, and Plaintiffs offer no specific facts supporting any such allegation.

receivables could have been caused by other factors, and Plaintiffs have not alleged *specific* facts demonstrating that integration problems were the but-for cause of the rise in increased unbilled receivables.  Further, the argument presumes a fallacy that Plaintiffs repeat throughout the PSAC and their brief—that Mr. Ballhaus "admit[ted]" in August 2023 that a lack of full integration" caused "20 acquired over time contracts" to perform poorly.  (*Id.* ¶ 71.)  Mr. Ballhaus never stated that the 20 challenged programs he referenced in his August 2023 remark were *acquired* contracts, and the PSAC does not otherwise contain specific allegations that the 20 challenged programs Mr. Ballhaus referenced were programs that Mercury acquired.  Thus, the PSAC is devoid of specific allegations tying the rise in unbilled receivables to alleged integration issues.

Indeed, the notion that Defendants were publicly disclosing details about the rise in Mercury's unbilled receivables—the financial effect of the purported fraud that Defendants were allegedly covering up—undermines any inference of fraud in this case.  The cases that Plaintiffs offer in support of this argument highlight the reasons it fails.  For example, in *City of Miami Firefighters' & Police Officers' Ret. Tr. v. Cerence, Inc.*, the court stated that public data could be relevant to scienter where the data was "(1) used to support a narrative . . .  that is undermined by [d]efendants' own actions, and/or (2) is itself misleading." 2024 WL 1258149, at *6 (D. Mass. Mar. 25, 2024).  Plaintiffs do not allege that Mercury was using the unbilled receivable data to support some narrative, nor do they allege that the data was itself misleading. *Cerence* thus does not apply.  *In re Allaire* is inapplicable for the same reason.  *See* 224 F. Supp. 2d 319, 331 (D. Mass. 2002) (finding strong inference of scienter where defendant issued press releases, SEC filings and earning reports painting a rosy picture that contradicted the defendant's understanding that its financial condition was much worse).  Here, Defendants were not hiding

10

anything about Mercury's unbilled receivables.  That fully disclosed and accurate public data does not show that Defendants' full integration statements were false when made.

### 4. Plaintiffs' Remaining Scienter Allegations Are Merely Repackaged Versions Of Insufficient Allegations That Were Included In The AC And Dismissed

The PSAC offers a handful of additional scienter allegations that are simply repackaged versions of deficient allegations that appeared in the AC and were dismissed.

*First*, Plaintiffs argue that Defendants had a financial motive to commit fraud because (i) they would obtain "tens of millions of dollars in additional severance if a sale of the Company was achieved," and (ii) they were motivated to achieve a "milestone" of $1 billion in revenue.  (Mot. at 10.)  Those arguments are based on allegations that have not been substantively amended, and that are insufficient for reasons addressed in Defendants' prior submissions—namely, that it is not sufficient for a plaintiff "to point to the ever present desire to improve results . . . as supporting a motive to commit fraud, particularly when it is a common practice for executive compensation to be linked to performance."  *In re Psychemedics Corp. Sec. Litig.*, No. 17-10186-RGS, 2017 WL 5159212, at *6 (D. Mass. Nov. 7, 2017).  (*See* MTD Br. at 18; Reply Br. at 13 n.11.)

*Second*, Plaintiffs argue that "both Defendants [Aslett and Ruppert] resigned in connection with the fraud alleged by Plaintiffs" and that the "close tie between Defendants' resignations and the effects of Mercury's full integration failure supports a finding of scienter." (Mot. at 10, 11.)  But again, these allegations—which are substantially the same as those in the AC—still do not include specific facts linking those departures to the alleged fraud, and without that, "the mere fact of the resignations provides no support for a finding of scienter."  *In re Molycorp, Inc. Sec. Litig.*, No. 13 Civ. 5697(PAC), 2015 WL 1097355, at *12 (S.D.N.Y. Mar.

11

12, 2015) (granting motion to dismiss).  (*See* MTD Br. at 19; Reply Br. at 13 n.11.)[6]

    *Third*, Plaintiffs offer the same core operations allegations they included in the AC, which remain deficient.  (*See* MTD Br. at 17-18; Reply Br. at 11.)  In their Motion, Plaintiffs again cite *Crowell* in support of their core operations argument, but that case involved specific allegations—including allegations based on an internal email showing a company executive was involved in the alleged fraud—from which it could be inferred that Defendants should have known of the "systemically" fraudulent scheme.  343 F. Supp. 2d 1, 19.  Plaintiffs also cite *Washtenaw* and *Chalverus*, but those are inapposite restatement decisions.  In *Washtenaw*, the court determined that the "magnitude of the restatement" covering transactions over the course of five years supported a strong inference of scienter.  28 F. Supp. 3d at 113.  In *Chalverus*, the alleged GAAP violations were the foundation of this Court's determination that scienter was adequately pled.  59 F. Supp. 2d 226, 236 (D. Mass. 1999) ("GAAP violations, combined with other circumstances indicative of fraudulent intent, raise a strong inference that the defendants knowingly or recklessly misled investors.").  No such facts are present here.[7]

