# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>MERCURY SYSTEMS, INC., MARK ASLETT, MICHAEL D. RUPPERT, WILLIAM L. BALLHAUS, and DAVID E. FARNSWORTH,<br><br>　　　　　　　　　　　Defendants. | No. 1:23-cv-13065-WGY<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE THE [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**Leave to File Granted on September 17, 2024 (ECF No. 88)** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................................1

II.     ARGUMENT.............................................................................................................2

     A.      The PSAC Alleges a Strong Inference of Scienter Against Defendants .................3

     B.      The PSAC Alleges a Strong Inference of Scienter Against Defendants
         Ballhaus and Farnsworth.......................................................................................8

     C.      The PSAC's Full Integration Statements Are Actionable .....................................9

     D.      The PSAC's Unbilled Receivables Statements Are Actionable ...........................12

     E.      The PSAC's FY24 Performance Statements Are Actionable...............................13

III.    CONCLUSION........................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*City of Miami Firefighters' & Police Officers' Retirement Trust v. Cerence, Inc.*,
2024 WL 1258149
(D. Mass. Mar. 25, 2024) ...........................................................................................3, 4, 7

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*,
22 F.4th 1 (1st Cir. 2021) ...............................................................................................5, 8

*Fitzer v. Security Dynamics Technologies, Inc.*,
119 F Supp. 2d 12
(D. Mass. 2000) ...................................................................................................................10

*Hensley v. Imprivata, Inc.*,
260 F. Supp. 3d 101 (D. Mass. 2017) ......................................................................10

*Hill v. State St. Corp.*,
2011 WL 3420439
(D. Mass. Aug. 3, 2011)...................................................................................................11

*In re Allaire Corp. Sec. Litig.*,
224 F. Supp. 2d 319 (D. Mass. 2002) ...................................................................7, 12

*In re Cabletron Sys., Inc.*,
311 F.3d 11 (1st Cir. 2002)..............................................................................................4, 5

*In re Fed Ex Corp. Sec. Litig.*,
517 F. Supp. 3d 216 (S.D.N.Y. 2021)........................................................................10

*In re Nokia Corp. Sec. Litig.*,
2021 WL 1199030
(S.D.N.Y. Mar. 29, 2021) ...............................................................................................10

*In re Peritus Software Servs., Inc. Sec. Litig.*,
52 F. Supp. 2d 211 (D. Mass. 1999) .......................................................................10

*In re Razorfish, Inc. Securities Litigation*,
2001 WL 1111502
(S.D.N.Y. Sept. 21, 2001).................................................................................................10

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
2024 WL 3708800
(D. Ariz. Aug. 7, 2024) ...................................................................................................8, 9

**Page**

*Metzler Asset Management GmbH v. Kingsley*,
   928 F. 3d 151 (1st Cir. 2019) .......................................................................................4

*Van Ormer v. Aspen Tech., Inc.*,
   145 F. Supp. 2d 101 (D. Mass. 2000) ..........................................................................6

*Yan v. ReWalk Robotics Ltd.*,
   973 F.3d 22 (1st Cir. 2020) ..........................................................................................5

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Civ. P.
   Rule 15(a)(2)...............................................................................................................1


**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995
   Pub. L. No. 104-67, 109 Stat. 737 (1995)...............................................................2, 13

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for leave to file the PSAC pursuant to Fed. R. Civ. P. 15(a)(2).  *See* ECF Nos. 82-85.[1]

## I.    INTRODUCTION

Faced with numerous new allegations in the PSAC that particularize scienter as requested by the Court during the July 24, 2024 hearing on Defendants' motion to dismiss the AC, Defendants raise a futility challenge that should be rejected because it ignores many of these allegations, engages in the type of improper factual argument that is impermissible on a motion to dismiss, and fails to address the corroborating nature of the PSAC's scienter allegations.

