UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NORTH COLLIER FIRE CONTROL AND          :
RESCUE DISTRICT FIREFIGHTERS'
PENSION PLAN, individually and on behalf of  :
all others similarly situated,

                                                :

            Plaintiff,          Civil Action
      v.          :          No. 23-13065-WGY

MERCURY SYSTEMS, INC., MARK          :          **LEAVE TO FILE GRANTED**
ASLETT, MICHAEL RUPPERT, WILLIAM L.          **ON OCTOBER 1, 2024**
BALLHAUS, and DAVID E. FARNSWORTH,  :

            Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' SUR-REPLY
### IN FURTHER SUPPORT OF THEIR OPPOSITION TO
### PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

James R. Carroll
Nigel Tamton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
nigel.tamton@skadden.com

Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
 (212) 735-3000
susan.saltzstein@skadden.com

*Counsel for Defendants*
*Mercury Systems, Inc., Mark Aslett,*
*Michael Ruppert, William Ballhaus*
*and David Farnsworth*

Dated:  October 1, 2024

Plaintiffs' Reply in support of their Motion for leave to amend confirms that the Proposed Second Amended Complaint fails to state any actionable claims and that this case should be dismissed with prejudice.  Defendants further respond to the Reply as follows:

**A.    The Reply Mischaracterizes Mr. Ballhaus's August 2023 Remarks In Attempting To Manufacture A But-For Link Between Unbilled Receivables And Purported "Full Integration" Issues**

As noted in Defendants' Opposition, a central feature of Plaintiffs' theory of fraud is a supposed but-for link between increases in Mercury's unbilled receivables and alleged issues Mercury experienced "fully integrating" its acquisitions.  (*See* Opp. at 9-11.)  The Reply claims the issues are linked because Mr. Ballhaus purportedly linked them in his August 2023 remarks. (Reply at 6, 12.)  That is wrong.

When Mr. Ballhaus delivered his August 2023 remarks providing his initial impressions upon stepping in as CEO, he identified several issues he believed the Company was facing, including that Mercury (i) did not "fully integrate some of the businesses" it acquired, and (ii) did not "mature processes and management systems to align with Mercury's evolving business portfolio."  (ECF No. 66-25 at 6-7.)  Mr. Ballhaus connected the latter issue— organizational maturity, *not perceived integration issues*—to increased unbilled receivables, stating: "because our management systems and processes have not matured at the same pace as our growth . . . a small number of programs have become challenged" and faced "execution challenges," which in turn drove "increases in unbilled receivables." (*Id.* at 7-8.)  He simply did not, as the Reply claims, link unbilled receivable levels to purported integration issues (nor did he state that the challenged programs he described were *acquired* contracts).  (*See* Reply at 6 n.8.)  As such, Plaintiffs cannot rely on Mr. Ballhaus's August 2023 remarks to establish a link between unbilled receivable levels and purported "full integration" issues, and the PSAC does not otherwise include particularized allegations establishing a link.

This is critical to Plaintiffs' claims.  Because Plaintiffs have not adequately alleged a but-for link between unbilled receivable levels and purported integration issues, Plaintiffs cannot (as they try) simply point to allegations that Defendants were paying attention to Mercury's unbilled receivable levels to show that Defendants somehow must have known about integration problems.  (*See* Reply at 6, 8, 9.)  There is no reason to infer that information Defendants reviewed regarding unbilled receivables would have alerted them to purported integration issues contradicting their challenged statements.

**B.      Plaintiffs' Conclusory Definition Of "Full Integration" Does Not Override The Weight Of Authority Holding Comparable Integration Statements Not Actionable As A Matter Of Law**

The Reply claims that the PSAC is different than the many complaints challenging "integration" statements that courts have found not actionable as a matter of law because the PSAC challenges references to "full integration," which per the PSAC's proffered definition, is a "black-or-white" matter.  (*See* Reply at 5, 10, 12.)  But the Court is not obligated to credit the PSAC's conclusory and unattributed allegations purporting to define "full integration" when assessing motion to dismiss arguments.  *E.g.*, *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 30-31 (1st Cir. 2020) ("disregarding conclusory allegations" in evaluating motion to dismiss).  Nor should those unattributed allegations be credited.  There are no allegations that show Plaintiffs' definition of "full integration" is commonly shared, that it was consistent with how market participants would have understood Defendants' references to the term, or that it was actually shared by Defendants at the time the challenged statements were made.