  **B.**  **The PSAC's Allegations Concerning Statements About Mercury's Financial Performance And Outlook Are Merely Repackaged Versions Of Insufficient Allegations That Were Included In The AC And Dismissed**

    The PSAC adds nothing to the AC's deficient allegations that Mr. Ballhaus's and Mr. Farnsworth's statements about Mercury's financial performance and outlook were

---

[6] Plaintiffs cite a new case, *Washtenaw County Employees Retirement System v. Avid Technologies, Inc*, but that case cuts against their argument.  That case found that, as here "Plaintiffs . . . have alleged no facts linking the resignation of [the executives] to the accounting improprieties at [the company]."  28 F. Supp. 3d 93, 113 (observing that "[i]n reality, there are any number of reasons that an executive might resign, most of which are not related to fraud").  Further, as noted in Defendants' Reply, Plaintiffs' other cases (including *Collier v. ModusLink Global Solutions, Inc.*, 9 F. Supp. 3d 61, 76 (D. Mass. 2014), which Plaintiffs cite again here) support only the proposition that allegations concerning resignations may, at most, contribute to an inference of scienter; they cannot support a strong inference of scienter on their own.

[7] Plaintiffs also cite Defendants' due diligence on acquired business and a Mercury initiative known as 1MPACT as factors supporting a strong inference of scienter, but Plaintiffs provide no explanation at all as to how they relate to the scienter analysis.  (*See* Mot. at 9.)

knowingly false when made.  Indeed, the proposed amendment simply bolds and italicizes portions of Mr. Ballhaus's and Mr. Farnsworth's statements that detailed their efforts to understand Mercury's financial condition, which already appeared in the AC.  (*See* ECF No. 84-2 (PSAC Redline) ¶¶ 198-202.)  Plaintiffs present those statements in an attempt to show that Mr. Ballhaus and Mr. Farnsworth must have understood what was to come, but those allegations have already been considered and dismissed.

As before, Plaintiffs contend that Mr. Ballhaus's and Mr. Farnsworth's statements, which allegedly concealed "the negative impact on Mercury's financial performance" (PSAC ¶¶ 16, 198), were false because they were later proven to be wrong.  (Mot. at 12-14.)  But Plaintiffs cannot point to any specific information showing that the statements were false *when made*.  Further, the authority that Plaintiffs offer in support of this argument is easily distinguished.  *Laborers District Council Construction Industry Pension Fund v. Sea Ltd.* stands for the proposition that to establish scienter under a core operations theory, a plaintiff must produce either "admissions by one or more corporate executives of *detailed* involvement in the *minutia* of a company's operations, such as data monitoring," or "witness accounts demonstrating that executives had actual involvement in creating false reports."  No. CV-23-01455-PHX-DLR, 2024 WL 3708800, at *16 (D. Ariz. Aug. 7, 2024) (emphasis added); *see also Carmignac Gestion, S.A. v. Perrigo Co. PLC*, No. 17-10467, 2019 WL 3451523, at * 16 (D.N.J. July 31, 2019) (similar); *In re Allaire*, 224 F. Supp. 2d at 329 (similar).  In *Sea Ltd.*, plaintiffs alleged that video game company executives misled the market by claiming the impending loss of licensing rights to one of their most popular games would have "no impact" on their business. 2024 WL 3708800, at *2.  Invoking the core operations theory, plaintiffs asserted that the defendants must have known the game was important to their business because the defendants

acknowledged they tracked "user engagement, monetization metrics, and trends" for their games, and had a contract that required them to provide monthly reports on the game's revenue and usage. *Id.* at *16. The court found those allegations—which alleged the defendants were closely monitoring minutia that *necessarily* contradicted their public statements—contributed to an inference of scienter. No such allegations are present here. Plaintiffs allege that Mr. Ballhaus and Mr. Farnsworth reviewed Mercury's financial condition prior to their statements about Mercury's expected financial performance, but Plaintiffs do not (and cannot) allege specific facts about how that review revealed information that necessarily contradicted the challenged statements, what specifics were learned during that review that contradicted the statements, or why those remarks were false *when made*, not in hindsight.[8]