The thrust of Defendants' argument is that scienter has not been adequately alleged because FE1 started to work at Mercury in February 2023 and Defendants' full integration statements were made earlier.  Defendants are wrong.  In making this argument, Defendants ignore the PSAC's allegations that FE1 was hired to help achieve full integration of acquisitions because they had never been fully integrated since being acquired.  FE1 confirmed that POC had not been fully integrated since December 2020, and that specific integration functions (including all of the tasks that defendant Aslett falsely told investors in February 2022 were "fully integrated") never achieved full integration before or during FE1's tenure.  These allegations are corroborated by defendant Ballhaus's admission of Mercury's full integration failure by FY20, and by Mercury's 2021 and 2022 unbilled receivables and cash flow results.  Thus, the timing of FE1's employment proves that full integration for POC and other acquisitions had never been achieved since before the Class Period – otherwise FE1 would not have been hired to help accomplish full integration.

---

[1]    All defined terms have the same meanings ascribed to them in Plaintiffs' Memorandum of Law In Support of Motion for Leave to File the PSAC, dated August 23, 2024 ("Pltf. Mem."). ECF No. 83.  "Def. Opp." refers to the memorandum of law filed by Defendants and defendants Ballhaus and Farnsworth opposing Plaintiffs' Motion for Leave to File the PSAC, dated September 6, 2024. ECF No. 86.  Citations to "¶__" are to the PSAC. ECF No. 84-1. Unless otherwise noted, all emphasis in quotations is added and all internal citations and quotation marks are omitted.

The other theme of Defendants' opposition is their recycled and incorrect argument that the PSAC does not allege a definition for full integration. Again, Defendants are wrong. The PSAC particularizes the meaning of full integration in the context of a roll-up acquisition strategy like the M&A Strategy, explaining full integration as follows: "[t]he acquiring company achieves full integration when the acquired company is fully absorbed into the infrastructure of the acquiring company such that the acquired company no longer retains its individual structure and is indistinguishable from the acquiring company." This means an acquisition has either been fully integrated, or it has not, and once full integration is achieved that status is permanent and it cannot regress. Thus, Defendants' argument that achieving full integration is not a "black-or-white matter" both contravenes the PSAC's allegations and lacks any factual foundation.

Defendants' scienter arguments for defendants Ballhaus and Farnsworth also fail because they incorrectly argue that the PSAC alleges scienter from events post-dating August 2023. The PSAC repeatedly and unequivocally alleges that by July 2023 defendants Ballhaus and Farnsworth gained knowledge of the costs needed to convert unbilled receivables to cash for the 20 challenged contracts – the precise costs that decimated Mercury's FY24 profits. This demonstrates scienter.

Finally, Defendants reiterate their falsity arguments even though the Court did not raise such concerns at the July 24, 2024 hearing. But Defendants make no new arguments, and fail to address that the PSAC has meaningfully supplemented the AC's falsity and materiality allegations. Thus, Defendants' rehashed falsity arguments are inapposite.

Because the PSAC pleads scienter and falsity with the particularity required by the PSLRA, Plaintiffs respectfully request that their motion for leave to file the PSAC be granted.

## II.    ARGUMENT

Defendants' challenge the PSAC only on futility grounds, and attack scienter and falsity specifically. *See* Def. Opp. at 3-4. For the reasons explained below, these arguments fail.

A.        The PSAC Alleges a Strong Inference of Scienter Against Defendants

In contesting scienter, Defendants fail to address how the ***combination*** of the allegations from FE1, Mercury's 2021 and 2022 unbilled receivables and cash flow results, defendant Ballhaus's admission, Defendants' own statements about Mercury's full integration efforts, Defendants' financial motives, Defendants' resignations linked to the failure to fully integrate, and the core operations doctrine do not adequately allege scienter. Def. Opp. at 4-12. Instead, Defendants ignore key allegations and make legally incorrect arguments, as described below.

*First*, Defendants avoid critical allegations from FE1 in arguing that the timing of FE1's employment at Mercury precludes a strong inference of scienter. Def. Opp. at 5-7. Starting in February 2023, FE1 was responsible for "help[ing] facilitate integration of the engineering processes of the businesses that Mercury had acquired pursuant to the M&A Strategy" (¶131), *i.e.*, the same "engineering platforms" defendant Aslett falsely told investors had been "fully integrated" by February 2022. ¶239. This means FE1 was hired to help fix the Company's ***continued and ongoing*** failure to fully integrate acquisitions, including POC – Mercury's largest by far (¶51) – in particular. ¶136.[2] Thus, POC, as well as other acquisitions, had not been fully integrated – meaning "fully absorbed into the infrastructure of [Mercury] such that [POC] no longer retains its individual structure and is indistinguishable from [Mercury]" (¶105) – since December 2020, when Mercury acquired POC. ¶136. This timing aligns with the FY20 start time for the failure to fully integrate "key functional areas" provided by defendant Ballhaus (¶193), and the ballooning unbilled receivables and cash flow dissipation that began in early 2021. ¶¶79-102.[3]

---

[2]    Defendants do not address ¶¶131 or 136 in opposing Plaintiffs' motion. *See generally* ECF No. 86.