Stripped of Plaintiffs' self-serving "full integration" definition, the challenged statements are no different than the "successful" and "complete" integration statements held not actionable in *In re Razorfish, Inc. Securities Litigation*, No. 00 CIV. 9474 (JSR), 2001 WL 1111502, at *1 (S.D.N.Y. Sept. 21, 2001), or the comparable statements held not actionable in

2

the cases cited in Defendants' prior submissions (*see* MTD Br. at 8-9).

To be sure, the recent decision in *Leadersel Innotech ESG v. Teladoc Health, Inc.*, 2024 WL 4274362 (2d Cir. Sept. 24, 2024)—where a court found more specific "full integration" statements actionable based on more specific supporting allegations—does not instruct otherwise. There, plaintiffs challenged statements that claimed two companies' commercial organizations "had been 'fully integrated,' *using specific business units as examples*," and describing specific actions taken by teams within those business units. *Id.* at *4 (emphasis added). The complaint included allegations "from multiple confidential witnesses who worked for [the company] *in the relevant timeframe*" and provided specific examples of a lack of integration, which were supported "with emails and other documentation," and which directly contradicted the challenged statements' claims about the actions that were taken by those teams. *Id.* (emphasis added). Notably, the challenged statement in *Teladoc* regarding data platforms and tech stacks that had already been "integrated" was not found actionable because a confidential witness alleged that years later, that integration was not complete, but because witnesses alleged that the process of integration *had not even begun* until after the challenged statement was made. *Id.* at *5.

Here by contrast, the challenged "full integration" statements *did not* refer to specific business units or actions taken by specific teams,[1] the only former employee allegations in the PSAC come from a purported employee who *did not* work at Mercury during the relevant timeframe, and the PSAC *does not* particularize its allegations with support from *any* non-public documentation. For those reasons, *Teladoc* is inapposite—it does not show that the challenged

---

[1] While it is true that Defendants did reference certain integration activities in some of their challenged statements (*i.e.*, PSAC ¶¶ 233, 239 (commenting that acquisitions had been moved to common ERP, HRIS and CRM systems)), as noted in Defendants' Opposition, the PSAC does not include any particularized, non-conclusory allegations contradicting those statements. (*See* Opp. at 7.)

statements here are actionable (and it certainly does not show that Plaintiffs have adequately alleged scienter).

**C.      FE 1's Allegations Do Not Support An Inference
Of Scienter, And The Reply Fails To Show Otherwise**

The Reply fails to rehabilitate allegations attributed to FE 1.  (Reply at 3-5.)

*First*, the Reply is wrong that FE 1's allegations regarding purported integration issues are "corroborated" by "Mercury's unbilled receivables and cash flow results."  (*See id.* at 3 n.3, 4.)  As described above, those matters are not linked to the alleged integration issues.

*Second*, the Reply's attempt to analogize FE 1's allegations to the former employee allegations in *Carbonite* also fails.  Plaintiffs' analogy rests on their view that "full integration" is akin to whether a product works or does not work.  (Reply at 5 (citing *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021).)  It is not.  As noted above and in prior submissions, "full integration" is an imprecise and subjective term—notwithstanding the PSAC's conclusory and unattributed allegations purporting to define the phrase.[2]  Accordingly, the *Carbonite* former employee allegations—that a product was internally reported to have never worked *at the same time* management touted it—are far more definite than the allegations attributed to FE 1 here, not less.

*Third*, the Reply fails to remedy the timing problem Defendants flagged with respect to FE 1's allegations.  Because FE 1's tenure began *after* the challenged "full integration" statements, he could not have possibly known of specific facts that *contemporaneously* made

---

[2]      Even the PSAC's self-serving definition of "full integration" reveals the imprecise and subjective nature of the term.  According to Plaintiffs, a company is "fully integrated" when it is "indistinguishable from the acquiring company."  (PSAC ¶ 105.)  Indistinguishable according to whom, in what respects and to what degree?  The answer is anyone's guess.

those statements false or misleading when made.[3]  The Reply claims that the fact that FE 1 was purportedly hired in February 2023 to "facilitate integration" shows integration issues existed "since December 2020"—but that is a non-sequitur.  (Reply at 3.)  FE 1 could have been hired to facilitate further integration of issues that appeared the week before he was hired, not in 2020. Plaintiffs cannot back-cast what FE 1 purportedly observed and was hired to do in February 2023 to a convenient date more than two years earlier.  That too is impermissible fraud by hindsight.