## II.    AMENDMENT WOULD BE FUTILE BECAUSE THE PSAC FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS

Plaintiffs' arguments concerning the alleged falsity of the challenged statements remain largely unchanged, and thus, the arguments made in Defendants' MTD Brief (at 6-15) and Reply Brief (at 2-10) apply with equal force to the PSAC. Defendants respectfully incorporate those arguments by reference here. As explained in further detail in those papers:

### A.    The "Full Integration" Statements Are Not Actionable

Defendants' statements referencing "full integration" were not false or misleading because the statements were non-actionable expressions of corporate optimism, or "puffery," and Plaintiffs have otherwise not pled specific facts showing that the statements were false or misleading when made. (MTD Br. at 6-10; Reply Br. at 2-7.) Plaintiffs raise several new

---

[8]    Plaintiffs again cite *Crowell* in support of their conclusory allegation that Mr. Ballhaus had a financial motive to engage in fraud, but such non-specific allegations that do not directly link motive to the alleged fraud are insufficient. *See Corban v. Sarepta Therapeutics, Inc.*, 868 F.3d 31, 41 (1st Cir. 2017) (citing cases). Plaintiffs also cite *Washtenaw*, but as noted above, that is a restatement case which involved incorrect reported revenues over the course of five years. The facts of that case are thus inapplicable here.

arguments in response, but none have merit.

*First*, Plaintiffs cite the allegations proffered by FE 1 as purportedly bolstering their claim that Defendants' integration statements were false and misleading.  (Mot. at 14.)  But FE 1's vague, after-the-fact allegations add nothing to the PSAC's falsity allegations for the same reasons they are insufficient to demonstrate scienter, as explained above.

*Second*, Plaintiffs quibble with Defendants' argument that Plaintiffs have mischaracterized many of the integration statements, asserting that the statements must have pertained to "*all* of Mercury's acquisitions" and not to "undefined select acquisitions."  (Mot. at 15.)  The statements are clear on their face, and when read in full and in proper context, it is clear that Plaintiffs' construction of many of the statements is untenable.

*Third*, Plaintiffs continue to argue that the "full integration" statements did not constitute non-actionable puffery, but they are incorrect.  Plaintiffs argue that certain statements (cited in PSAC ¶¶ 231, 239 and 241) are not puffery because Defendants have "conceded" that those statements are "historical," and this Court's decision in *Fitzer v. Security Dynamics Technologies, Inc.*, 119 F. Supp. 2d 12, 23 (D. Mass. 2000) categorically holds that only statements about current or future affairs can constitute puffery.  (Mot. at 15.)  Plaintiffs are wrong on both counts:  Defendants have made no such concession about those statements, and even if they had, *Fitzer* does not say that statements that are not about current or future affairs can never be considered puffery.

Plaintiffs' arguments with respect to the remaining "full integration" statements fare no better.  Plaintiffs assert that "the puffery argument fails . . . because the PSAC adequately alleges . . . that full integration was never achieved for certain acquisitions."  (Mot. at 15-16.)

15

Even if that was true (it is not), that argument misses the mark on the puffery analysis. The pertinent question for assessing puffery is whether a statement would have been material.

At the July hearing, this Court asked, what does "fully integrate" "even mean?" (ECF No. 78, 7/24/2024 Hearing Tr. at 5:22.) There is no universal meaning, which is why courts regularly dismiss comparable statements. Plaintiffs do not meaningfully grapple with the cases cited in Defendants' MTD Brief, which demonstrate that courts routinely hold that comments regarding the status of a company's integration efforts are categorically immaterial, non-actionable statements of optimism. (*See* Mot. at 8-9 (citing cases).)[9] Instead, Plaintiffs contend that their three out-of-circuit district court cases[10] "apply even more forcefully in light of the allegations from FE 1," but that is incorrect. Plaintiffs' cases are inapposite for the reasons stated in Defendants' Reply Brief (at 4-5), and the insufficient allegations attributed to FE 1 do not impact the analysis. Plaintiffs also assert that "full integration was highly material" to investors as a general matter because Defendants spoke about it to investors. (Mot. at 17.) That argument makes little sense—every statement that any court has ever found to be non-actionable puffery was a statement made to investors. Similarly, Plaintiffs' assertion that certain declines in Mercury's stock price over time show that the integration statements must have been material is