[3]    Thus, contrary to Defendants' argument (Def. Opp. at 7 n.4), FE1 is no different than the former employee in *City of Miami Firefighters' & Police Officers' Retirement Trust v. Cerence, Inc.*, 2024 WL 1258149 (D. Mass. Mar. 25, 2024), because FE1's "specific allegations are corroborated by [Mercury's] actual [unbilled receivables and cash flow] results[.]" *Id.* at *13. In addition, like FE1, the former employee in *Cerence* was one salesperson in a company that

The First Circuit has acknowledged that "the corroborative nature of the other facts alleged" – here, defendant Ballhaus's admission and Mercury's unbilled receivables and cash flow results in 2021 and 2022 – and "the reliability of the [FE]" – here, an individual who was hired to help fix Mercury's persistent integration problems and who was responsible for ensuring full integration of Mercury's engineering processes for acquisitions made pursuant to the M&A Strategy – warrants crediting allegations from former employees, meaning allegations like those from FE1 are sufficient to meet the PSLRA's scienter standard. *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29-30 (1st Cir. 2002); *see also id.* at 32 ("Each securities fraud complaint must be analyzed on its own facts; there is no one-size-fits-all template.").

Defendants' remaining challenges to FE1 are equally unavailing. Def. Opp. at 5-7. FE1 does not "offer[] only vague observations" or "speculation" (*id.* at 5-6), but instead particularizes that Mercury never achieved full integration at any point before or during FE1's tenure, with specific examples of what was not fully integrated (*i.e.*, engineering platforms and ERP, HRIS, CRM, and financial systems). ¶¶131-140. Nor do FE1's allegations lack "any references to particular acquisitions" – FE1 confirmed that POC was never fully integrated (¶¶132-136) – or "documents" – FE1 explained that the requirements of engineering playbooks needed for full integration to be achieved were never met during the Class Period. ¶138. Likewise, the metrics submitted by FE1 to an executive who Mercury admits was a direct report to defendant Aslett showed precisely what Defendants "learned from such monitoring" (Def. Opp. at 7)[4] – that full integration had not been achieved for certain acquisitions. ¶140. And FE1's detailing of specific

---

was engaged in a scheme to increase current sales that would "hurt future growth opportunities" (*id.* at *3), no different than Defendants' scheme to falsely boost Class Period profits at the expense of Mercury's future profit. ¶¶46-225.

[4]    By contrast, in *Metzler Asset Management GmbH v. Kingsley*, 928 F. 3d 151, 162 (1st Cir. 2019) (Def. Opp. at 7), a former employee alleged only that executives were monitoring metrics, and failed to explain, as FE1 does, what the metrics would have revealed to the company's executives.

full integration failures – such as engineering platforms and ERP, HRIS, CRM, and financial systems (¶139) – for POC and others are not "conclusory,"[5] Defendants' only response to ¶¶134 and 139. Effectively, Defendants' "argument that even more detail be required, before there is any discovery, here amounts to requiring plaintiffs to plead evidence." *Cabletron*, 311 F.3d at 33.