## D.    Plaintiffs' Scienter Allegations Defy Credulity When Viewed Together

The Reply claims that Defendants fail to address "the combination" of Plaintiffs' scienter allegations, implying that the whole is better than the sum of the parts.  (Reply at 1, 7.) It is not.  Indeed, when Plaintiffs' hodgepodge allegations are looked at together, the absurdity of Plaintiffs' theory is made plain.  As but some examples, according to Plaintiffs:

- Mr. Aslett and Mr. Ruppert[4] intentionally duped the market into thinking Mercury's acquisitions were perfectly integrated, while *at the same time*, Mercury *publicly disclosed* that it faced risks relating to its "ability to successfully integrate acquisitions," and analysts repeatedly flagged those risks in their assessment of the Company (*see* MTD Br. at 3-4);[5]

- Defendants hid their "full integration" issues from the market, but *at the same time*, *publicly disclosed* Mercury's "ballooning" levels of unbilled receivables that were not being converted to cash—*i.e.*, the effect of the problem that was purportedly hidden (*e.g.*, PSAC ¶ 12), and the *same* information that Plaintiffs allege "demonstrated Mercury's full integration failure to *Defendants*"—meaning,

---

[3]    Indeed, the timing problem with FE 1's allegations is made plain by the recent *Teladoc* decision that Plaintiffs rely on, where the court noted the relevance in that case of allegations from former employees "who worked for [the company] in the relevant timeframe." 2024 WL 4274362 at *4 (emphasis added).  FE 1 did not work at Mercury during the relevant timeframe.  He joined after the last challenged "full integration" statement. Allegations attributed to him are therefore categorically unlike the former employee allegations in *Teladoc*, because they lack the relevant timing component that the *Teladoc* court specifically noted in its analysis.

[4]    It is worth noting that the Reply does not even mention Mr. Ruppert's name.  Plaintiffs cannot rely on a litany of vague and conclusory scienter allegations that lump Defendants together to meet their burden of pleading scienter with particularity.

[5]    *See Holbrook v. Trivago N.V.*, No. 17 Civ. 8348(NRB), 2019 WL 948809, at *22 (S.D.N.Y. Feb. 26, 2019) ("any semblance of an inference of fraudulent intent raised by plaintiffs is rendered implausible by [defendant's] numerous and fulsome disclosures").

5

> per Plaintiffs' theory, the disclosure of unbilled receivable levels would have demonstrated the purported hidden integration issues to *the market* as well (Reply at 10 (emphasis added));[6] and

- Mr. Ballhaus disclosed the truth about Mercury's full integration issues in August 2023 (for no apparent reason), but *at the same time*, led a new regime that with Mr. Farnsworth, perpetuated the fraud by continuing to mislead the market with deceptive forward-looking projections (*e.g.*, *id.* ¶¶ 15-17).[7]

Plaintiffs' theory of fraud defies credulity. *Tellabs* instructs courts to look at allegations collectively to determine whether they give rise to an inference of scienter "at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 309 (2007). The allegations here do not. The more compelling inference is that Defendants made their statements without fraudulent intent, believing them to be true when made.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Opposition, Plaintiffs' Motion should be denied and this case should be dismissed with prejudice.

---

[6] Defendants never claimed that "'accurate public data' can never support scienter," as the Reply contends, but rather that the accurate public data Defendants disclosed does not support Plaintiffs' scienter theory. (*Compare* Opp. at 10-11 *with* Reply at 7.) Plaintiffs suggest that Defendants used disclosed data in conjunction with their "full integration" statements to "support a narrative" that the disclosed results "were not problematic"—but that makes no sense. (Reply at 7.) The data did not show that "full integration" had been achieved, and Plaintiffs do not explain how Defendants used the data to show that it was.

[7] The Reply states that when Mr. Ballhaus disclosed Mercury's purported integration issues in August 2023, he "was relying on the same internal data and documents that were available to Defendants in 2021 and 2022." (Reply at 11.) There is nothing in the PSAC that supports that claim.

Dated: October 1, 2024
Boston, Massachusetts

Respectfully submitted,

*/s/ James R. Carroll*
James R. Carroll (BBO #554426)
Nigel Tamton (BBO #696396)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
nigel.tamton@skadden.com

Susan L. Saltzstein (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
 (212) 735-3000
susan.saltzstein@skadden.com

*Counsel for Defendants*
*Mercury Systems, Inc., Mark Aslett,*
*Michael Ruppert, William Ballhaus*
*and David Farnsworth*

7