---

[9]     Those cases include: *In re Razorfish, Inc. Sec. Litig.*, No. 00 CIV. 9474 (JSR), 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001); *Hensley v. Imprivata, Inc.*, 260 F. Supp. 3d 101 (D. Mass. 2017); *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211 (D. Mass. 1999); *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216 (S.D.N.Y. 2021); and *In re Nokia Corp. Sec. Litig.*, Nos. 19-cv-3509, 19-cv-3982, 2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021). Plaintiffs contend that *Razorfish* does not apply because in that case "the plaintiff conceded at oral argument that there were no facts alleged about the failure to conduct specific integration activities" (Mot. at 16), but that assertion is incorrect. The referenced concession applied to just one of the numerous challenged statements at issue in that case. The concession pertained to a specific integration activity, which the complaint did not allege had not occurred. 2001 WL 111502, at *2. But the remainder of the statements at issue in *Razorfish* were of an equally generic nature as those at issue here, and the *Razorfish* court's observation that the term "integration" is "too loose and uncertain a term on which to premise a claim of securities fraud" applies with equal force here. *Id.*

[10]     Those cases are *Public Empls.' Ret. Sys. v. TreeHouse Foods, Inc.*, No. 16 C 10632, 2018 WL 844420 (N.D. Ill. Feb. 12, 2018); *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018); and *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282 (S.D.N.Y. 2018).

16

baseless—Plaintiffs have asserted no specific facts that show any stock decline was caused by purported undisclosed integration issues. (*See* Reply Br. at 5 n.4.) Defendants' references to full integration were non-actionable puffery.[11]

*Fourth*, Plaintiffs rehash their same fraud by hindsight arguments, but to no avail. Plaintiffs contend that they have overcome Defendants' fraud by hindsight argument because "the PSAC now supplies what Defendants argued was missing from the AC . . . namely allegations from 'internal documents' and 'testimony from [a] percipient witness[]' that 'show[s] Defendants' references to 'full integration' contradicted specific information existing at the time Defendants made those remarks.'" (Mot. at 17 (citing allegations attributed to FE 1).) But as discussed above, FE 1 offers only vague and non-specific after-the-fact observations that fail to show any of the challenged statements were false or misleading *when made*.

Plaintiffs also incorrectly assert that Defendants ignored a portion of Mr. Ballhaus's August 2023 remark referring to "key functional areas," but that language was included in the AC and Defendants have already demonstrated the myriad reasons why Mr. Ballhaus's August 2023 remark does not show that Defendants' preceding statements about full integration were false and misleading. (*See* MTD Br. at 11.) Mr. Ballhaus stated only that it was his initial impression as August 2023 that Mercury "didn't fully integrate some of [its acquired] business" at some undefined points "over the past several years" (PSAC ¶ 193)—the issues he perceived could well have post-dated some or all of Defendants' earlier statements.[12]

---

11    *Allaire* and *Hill v. State Street*, which Plaintiffs rely on, are inapplicable here. *Allaire* is cited for the generic proposition that some current and historical statements may be material to investors, but does not show why the specific statements at issue in this case are material. And in *Hill v. State Street*, the court found that a drop in stock price associated with a particular disclosure "buttress[ed]" the materiality of those statements but did not hold that the stock price drop alone rendered the statements material. The drops in Mercury's stock price Plaintiffs reference do not show that the statements were material.

12    Plaintiffs again cite *Allaire* in support of their fraud-by-hindsight argument. There, this Court found that

**B.    Mr. Aslett's Unbilled Receivables Statements Are Not Actionable**

Plaintiffs repeat their argument that Mr. Aslett's May 2, 2023 remarks about Mercury's financial outlook were false (Mot. at 18-19), but Plaintiffs' arguments again fall short.

As to Mr. Aslett's statement that certain challenges were "not unique to Mercury," Mr. Aslett was referring to other specifically identified "timing" and "cost" challenges that the entire industry was wrestling with, brought on by derivative effects of the global pandemic, which he had previously mentioned during the earnings call. (*See* Tab 21 at 5 (5/2/2023 Earnings Call) ("pandemic-related impacts on execution, supply chain delays and inefficiencies, long semiconductor lead times, tight labor markets and inflation have resulted in cost growth impacting both direct costs and R&D").) Plaintiffs do not allege that Mercury was not facing those challenges. Similarly, as to Mr. Aslett's statement that "[t]he cost growth we're experiencing is associated with certain new technology developments," Plaintiffs do not allege that new technology developments were *not* impacting cost growth. And as to Mr. Aslett's statement about "quickly reliev[ing] unbilled receivables through shipment, invoicing and cash collections," Plaintiffs engage in selective quotation and assert that the statement was false because "Defendants' failure to fully integrate Mercury's acquisitions meant that performance obligations would not be quickly met, which prevented the rapid conversion of unbilled receivables to cash." (Mot. at 18.) Plaintiffs mischaracterize the statement, which said nothing about "rapid" conversion of unbilled receivables "to cash"; rather, Mr. Aslett said only, in the context of a discussion about specific programs that would soon be transitioned to production-

---

allegations stating a non-deteriorating product did not work at "time 'x+1'" could be used to allege that the product did not work at time "x." 224 F. Supp. 2d at 330. As explained in prior briefing, the characterization of a technology company's "full integration" with another is not like an observation of whether a non-deteriorating product works or does not work. An integration can be fairly described as "full" at time "x"—for instance, if a merger has been successfully completed, certain functions are combined, and no issues have arisen—but become "not full" at time "x+1"—if points of dissonance between combined entities emerge. *Allaire* is inapplicable.