Finally, in arguing that *Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021) "does not help Plaintiffs," Defendants acknowledge that allegations that a product "'never worked'" that were ***not*** ascribed to a specific former employee (Pltf. Mem. at 7 n.3) suffice to adequately allege scienter. Def. Opp. at 7-8 n.4. The allegations accepted in *Carbonite* are far less particular than those provided by FE1 (¶¶131-140), whose title and job description are alleged in the PSAC, meaning *Carbonite* supports a finding that the PSAC adequately alleges scienter. Moreover, Defendants' argument that achieving full integration is not a "black-or-white matter" (Def. Opp. at 7 n.4) contradicts the PSAC's new allegations that define full integration in the context of a roll-up acquisition strategy like the M&A Strategy, which proves that achieving full integration ***is*** "black-or-white": "[t]he acquiring company achieves full integration when the acquired company is fully absorbed into the infrastructure of the acquiring company such that the acquired company no longer retains its individual structure and is indistinguishable from the acquiring company." ¶105; *see generally* ¶¶103-111.[6]

*Second*, Defendants reiterate their fraud by hindsight argument for defendant Ballhaus's admission, incorrectly arguing that "there is no allegation that circumstances [in July 2023] were the same as they were one or two years prior." Def. Opp. at 8-9. The PSAC alleges precisely that

---

[5]  *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 30-31 (1st Cir. 2020) (Def. Opp. at 7), merely stands for the proposition that conclusory allegations should be rejected, and does not analyze allegations from a former employee to assess whether they are conclusory. Thus, Defendants fail to explain how specific allegations about what was not fully integrated – precisely the particularity they previously demanded (Def. Mem. at 11) – are conclusory.

[6]  Defendants do not address ¶¶103-111 in opposing Plaintiffs' motion. *See generally* ECF No. 86.

– Mercury's unbilled receivables and cash flow performance in 2021 and 2022 demonstrate that the Company was not fully integrating acquisitions at all times during the Class Period (¶¶79-102), and FE1 confirmed that POC had never been fully integrated since December 2020. ¶¶134-136. The timing of both allegations aligns with the FY20 start time given by defendant Ballhaus for when Mercury began failing to fully integrate "key functional areas" of the acquisitions made pursuant to the M&A Strategy. ¶193. Further, defendant Ballhaus reviewed Mercury's "unbilled receivables balances by program" to assess "free cash flow conversion" in July 2023 (¶200) – the very same data that Defendants publicly reported each quarter in 2021 and 2022. ¶199. Defendants' rehashed fraud by hindsight argument – which ignores that the PSAC's new allegations are corroborated by defendant Ballhaus's admission – is therefore insufficient.[7]

*Third*, in contesting the PSAC's scienter allegations derived from Mercury's 2021 and 2022 unbilled receivables and cash flow results, Defendants wrongly speculate that Mercury's "increase in unbilled receivables could have been caused by other factors [unrelated to the failure to fully integrate]." Def. Opp. at 9-10. Not so. Defendant Ballhaus linked Mercury's "increases in unbilled receivables" since FY20 to the "execution challenges" caused by the "lack of full integration of key functional areas[.]" ¶193. Indeed, the PSAC is replete with allegations "demonstrating that integration problems were the but-for cause of the rise in increased unbilled receivables" (Def. Opp. at 10) by particularizing that the failure to fully integrate acquisitions caused Mercury to not meet performance obligations on acquired over time contracts. ¶¶56-102.[8]

---

[7]     The lone case Defendants cite involved just one paragraph of general allegations that were deemed to constitute fraud by hindsight, which hardly compares to the PSAC's numerous interwoven allegations demonstrating Mercury's failure to fully integrate acquisitions throughout the Class Period. *See Van Ormer v. Aspen Tech., Inc.*, 145 F. Supp. 2d 101, 104 (D. Mass. 2000) ("plaintiffs' entire case depends upon the sufficiency of the allegations in paragraph 2"). Likewise, Defendants' attempt to distinguish the cases cited by Plaintiffs (Pltf. Mem. at 8) fails because the PSAC does "allege[] that the true cause [of the fraud] . . . was in place during the entire class period." Def. Opp. at 9 n.5.

[8]     Defendants again impermissibly speculate by arguing that none of Mercury's 20 challenged contracts were acquired pursuant to the M&A Strategy. Def. Opp. at 10. But, as defendant Ballhaus admitted, the very thing causing

Unable to plausibly contest the PSAC's factual allegations, Defendants resort to misstating the law in arguing that "accurate public data" can never support scienter. Def. Opp. at 10-11. This Court has recognized the opposite. Pltf. Mem. at 9 (citing *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 325-26 (D. Mass. 2002)). Here, Defendants' false assurances of full integration were the reason that analysts and investors were unable to understand the true cause of Mercury's rapid increase in unbilled receivables and dissipation of cash flow until the end of the Class Period. ¶221. Thus, the PSAC **does** allege that Mercury's 2021 and 2022 results were "used to support a narrative," *i.e.*, that those results were not problematic because of Defendants' false statements that full integration had supposedly been achieved. *Cerence*, 2024 WL 1258149, at *16.