18

based contracts, that transition would lead to improved gross margins and adjusted EBITDA and lower working capital in conjunction with "quickly reliev[ing]" unbilled receivables through distinct processes.  Plaintiffs do not—and cannot—explain how or why the full statement is false or misleading in any way.[13]

In addition, as set forth in Defendants motion to dismiss, Mr. Aslett's May 2, 2023 statements are also non-actionable for the independent reasons that they are statements of opinion and are protected by the PSLRA safe harbor.  (*See* MTD Br. at 12-14 & Ex. A)[14]

### C.   Mr. Ballhaus's And Mr. Farnsworth's Statements About Mercury's Financial Performance And Outlook Are Not Actionable

Plaintiffs continue to argue that Mr. Ballhaus's and Mr. Farnsworth's August and November 2023 statements about Mercury's financial performance and outlook were false and misleading (Mot. at 19-20), but Plaintiffs are still incorrect.  Those statements are protected by the PSLRA safe harbor.  (Reply Br. at 10).  Further, while Plaintiffs claim that "defendants Ballhaus and Farnsworth never once addressed the allegations from ¶¶ 198-202 of the PSAC (cited as ¶¶ in the AC) and for good reason" because those allegations "leave no doubt that [they] fully understood the 'estimated cost to [fix the execution challenges] and any roadblocks or risk to completion'" (Mot. at 20), that assertion is demonstrably false.  Defendants cited those same allegations in their MTD Brief (at 17) and explained how those general allegations were

---

[13]   Plaintiffs again cite the allegations attributed to FE 1 as further showing the falsity of Mr. Aslett's statements, but as discussed above, those allegations are vague and do not contradict anything that Mr. Aslett said. In addition, Mr. Aslett's statements are protected by the PSLRA safe harbor for reasons addressed in Defendants' prior submissions. (*See* MTD Br. at 12-13; Reply Br. at 8-9.)

[14]   Plaintiffs cite *N.J. Carpenters* to argue that Mr. Aslett's remarks, and Mr. Ballhaus's and Mr. Farnsworth's statements about Mercury's financial performance and outlook, were not protected forward-looking statements, but that case only stands for the general proposition that "[i]n analyzing a forward-looking statement, the aspect of the statement that is based on the present fact must be distinguished from the aspect of the statement that is a future projection."  537 F.3d at 45 n.13.  That proposition does not apply to these statements.

19

insufficient to show that Mr. Ballhaus's and Mr. Farnsworth's were knowingly false when made. The same arguments made there apply here.

## III.    THE PSAC DOES NOT STATE A CONTROL PERSON CLAIM

Without a viable primary violation of the Exchange Act, there is no basis to maintain a secondary claim under Section 20(a).  15 U.S.C. § 78t(a); *ACA Fin.*, 512 F.3d at 67.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion should be denied and this case should be dismissed with prejudice.[15]

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants respectfully request oral argument.

---

[15]    In addition to the cases addressed above, the Motion cites three additional cases:  *President & Fellows of Harv. Coll. V. Micron Tech.*, 230 F. Supp. 46, 47 (D. Mass. 2017); *Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, No. 22-10200-WGY, 2024 WL 3178638 (D. Mass. Mar. 19, 2024); *Weinberg v. Grand Circle Travel, LLC*, 891 F. Supp. 2d 228 (D. Mass. 2012); and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  The Motion cites those cases for general propositions of law only and they do not weigh in favor of a grant of Plaintiff's Motion.

Dated: September 6, 2024
     Boston, Massachusetts

Respectfully submitted,

*/s/ James R. Carroll*
James R. Carroll (BBO #554426)
Nigel Tamton (BBO #696396)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
nigel.tamton@skadden.com

Susan L. Saltzstein (*pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
 (212) 735-3000
susan.saltzstein@skadden.com

*Counsel for Defendants*
*Mercury Systems, Inc., Mark Aslett,*
*Michael Ruppert, William Ballhaus*
*and David Farnsworth*

21