*Fourth*, Defendants argue that the PSAC's motive allegations are insufficient (Def. Opp. at 11), but fail to address the prior decisions of this Court recognizing that such allegations can support scienter. Pltf. Mem. at 10. Likewise, Defendants argue that their resignations are not linked to the alleged fraud (Def. Opp. at 11), ignoring that the PSAC's allegations demonstrate the temporal proximity between these resignations and the revelation of Mercury's full integration failure. Pltf. Mem. at 10-11. With respect to core operations, Defendants again misapprehend this doctrine for the reasons Plaintiffs previously explained, and again concede that fully integrating acquisitions was a core operation of Mercury. *See id.* at 11. And for Defendants' motive, resignations, and core operations arguments, they again ignore that these allegations must be assessed holistically in the context of the PSAC's new scienter allegations. *See supra* at 4.

*Fifth*, Defendants do not address the PSAC's scienter allegations based on Defendants' specific and repeated statements about full integration during each Mercury quarterly earnings call

---

these contracts to be challenged was that the failure to fully integrate them prevented the contracts from meeting their performance obligations. ¶193. Only contracts that were acquired can be impacted by integration failures. ¶¶56-102.

in 2021 and 2022 (¶¶80-97), or defendant Aslett's admission in May 2021 that he had been "going over all the individual line items . . . in the various programs," which necessarily included the unbilled receivables for Mercury's acquired contracts (¶142). *See* Def. Opp. at 4-12. Indeed, defendant Aslett provided specific updates on POC's integration status during the Class Period. ¶¶123-124. Defendants' failure to address these allegations is unsurprising – as Plaintiffs have explained, the First Circuit recognized in *Carbonite* that allegations of this caliber are more than sufficient to adequately allege scienter. Pltf. Mem. at 9-10. So too here.[9]

### B. The PSAC Alleges a Strong Inference of Scienter Against Defendants Ballhaus and Farnsworth

Defendants wrongly argue that the PSAC's scienter allegations for defendants Ballhaus and Farnsworth are not sufficiently particularized and do not establish scienter by August 2023. Def. Opp. at 12-14. Among other things, these defendants admit that ***in July 2023*** they personally conducted weekly, granular reviews of Mercury's 20 challenged programs and specifically "their estimated costs to complete and any roadblocks or risk to completion" and "our major unbilled receivables balances by program[.]" ¶¶198-202; Pltf. Mem. at 12. As the cases cited by Plaintiffs explain, these are precisely the type of admissions of pre-statement knowledge that are routinely found to satisfy the PSLRA's scienter standard. *Id.* at 12-13.

In attempting to distinguish one of Plaintiffs' cases (*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 WL 3708800, at *16 (D. Ariz. Aug. 7, 2024)), Defendants argue that scienter was adequately alleged because in *Sea* the defendants "tracked 'user engagement,

---

[9]    Defendants incorrectly argue that the PSAC's due diligence and 1MPACT allegations do not "relate to the scienter analysis." Def. Opp. at 12 n.7. Conducting due diligence on each acquisition informed Defendants that Mercury was acquiring over time contracts that needed to be fully integrated in order to contribute to the Company's profit. ¶¶111, 270. Likewise, the 1MPACT initiative announced in August 2021 constituted a comprehensive review of Mercury's acquisitions to identify additional synergies beyond full integration, again indicating Defendants' personal and close attention to the full integration status of Mercury's acquisitions at all times during the Class Period. ¶¶143-148.

monetization metrics, and trends' for their games," and this data contradicted the company's positive public statements. Def. Opp. at 13-14. Here, defendants Ballhaus and Farnsworth admit that they reviewed the costs needed to convert the unbilled receivables for the 20 challenged programs to cash in July 2023 – *the very same costs that decimated Mercury's FY24 profit*. Pltf. Mem. at 12-14. Specifically, Defendants Ballhaus and Farnsworth conducted an admittedly "granular" review of these costs and "literally look[ed] at it program by program every week" leading up to August 15, 2023. ¶202. This can only be characterized as "admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations[.]" *Sea*, 2024 WL 3708800, at *16. Thus, *Sea* fully supports finding that scienter is adequately alleged for defendants Ballhaus and Farnsworth.

Finally, Defendants argue that the motive allegations for defendant Ballhaus are not directly linked to his fraud. Def. Opp. at 14 n.8. The PSAC makes this connection, however, by alleging that defendant Ballhaus was placed on the Board specifically to sell the Company at a premium valuation to benefit an activist investor (Pltf. Mem. at 13), meaning he was highly motivated to misrepresent Mercury's FY24 financial prospects to investors less than two months after announcing that defendant Aslett's efforts to sell Mercury had failed spectacularly. *Id.*

### C.    The PSAC's Full Integration Statements Are Actionable

Defendants' falsity arguments for their full integration statements (Def. Opp. at 14-17) fail for the reasons Plaintiffs have argued (Pltf. Mem. at 14-18), and for the reasons described herein.

*First*, for the reasons described above, the allegations provided by FE1 support a finding of falsity for the same reasons they support a strong inference of scienter. *See supra* at 3-5.

*Second*, Defendants do not respond to Plaintiffs' detailed explanation for why their full integration statements apply to all of Mercury's acquisitions from the M&A Strategy (Pltf. Mem. at 15), other than to reiterate their incorrect mischaracterization argument. Def. Opp. at 15.

*Third*, in moving to dismiss the AC, Defendants faulted Plaintiffs for not citing this Court's decision in *Fitzer v. Security Dynamics Technologies, Inc.*, 119 F Supp. 2d 12, 23 (D. Mass. 2000) (Young, J.) (Def. Rep. at 5 n.3), but now seek to retract their admission that *Fitzer* stands for the proposition that historical statements cannot be deemed inactionable puffery. Def. Opp. at 15. This tactic should be rejected because Plaintiffs accurately cite *Fitzer*. *See* Pltf. Mem. at 15.

In addition, Defendants again ignore the PSAC's specific allegations that the POC acquisition was never fully integrated, that the specific integration activities described by defendant Aslett in ¶239 were never achieved (¶¶134-139), and that Mercury's unbilled receivables and cash flow results in 2021 and 2022 demonstrated Mercury's full integration failure to Defendants (¶¶56-102), precisely the type of allegations that were missing in the puffery cases Defendants cite.[10] Def. Opp. at 16 & n.9. Even worse, Defendants fail to meaningfully address the puffery cases cited by Plaintiffs (Pltf. Mem. at 16), other than to deem them "inapposite" (Def. Opp. at 16 & n.10) without countering any of Plaintiffs' arguments.

Defendants (Def. Opp. at 16) then proceed to again disregard the PSAC's new allegations that particularize what it means to "fully integrate" acquisitions in a roll-up acquisition strategy like the M&A Strategy and why full integration is the secret sauce to the success of such strategies (¶¶103-111) – because without it, "acquired contracts will become non-performing, precluding

---

[10]    These cases are also inapposite because, unlike here, they did not involve statements about "full integration," but rather statements about "success" and plans being "on track." *See Hensley v. Imprivata, Inc.*, 260 F. Supp. 3d 101, 126 (D. Mass. 2017) (rejecting generic statements that an integration was "on plan, on target," not specific representations about having fully integrated acquisitions); *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 227-29 (D. Mass. 1999) (Young, J.) (dismissing statement about an integration's "success" because the plaintiff did not provide specific instances of integration failure); *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 236 (S.D.N.Y. 2021) (dismissing a statement about the success of integrating a sales force because the pleading was "devoid of any factual allegations about the integration of the sales force"); *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *8 (S.D.N.Y. Mar. 29, 2021) (finding the statement that integration "went beautifully" was puffery). Moreover, Defendants concede that *In re Razorfish, Inc. Securities Litigation*, 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001) did not assess statements about "full integration" or "fully integrated" acquisitions (Def. Opp. at 16 n.9), nor do they deny that *Razorfish* asserts no bright line rule on puffery, or that the plaintiff in *Razorfish* conceded the failure to allege specific integration failures. *See* Pltf. Mem. at 16 n.9.

increased revenue and profit from that acquisition." Pltf. Mem. at 4. Defendants also ignore their repeated statements that achieving full integration was "core" to the M&A Strategy. *Id.* at 16-17.

These allegations alone adequately allege materiality, but the PSAC alleges more by pointing to the four over 10% declines in Mercury's stock caused by the revelation of "undisclosed integration issues." Def. Opp. at 16-17. Defendants do not challenge that these corrective disclosures are adequately alleged, meaning their argument that there is no connection between these declines and their alleged fraud must be rejected. *Id.* Indeed, Defendants appear to confirm that such declines support a finding of materiality. *Id.* at 17 n.11 (conceding that stock declines "'buttress'" materiality) (citing *Hill v. State St. Corp.*, 2011 WL 3420439, at *15 (D. Mass. Aug. 3, 2011)). Thus, these declines strongly demonstrate materiality. Pltf. Mem. at 17.

*Fourth*, in contending again that defendant Ballhaus's August 2023 admission is fraud by hindsight (Def. Opp. at 17), Defendants ignore that: (1) defendant Ballhaus admitted to a "lack of full integration of key functional areas" since FY20, *i.e.*, before the Class Period; (2) defendant Ballhaus was relying on the same internal data and documents that were available to Defendants in 2021 and 2022, which demonstrated that full integration was never achieved; and (3) Mercury's 2021 and 2022 unbilled receivables and cash flow results consistently showed that full integration had not been achieved. *See* Pltf. Mem. at 7-8, 17-18.[11] Thus, Defendants' argument that "the issues [defendant Ballhaus] perceived could well have post-dated some or all of Defendants' earlier statements" (Def. Opp. at 17) is flatly contradicted by these uncontested allegations.

Defendants also argue that they previously addressed the "key functional areas" portion of this admission in moving to dismiss the AC (Def. Opp. at 17 (citing Def. Mem. at 11)), but no such argument exists in any page of any brief filed by Defendants in this case. Defendants avoid this

---

[11] Instead, Defendants raise the same arguments about FE1 that fail for the reasons discussed above. *See supra* at 3-5.

language because it demonstrates that the critical areas of full integration – *e.g.*, those described by defendant Aslett in ¶239 – were in fact never achieved during the Class Period.  ¶193.

Finally, Defendants attempt to distinguish this Court's decision in *Allaire* (Def. Opp. at 17 n.12), again ignoring that the PSAC now alleges the definition of full integration in the context of a roll-up acquisition strategy: "[t]he acquiring company achieves full integration when the acquired company is fully absorbed into the infrastructure of the acquiring company such that the acquired company no longer retains its individual structure and is indistinguishable from the acquiring company."  ¶105.  This either has happened, or it has not, meaning Defendants' speculative argument that "[a]n integration can be fairly described as 'full' at time 'x' . . . but become 'not full' at time 'x+1'" is factually incorrect.  *See* Def. Opp. at 17-18 n.12.  A fully integrated acquired company that has relinquished its individual structure cannot be de-integrated.

### D.    The PSAC's Unbilled Receivables Statements Are Actionable

The PSAC's allegations demonstrate that defendant Aslett knew, or recklessly disregarded, that the true reason why one dozen acquired over time contracts were experiencing "challenges" as of May 2023 was Mercury's failure to fully integrate acquisitions (and particularly POC).  Pltf. Mem. at 18-19.  In response, Defendants resort to mischaracterizing those statements in attempting to convince the Court that they were about something else.  Def. Opp. at 18-19.  They are wrong.

As recounted by FE1 – who Defendants concede worked at Mercury in May 2023 when defendant Aslett made the statements challenged in ¶251 (*id.* at 19 n.13) – and as admitted by defendant Ballhaus during the fiscal quarter following May 2023 (¶193), the actual cause of Mercury's "challenges" with the one dozen acquired contracts (¶251), and related "cost growth" and failure to "quickly relieve unbilled receivables" (*id.*), was the "lack of full integration of key functional areas" of Mercury's acquisitions, and POC in particular.  ¶¶134-136, 193.  In fact, defendant Ballhaus stated in August 2023 that Mercury had not been facing supply chain issues,

but instead "we've actually seen it start to normalize in terms of lead times." Def. Ex. 22 at 15 (ECF No. 66-25). Thus, Plaintiffs do, in fact, "allege that Mercury was not facing" supply chain issues, and instead full integration failures caused Mercury's challenges. Def. Opp. at 18; *cf.* ¶159.

Defendants are also wrong that "Plaintiffs do not allege that new technology developments were *not* impacting cost growth[.]" Def. Opp. at 18 (emphasis in original). The PSAC alleges that "the execution problems caused by Mercury's failure to fully integrate acquisitions had prevented the completion of performance obligations, and the true source of Mercury's cost growth was the additional costs needed to meet these performance obligations[.]" ¶253.

Likewise, Plaintiffs do not engage in "selective quotation" of the "quickly relieve unbilled receivables" statement. Def. Opp. at 18. Read in full, defendant Aslett stated that Mercury was currently trying to achieve "***lower working capital*** as we ***quickly*** relieve unbilled receivables through shipment, invoicing ***and cash collections***" (¶251), which was false because the inability to meet performance obligations caused by the failure to fully integrate prevented any conversion of unbilled receivables to cash. ¶254. Thus, this statement ***is*** directly "about 'rapid' conversion of unbilled receivables 'to cash[.]'" Def. Opp. at 18.

Finally, Defendants ignore that they previously conceded that defendant Aslett's May 2023 statements are not forward-looking (Pltf. Mem. at 19), meaning the PSLRA safe harbor cannot apply to those statements as a matter of law. *See* Def. Opp. at 19 & n.14.[12]

### E.    The PSAC's FY24 Performance Statements Are Actionable

Defendants concede that the challenged statements by defendants Ballhaus and Farnsworth (¶¶255-263) are not opinions. Def. Opp. at 19-20. Defendants also provide no substantive response to Plaintiffs' arguments that the statements in ¶255 are not forward-looking, or that the

---

[12]    Defendants' opinion arguments fail for the reasons Plaintiffs previously argued. *See* Pltf. Opp. at 12.

cited risk disclosures are insufficient.  *Id.*  And, by citing the scienter section of their motion to dismiss brief (*id.* (citing Def. Mem. at 17)), Defendants confirm that ¶¶198-202 were not addressed "in contesting falsity[.]"  Pltf. Mem. at 20.  Thus, for these reasons, and for those Plaintiffs argued in moving for leave to file the PSAC, these statements are actionable.  *Id.* at 19-20.

## III.    CONCLUSION

For the foregoing reasons, and for those stated in Plaintiffs' opening memorandum of law (ECF No. 83), Plaintiffs respectfully request that the Court grant leave to file the PSAC.

DATED: September 16, 2024                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (*pro hac vice*)
MICHAEL G. CAPECI (*pro hac vice*)
JONATHAN A. OHLMANN (*pro hac vice*)


*/s/ Michael G. Capeci*
MICHAEL G. CAPECI

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com
johlmann@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com

GRANT & EISENHOFER P.A.
DANIEL L. BERGER (*pro hac vice*)
CAITLIN M. MOYNA (*pro hac vice*)
CECILIA E. STEIN (*pro hac vice*)
TIMOTHY CLARK B. DAUZ (*pro hac vice*)
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone:  646/722-8500
646/722-8501 (fax)
dberger@gelaw.com
cmoyna@gelaw.com
cstein@gelaw.com
tdauz@gelaw.com

*Co-Lead Counsel for Plaintiffs*

HUTCHINGS, BARSAMIAN, MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

*Local Counsel for Plaintiffs*

WEINBERG, ROGER & ROSENFELD, P.C.
EZEKIEL D. CARDER
1375 55th Street
Emeryville, CA 94608
Telephone: 510/337-1001
510/337-1023 (fax)
ecarder@unioncounsel.net

*Additional Counsel for Lead Plaintiff*

ABRAHAM, FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
JACK G. FRUCHTER
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone:  212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
jfruchter@aftlaw.com

*Additional Counsel for UPRRS*

- 15 -