# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORTH COLLIER FIRE CONTROL AND   :
RESCUE DISTRICT FIREFIGHTERS'
PENSION PLAN, individually and on behalf of  :
all others similarly situated,

                              :

            Plaintiff,           Civil Action
                             :     No. 23-13065-WGY

      v.

                             :     **ORAL ARGUMENT REQUESTED**

MERCURY SYSTEMS, INC., MARK
ASLETT, and WILLIAM L. BALLHAUS,   :

           Defendants.      :

                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY THIS ACTION AND RELATED RELIEF

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 4

I.      Factual Background ............................................................................................. 4

II.     Procedural History ................................................................................................ 7

LEGAL STANDARD........................................................................................................... 8

ARGUMENT ..................................................................................................................... 9

I.      The Alleged Misstatements Had No Price Impact, Which Rebuts the Fraud-on-
        the-Market Presumption of Reliance, and Thus Requires Denial of Class
        Certification. ........................................................................................................ 9

        A.      The Fully Integrated Statement Had No Price Impact......................................... 10

                1.      The Mismatch Between the Fully Integrated Statement and the
                        Alleged Corrective Disclosures Refutes Any Price Impact...................... 10

                2.      Contemporaneous Analyst Reports Further Supports the Absence
                        of Price Impact........................................................................... 13

                3.      The Factual Record and Common Sense Further Demonstrate That
                        the Fully Integrated Statement Had No Price Impact ............................. 14

        B.      The Cost Growth and Margin Profile Statements Had No Price Impact.............. 16

II.     Even if a Class Could Be Certified, the Court Should Narrow the Class Period So
        that it Ends No Later Than August 15, 2023. ................................................... 18

III.    Even if a Class Could Be Certified, it Should Not Include Activist Investors
        JANA and Starboard Because They Have Unique Defenses Rendering Them
        Atypical of Lead Plaintiffs......................................................................... 19

CONCLUSION................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ark. Teacher Ret. Sys. v. Goldman Sachs Group, Inc.*,
    77 F.4th 74 (2d Cir. 2023) ...............................................................................................13, 17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988).............................................................................................................1, 9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)...................................................................................................................8

*In re Concho Resources, Inc.*,
    No. 4:21-cv-2473, 2025 WL 1040379 (S.D. Tex. Apr. 7, 2025).............................................12

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
    No. H-21-2045, 2023 WL 6300569 (S.D. Tex. Sept. 27, 2023)..............................................16

*Goldman Sachs Group, Inc. v. Ark. Teacher Ret. Sys.*,
    594 U.S. 113 (2021)...................................................................................................... *passim*

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
    818 F.3d 775 (8th Cir. 2016) ................................................................................................15

*In re Intuitive Surgical Sec. Litig.*,
    No. 5:13-cv-01920, 2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) .......................................10

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
    No. 20-cv-4953, 2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024)......................................12, 13

*MAZ Partners LP v. Shear*,
    No. 11-11049, 2016 WL 183519 (D. Mass. Jan. 14, 2016)....................................................19

*In re Moody's Corp. Sec. Litig.*,
    274 F.R.D. 480 (S.D.N.Y. 2011) ...........................................................................................14

*Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*,
    348 F.R.D. 268 (D. Mass. 2025).......................................................................................18, 19

*Ruiz v. NEI Gen. Contracting, Inc.*,
    No. 21-cv-11722, 2024 WL 869445 (D. Mass. Feb. 29, 2024)..............................................18

*Shupe v. Rocket Cos., Inc.*,
    752 F.Supp.3d 735 (E.D. Mich. 2024).....................................................................................12

*In re Stone & Webster, Inc. Sec. Litig.*,
   No. 00-10874, 2007 WL 9822718 (D. Mass. Sept. 7, 2007) ............................................19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..........................................................................................................8

*Yi Xiang v. Inovalon Holdings, Inc.*,
   327 F.R.D. 510 (S.D.N.Y. 2018) ...............................................................................18, 19

**STATUTES**

Securities Exchange Act § 10(b),
   15 U.S.C. § 78j(b) ............................................................................................................1

Securities Exchange Act § 20(a),
   15 U.S.C. § 78t(a) ...........................................................................................................1

**RULES**

Fed. R. Civ. P. 23(a) ...............................................................................................8, 18, 19

Fed. R. Civ. P. 23(b) ...............................................................................................2, 8, 9, 18

Defendants Mercury Systems, Inc. ("Mercury" or the "Company"), William L. Ballhaus, and Mark Aslett (collectively, "Defendants"), respectfully submit this Opposition to Plaintiffs' Motion to Certify This Action and Related Relief, ECF No. 125, and accompanying Memorandum of Law in Support, ECF No. 126, filed by plaintiffs Carpenters Pension Trust Fund for Northern California, University of Puerto Rico Retirement System, and North Collier Fire Control and Rescue District Firefighters' Pension Plan (collectively, "Plaintiffs"). Plaintiffs purport to bring this action on behalf of all purchasers of Mercury common stock between February 1, 2022, and February 6, 2024,[1] inclusive, under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. *See* Second Amended Complaint ("SAC") ¶ 1, ECF No. 102.

**INTRODUCTION**

To certify a class, Plaintiffs must, among other things, show that reliance can be established on a class-wide basis. They attempt to make that showing here using the fraud-on-the-market presumption established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Relying on their proposed expert, Dr. Steven Feinstein, Plaintiffs presume that members of the proposed class relied on the remaining challenged statements because the market for Mercury stock was efficient and, therefore, those statements purportedly impacted Mercury's stock price promptly after they were made. This, however, is not enough. Defendants can rebut the fraud-on-the-market presumption at the class certification stage where, as here, there is direct and indirect evidence demonstrating that the challenged statements did not, in fact, impact Mercury's stock price. *See Goldman Sachs Group, Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 119 (2021). As explained herein and in the supporting report of Defendants' expert, Dr. Andrew Roper, there is no connection between the remaining alleged misstatements and the purported corrective disclosures alleged by Plaintiffs, and

---

[1] This Court's February 20, 2025 Memorandum and Order, ECF No. 100, changed the beginning date of the putative class period from February 3, 2021 to February 1, 2022.

1

economic analysis demonstrates that the remaining challenged statements had no price impact. This fact rebuts the presumption that proposed class members relied on those statements, leaving Plaintiffs unable to demonstrate that common questions predominate under Rule 23(b)(3). Plaintiffs' motion for class certification must therefore be denied.

Plaintiffs' claims stem from their core allegation that Defendants purportedly misrepresented on February 1, 2022, that Mercury had "fully integrated" all of the businesses it had recently acquired. Plaintiffs allege that these statements were false because Mercury's integration of its acquisitions was either incomplete or flawed. They claim that the other remaining statements on May 2, 2023, and August 15, 2023, about cost growth, unbilled receivables, and a temporary shift in Mercury's margin profile in connection with certain challenged development programs were false because they failed to disclose that those issues were attributable to integration failures. Plaintiffs claim that the truth was revealed by four alleged corrective disclosures announcing disappointing financial metrics with respect to Mercury's working capital, unbilled receivables, and cash flows, causing the Company's stock price to decline. The problem with Plaintiffs' theory is that none of the alleged corrective disclosures say anything about the purportedly concealed "truth": Mercury's alleged failure to "fully integrate" its acquisitions. Without this link between the challenged statements and the revelation of the supposed truth, Plaintiffs cannot establish any price impact from the alleged false statements.

As the Supreme Court has explained, the inference that an alleged misstatement impacted a company's stock price "starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure." *Goldman*, 594 U.S. at 123. Here, the challenged February 1, 2022 statement concerning "full integration" was a general statement about Mercury's efforts to integrate its acquired businesses. By contrast, each of the four alleged

2

corrective disclosures were about particular financial metrics resulting from certain challenged development programs. Those statements, on their face, bear no relation to the integration of Mercury's acquired entities. Nor did analysts view them as such—only one contemporaneous analyst report made passing use of the phrase "full integration," and even then, that report did not refer to Mr. Aslett's February 1, 2022 statement. This mismatch refutes any finding of price impact.

The absence of any price impact is further confirmed by Mercury's stock price movements during the putative class period. The day following Mr. Aslett's "fully integrated" statement, Mercury's stock price experienced a statistically significant *decrease*—contrary to Plaintiffs' claim that that statement inflated the Company's stock price. Plaintiffs then claim that Mr. Ballhaus "admitted" that Mercury had not fully integrated its acquisitions a year later, on August 15, 2023. Telling, however, Plaintiffs do not claim that Mr. Ballhaus's supposed admission constituted a corrective disclosure. That might seem a mere oversight at first blush—after all, if there had been any misimpression that Mercury was "fully integrated," Mr. Ballhaus's statement surely would have corrected it. The reality, however, is that Plaintiffs cannot allege that statement was corrective because Mercury's stock price experienced a statistically significant *increase* that day—directly contradicting Plaintiffs' claims. Taken together, the lack of front-end and back-end price impact is entirely inconsistent with Plaintiffs' theory of price inflation.

Nor did the remaining alleged misstatements—on May 2, 2023, and August 15, 2023—impact Mercury's stock price. Plaintiffs allege that those statements concealed that the Company's failure to integrate led to execution challenges on certain challenged programs. But again, none of the alleged corrective disclosures say anything about the integration status of Mercury's acquisitions or that a failure to integrate caused the headwinds faced by the challenged programs.

3

Because none of the alleged misstatements had any price impact, the class-wide presumption of reliance is rebutted, and this Court should deny Plaintiffs' motion for class certification.

Separately, even if the Court determines that some class should be certified, any such class should be limited in two respects. First, the class period must end no later than August 15, 2023, the date on which Plaintiffs allege that Mr. Ballhaus "admitted" that Mercury had not fully integrated some of the businesses it had acquired. Second, the putative class includes activist investors who must be excluded as atypical because they invested in Mercury based on a different thesis than a typical shareholder, and therefore are subject to a unique reliance defense.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Background[2]

Plaintiffs allege that, in the years leading up to the putative class period, Mercury pursued a multifaceted growth strategy, including by acquiring companies, SAC ¶ 46, 48, which Mercury sought to unify "under the Mercury brand with the combined sales force and single go-to-market strategy as well as . . . shared culture and values," SAC ¶ 239. From FY14 through February 2022, Mercury completed 15 acquisitions. *Id.*

During an earnings call on February 1, 2022, Mercury's then-CEO, Mr. Aslett, discussed Mercury's efforts to integrate its acquired businesses, stating Mercury "completed 15 acquisitions" and "[w]e fully integrated these acquired entities by moving them to common collaboration and engineering platforms as well as common ERP, HRIS and CRM systems while also consolidating facilities"; Mr. Aslett also stated that the Company had grown its revenue "through the synergies that we've generated through full integration" (collectively, the "Fully Integrated Statement"). *Id.*

---

[2] Given the Court's familiarity with the factual allegations in this case, Defendants reiterate only certain of them with particular relevance to the question of class certification.

Plaintiffs claim that the Fully Integrated Statement was materially false and misleading because Mercury had not fully integrated the acquired entities referenced by Mr. Aslett. SAC ¶¶ 232, 240.

Plaintiffs' operative complaint and motion for class certification purposefully leave out the fact that Mr. Aslett then went on to explain that integration efforts remained ongoing at four of the Company's most recent acquisitions. Just minutes after making the Fully Integrated Statement, Mr. Aslett discussed Mercury's recent acquisitions of Avalex and Atlantic Micro before stating, "[b]oth integrations are progressing well as are the integrations of POC and Pentek, which we acquired last year." Ex. 1, Q2 2022 Earnings Call Tr. at 6. A similar disclosure also appeared in the Company's Form 10-Q, filed just days later, which reported that "[m]anagement is in the process of integrating the Pentek, Avalex and Atlanta Micro businesses into our overall internal control over financial reporting environment." Ex. 2, Form 10-Q, February 8, 2022, at 36. Thereafter, Mercury told the market about its ongoing integration of recently acquired businesses (as integration was a process, not an event), and the risk to its results that those efforts posed on the following dates: May 3, 2022; May 10, 2022; August 2, 2022; August 16, 2022; November 1, 2022; November 8, 2022; January 31, 2023; May 2, 2023; August 15, 2023; November 7, 2023; and February 6, 2024. *See* Ex. 3, Roper Report ¶¶ 56, 60, 87, 120, 145, 171.

During an earnings call on May 2, 2023, Mr. Aslett discussed certain challenges impacting approximately twelve of Mercury's programs, stating, among other things, "[t]he cost growth we're experiencing is associated with certain new technology developments that are nearing completion" and that such challenges were "not unique to Mercury." SAC ¶ 251. That same day, Mercury filed a Form 8-K, which stated that "[o]ur challenges are . . . largely timing and cost-related, they're short-term, and they're not unique to Mercury" (collectively, the "Cost Growth Statement"). *Id.* Plaintiffs claim that the Cost Growth Statement was false and misleading

5

because Mercury's cost growth supposedly resulted directly from Mercury's failure to fully integrate its acquisitions, not new technology developments, and was therefore unique to Mercury. SAC ¶¶ 252-54.  Notably, Plaintiffs omit that Mr. Aslett made essentially the same statements on an August 2, 2022 earnings call, during which he stated "[f]ortunately, the issues we're experiencing are not demand related. They're supply and timing related, they're temporary and they're not unique to Mercury."  Ex. 4, Q4 2022 Earnings Call Tr. at 6.  Plaintiffs do not allege that Mr. Aslett's August 2, 2022 statements were false or misleading.

On August 15, 2023, Mr. Ballhaus was appointed President and CEO of Mercury.  SAC ¶ 192.  On that day, in an earnings call addressing investors as CEO for the first time, Mr. Ballhaus stated that Mercury's "reported margin in 2023 does not at all reflect a structural shift in our margin profile" and that execution problems with Mercury's challenged programs were "unanticipated" and "temporary" (collectively, the "Margin Profile Statement").  SAC ¶ 255.   Plaintiffs assert that the Margin Profile Statement was false and misleading because Defendants' supposed failure to fully integrate Mercury's acquisitions allegedly caused execution problems that would necessitate increased costs, and thus represent a structural shift in Mercury's margin profile, and that Defendants' execution problems were not unanticipated or temporary.  SAC ¶¶ 256-57.

During the same August 15, 2023 earnings call, Mr. Ballhaus stated that Mercury "didn't fully integrate some of the businesses and mature processes and management systems to align with Mercury's evolving business portfolio" and that the "lack of full integration of key functional areas have led to the serious challenges the Company experienced forecasting business performance over the past several quarters."  SAC ¶ 255.

Separately, on December 23, 2021, JANA Partners LLP ("JANA"), an activist investor, announced its beneficial ownership of 6.6% of Mercury's outstandings shares.  SAC ¶ 171.  On

6

January 13, 2022, a second activist investor, Starboard Value LP ("Starboard") announced its beneficial ownership of 7.3% of Mercury's outstanding shares. SAC ¶ 173. Plaintiffs assert that leading up to the putative class period, JANA and Starboard began "agitating" for a sale of the Company. SAC ¶ 174. On June 24, 2022, Mercury announced that it had entered into separate cooperation agreements with both JANA and Starboard and each nominated a candidate—Mr. Ballhaus and Howard L. Lance, respectively—to Mercury's Board of Directors. SAC ¶ 180.

## II.    Procedural History

Plaintiffs filed this putative class action on December 13, 2023, against Mercury, Mr. Aslett, and former Mercury CFO, Michael Ruppert. Compl., ECF No. 1. Plaintiffs later filed an amended complaint, adding claims against Mr. Ballhaus and Mercury's current CFO, David Farnsworth. Am. Compl., ECF No. 57. This Court dismissed Plaintiffs' amended complaint on July 24, 2024. Mot. to Dismiss Hr'g Tr., at 8:12-14, ECF No. 78.

Plaintiffs moved for leave to file a second amended complaint, alleging seventeen misstatements. *See* Pls.' Mot. for Leave, ECF No. 83; SAC ¶¶ 239, 251, 255. On February 20, 2025, this Court allowed that motion in part, dismissing Plaintiffs' claims as to all but the Fully Integrated Statement, Cost Growth Statement, and Margin Profile Statement, and dismissing all claims against Messrs. Ruppert and Farnsworth. Mem. and Order at 47, ECF No. 100.

Plaintiffs allege that, by pursuing acquisitions, Mercury shifted its business model to contracts using over-time accounting for revenue recognition despite knowing, or recklessly disregarding, that this shift "meant that the Company's unbilled receivables would balloon if the Company could not meet the performance obligations on its acquired contracts." SAC ¶¶ 64, 67. Plaintiffs go on to claim that Mercury's failure to integrate its acquisitions caused the execution problems that impacted a limited subset of programs, purportedly causing the Company to fall

7

short of its performance obligations on over-time contracts representing 20% of Mercury's revenue and leaving it unable to convert unbilled receivables to cash.  SAC ¶¶ 71, 74-75.

According to Plaintiffs, Mercury disclosed information on August 2, 2022, May 2, 2023, November 7, 2023, and February 6, 2024 that revealed the falsity of Defendants' challenged statements.  SAC ¶¶ 22-25.  Notably absent from Plaintiffs' list of alleged corrective disclosures, however, is Mr. Ballhaus's statements on August 15, 2023, that Mercury "*didn't fully integrate*" some of its acquisitions and that the "*lack of full integration* of key functional areas have led to the serious challenges the Company experienced forecasting business performance over the past several quarters."  SAC ¶ 255 (emphases added).  Plaintiffs claim that through these statements, Mr. Ballhaus "admitted" that Mercury failed to fully integrate its acquisitions, SAC ¶ 138, and "confirmed" that the Fully Integrated Statement was false and misleading, SAC ¶ 139.  But Plaintiffs do not allege that those statements were a corrective disclosure.  SAC ¶¶19-22.  None of Plaintiffs' filings to date have attempted to explain how this statement fits with their theory that the market did not understand that Mercury was not fully integrated until the end of the putative class period in February 2024.

## LEGAL STANDARD

In reviewing Plaintiffs' motion for class certification, this Court must conduct a "rigorous analysis" to determine whether Plaintiffs have met their burden to establish each element of Federal Rule of Civil Procedure 23(a) and (b)(3).  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  Rule 23 requires more than a "mere pleading standard," and analysis oftentimes requires a court "to probe behind the pleadings" on issues that "overlap with the merits of the plaintiff's underlying claim."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013).

8

**ARGUMENT**

To certify a class under Rule 23, Plaintiffs must establish, among other things, that common questions of law or fact "predominate over any question affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs assert that common issues predominate because they can rely on the fraud-on-the-market presumption to establish class-wide reliance on Defendants' alleged misrepresentations. But as discussed below, the evidence shows that none of the alleged misstatements impacted Mercury's stock price, which rebuts the fraud-on-the-market presumption. That failure requires denial of Plaintiffs' motion for class certification.

The Court should not certify Plaintiffs' proposed class for two additional reasons. First, even if Plaintiffs could overcome the absence of price impact, this Court should shorten the class period so that it ends no later than August 15, 2023, the date on which Plaintiffs allege that Mr. Ballhaus stated that Mercury had not fully integrated some of its acquisitions. *See* SAC ¶¶ 138-39, 255. After that date, it would have been unreasonable for investors to have relied on any of the alleged misstatements. Second, even if a class is certified, the activist investors JANA and Starboard are atypical putative class members subject to a unique reliance defense and must therefore be excluded from the class.

**I.      The Alleged Misstatements Had No Price Impact, Which Rebuts the Fraud-on-the-Market Presumption of Reliance, and Thus Requires Denial of Class Certification.**

"Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price" rebuts the fraud-on-the-market presumption of reliance. *Basic*, 485 U.S. at 248. Here, Defendants can show by a preponderance of the evidence that the alleged misrepresentations had no price impact. If an alleged misstatement "had no price impact, then *Basic*'s fundamental premise completely collapses, rendering class certification inappropriate." *Goldman*, 594 U.S. at 119.

9

In assessing price impact at class certification, this Court "should be open to all probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense." *Id.* at 122 (cleaned up). This Court must consider "all record evidence relevant to price impact, regardless of whether that evidence overlaps with materiality or any other merits issue." *Id.* at 124. This analysis must occur on a statement-by-statement basis and, if necessary, this Court can reject class certification as to a subset of the challenged statements. *See, e.g.*, *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920, 2016 WL 7425926, at *14–17 (N.D. Cal. Dec. 22, 2016).

## A.    The Fully Integrated Statement Had No Price Impact.

### 1.    The Mismatch Between the Fully Integrated Statement and the Alleged Corrective Disclosures Refutes Any Price Impact.

Plaintiffs cannot establish a class-wide presumption of reliance for the Fully Integrated Statement because it is generic and unrelated to each of the alleged corrective disclosures. As the Supreme Court has explained, "[t]he generic nature of a misrepresentation often will be important evidence of a lack of price impact," and the inference that a back-end price drop equals front-end inflation "starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure." *Goldman*, 594 U.S. at 123. When an alleged misstatement is generic, and an alleged corrective disclosure is specific, "it is less likely that the specific disclosure actually corrected the generic misrepresentation." *Id*.

To begin, the Fully Integrated Statement is generic on its face. As this Court recognized in its February 20, 2025 order, "integration is a slippery concept and difficult to define." Mem. and Order at 40, ECF No. 100. Mr. Aslett broadly stated that the Company generated growth through "full integration," and elaborated that Mercury "fully integrated acquired entities by moving them to common collaboration and engineering platforms as well as common ERP, HRIS and CRM systems while also consolidating facilities." SAC ¶ 239. Significantly, the challenged

10

statement focuses on the "integration" of Mercury's acquired entities and does not mention any of the topics discussed in the subsequent alleged corrective disclosures, such as execution challenges, working capital, unbilled receivables, or cash flow.  *See id.*  Indeed, Mr. Aslett explained just minutes later that integration efforts *remained ongoing* at four of the Company's most recent acquisitions, comments that Plaintiffs do not even mention, much less attempt to square with their price impact theory.  *See* Ex. 4, Q2 2022 Earnings Call Tr. at 6.  Read in its full context, the Fully Integrated Statement is nothing more than a broad discussion concerning Mercury's growth strategy, including vague and subjective references to the "integration" status of only ***some*** of the Company's acquisitions.

In contrast to the Fully Integrated Statement, each of the four alleged corrective disclosures are specific statements about particular financial metrics that, by their plain terms, have nothing to do with the integration of Mercury's acquired entities.  Plaintiffs allege four corrective disclosures:

- An August 2, 2022 disclosure that Mercury's inability to achieve contractual performance obligations on certain undisclosed contracts was negatively impacting the Company's working capital, unbilled receivables, and cash flow, SAC ¶¶ 22, 279;

- A May 2, 2023 disclosure that Mercury encountered execution challenges in approximately twelve challenged programs, which caused poor cash flow and impacted Mercury's unbilled receivables, SAC ¶¶ 23, 281;

-  A November 7, 2023 disclosure that converting the unbilled receivables tied to twenty of Mercury's challenged programs to cash would require significant costs, SAC ¶¶ 24, 281; and

- A February 6, 2024 disclosure that converting the unbilled receivables tied to Mercury's challenged programs to cash was so costly it would result in revenue declines and substantially reduced adjusted EBITDA, SAC ¶ 25.

The alleged corrective disclosures say nothing about the integration status of Mercury's acquisitions.  As alleged, these purported corrective disclosures supposedly "revealed" that Mercury's performance issues and execution problems were negatively affecting its unbilled receivables and cash flows, leading to margin degradation and revenue declines.  SAC ¶¶ 21-25.

11

Simply put, none of those things has anything to do with integration.  And as demonstrated by Dr. Roper, none of the alleged corrective disclosures provided any new, value relevant information about whether Mercury had fully integrated its acquired businesses.  *See* Ex. 3, Roper Report ¶¶ 81-190.  This is exactly the sort of mismatch that courts have found to rebut the fraud-on-the-market presumption and to defeat class certification.  *See In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20-cv-4953, 2024 WL 1342800, at *8 (S.D.N.Y. Mar. 29, 2024) (finding a "considerable gap" between generic statement about company's focus on internal growth and specific statement about acquisition of particular company); *Shupe v. Rocket Cos., Inc.*, 752 F.Supp.3d 735, 781-82 (E.D. Mich. 2024) (finding "considerable mismatch" between generic statements concerning rising interest rates and company's opportunities for growth and alleged corrective disclosures of particular loan volume and sales data); *In re Concho Resources, Inc.*, No. 4:21-cv-2473, 2025 WL 1040379, at *17 (S.D. Tex. Apr. 7, 2025) (finding mismatch where alleged corrective disclosure did not mention—"even implicitly"—information in alleged misstatement).

The absence of price impact is further demonstrated by Mercury's stock price movement on August 16, 2023—the day after, in Plaintiffs' telling, Mr. Ballhaus supposedly admitted that the Company had not fully integrated its acquisitions.  SAC ¶¶ 138-39.  To reiterate, on February 1, 2022, Mr. Aslett stated that Mercury "*fully integrated*" acquired entities and had achieved "*full integration*."  SAC ¶ 239 (emphases added).  On August 15, 2023, Mr. Ballhaus stated that Mercury "*didn't fully integrate*" and referenced a "*lack of full integration*."  SAC ¶ 255 (emphases added).  Under Plaintiffs' theory, Mercury's stock price therefore should have declined after the August 15, 2023 statement.  Instead, the opposite happened.  On August 16, 2023, Mercury's stock price experienced a statistically significant *increase*.  *See* Ex. 5, Feinstein Report at 94.  That market reaction is fatal to Plaintiffs' claim that the Fully Integrated Statement impacted Mercury's

12

stock price. *See In re Kirkland*, 2024 WL 1342800, at \*8-9 (concluding a "truthful, but equally generic" disclosure correcting alleged misstatement that did not cause a statistically significant stock price decline was "[p]erhaps the most probative evidence" for lack of price impact).

### 2. Contemporaneous Analyst Reports Further Support the Absence of Price Impact.

Courts have held that "market commentary can provide insight into the kind of information investors would rely upon in making investment decisions—and therefore can serve as indirect evidence of price impact." *Ark. Teacher Ret. Sys. v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 104 (2d Cir. 2023) ("*Goldman* II"). Where analyst reports do not reference the alleged misstatements, "there is an insufficient link between the corrective disclosures and the alleged misrepresentations," and analyst commentary that merely "touches on the subject" of an alleged misstatement "does not suggest that the market relied on the . . . statement[]." *Goldman II*, 77 F.4th at 103; *see In re Kirkland*, 2024 WL 1342800 at \*12 (holding that even though analyst reports referred to challenged statement, "none of them indicated that it factored into their valuation").

Here, of the eleven analyst reports published in the days after the Fully Integrated Statement, only one made passing use of the phrase "full integration," and even that report made no reference to Mr. Aslett's comments, simply observing that Mercury's "4.4X expansion of revenue over the last 7 years compares to a 9.2X expansion of EBITDA, which points to full integration of deals over the past 7 years." *See* Ex. 6, Jefferies at 6 (Feb. 6, 2022). That brief and generalized discussion, which merely "touches on the subject" of integration, without referencing Mr. Aslett's challenged remarks, does not show that the market relied on the alleged misstatement. *See Goldman II*, 77 F.4th at 103. The other contemporaneous analyst reports do not discuss "full integration" and those that reference integration at all identify the Company's ability to integrate its acquisitions as a *risk*. *See* Ex. 7, Cannacord Genuity at 6 (Feb. 1, 2022); Ex. 8, RBC Capital

13

Markets at 9 (Feb. 1, 2022); Ex. 9, Truist Securities at 7 (Feb. 1, 2022); Ex. 10, Baird Equity Research at 2 (Feb. 2, 2022); Ex. 11, Bank of America Global Research at 3 (Feb. 2, 2022); Ex. 12, Berenberg Capital Markets at 1 (Feb. 2, 2022); Ex. 13, William Blair at 2 (Feb. 2, 2022); Ex. 14, Bank of America Global Research at 4 (Feb. 3, 2022); Ex. 15, J.P. Morgan at 4 (February 14, 2022). The remaining analyst report does not even mention integration. *See* Ex. 16, Jefferies, (Feb. 1, 2022). These reports make clear that the market did not understand Mr. Aslett's comments to mean that Mercury faced no risk from integration going forward, which is bolstered by Mercury's repeated risk disclosures around integration during the putative class period, *see* Ex. 3, Roper Report ¶¶ 56, 60, 87, 120, 145, 171, and, as explained below, is confirmed by Mercury's stock price *increase* on August 16, 2023. Mr. Ballhaus's August 15, 2023 statement was not news to anyone and the Fully Integrated Statement did not impact Mercury's stock price.

### 3. The Factual Record and Common Sense Further Demonstrate That the Fully Integrated Statement Had No Price Impact.

Even assuming there were some match between the generic Fully Integrated Statement and the alleged corrective disclosures (which there is not), the record demonstrates that the Fully Integrated statement had no impact on Mercury's stock price—either through a front-end price increase or back-end price decline. This lack of front-end price impact, coupled with the lack of back-end price impact, rebuts the presumption of reliance. *See, e.g., In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 493 (S.D.N.Y. 2011).

Mercury's stock price experienced a statistically significant *decline* on February 2, 2022, the day after the Fully Integrated Statement. *See* Ex. 5, Feinstein Report at 85. Over a year later, Mercury's stock price experienced a statistically significant increase on August 16, 2023, *see* Ex. 5, Feinstein Report at 94, the day after, according to Plaintiffs, Mr. Ballhaus stated that Mercury had not fully integrated its acquisitions, SAC ¶¶ 138-39. As discussed, Plaintiffs claim that Mr.

Ballhaus's statement "confirmed" that the Fully Integrated Statement was false and misleading, SAC ¶ 139, and thus, under Plaintiffs' theory, Mercury's stock should have dropped the following day, on August 16, 2023. Instead, Mercury's stock price increased on August 16, 2023, which is inconsistent with Plaintiffs' theory that Mr. Aslett's comments resulted in price inflation. These front-end and back-end price movements demonstrate that the information driving Mercury's price stock price on those dates was entirely unrelated to whether Mercury had "fully integrated" certain of its acquisitions. *See* Ex. 3, Roper Report ¶¶ 11(a)(2), 62-64. As Dr. Roper explains, during the putative class period, Mercury repeatedly informed the market about the risks of the Company's ongoing integration efforts, and thus, the Fully Integrated statement did not change the total mix of information available to the market, which is consistent with the lack of a price decrease on August 16, 2023. *See* Ex. 3, Roper Report ¶¶ 58-61.

And to the extent Plaintiffs claim that the February 1, 2022 statement prevented Mercury's stock price from declining further, Plaintiffs' claimed damages demonstrate the absurdity of that position. As the Supreme Court has observed, a district court's price impact analysis must be "aided by a good dose of common sense." *Goldman*, 594 U.S. at 122; *see IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 782 (8th Cir. 2016) (relying on "common sense" in concluding that Defendant demonstrated lack of price impact). Plaintiffs' theory implies that vague and generic statements concerning Mercury's integration of acquired companies artificially propped up Mercury's stock price by nearly 50%. *See* Ex. 3, Roper Report ¶ 21; Ex. 5, Feinstein Report ¶ 30. It cannot be Plaintiffs' position that 50% of Mercury's stock price was based on the "full integration" of Mercury's acquisitions, which only one of 11 analysts even commented on and, in fact, Mercury made clear on the very same earnings call that it was continuing to integrate its four most recent acquisitions. *See* Section I.A.2., *supra*. Yet, when Mercury's CEO purportedly

15

"admitted" to the falsity of the February 1, 2022 statement on August 15, 2023, the Company's stock price experienced a statistically significant *increase*. Plaintiffs' theory defies common sense.

## B.    The Cost Growth and Margin Profile Statements Had No Price Impact.

As with the Fully Integrated Statement, Plaintiffs cannot establish a presumption of reliance for the Cost Growth or Margin Profile Statements because those statements are unrelated to each of the subsequent alleged corrective disclosures. Plaintiffs allege that the Cost Growth and Margin Profile Statements were materially false or misleading because they purportedly concealed that Mercury's execution challenges were caused by the Company's failure to integrate its acquisitions, SAC ¶¶ 252-53, 256, and that the "truth" of Mercury's supposed integration failures was supposedly revealed on November 7, 2023, and February 6, 2024, SAC ¶¶ 24-25.

Under Plaintiffs' theory, therefore, to be a "match" for the Cost Growth and Margin Profile Statements, the November 7, 2023, and February 6, 2024, alleged corrective disclosures would need to say something about the "full integration" of Mercury's acquisitions. But as discussed, neither of those alleged corrective disclosures speak about the integration status of Mercury's acquisitions or that a failure to integrate caused Mercury's execution challenges. *See* Section I.A.1, *supra*. Those disclosures are, on their face, unrelated to the integration of Mercury's acquisitions. *See Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, No. H-21-2045, 2023 WL 6300569, at *11 (S.D. Tex. Sept. 27, 2023) (finding mismatch where alleged corrective disclosure was unrelated "[o]n its face" to alleged misstatement and even if information in alleged misstatement).

**Cost Growth Statement:** The Cost Growth Statement consists of a statement in Mercury's May 2023 Form 8-K that "[o]ur challenges are . . . largely timing and cost-related, they're short-term, and they're not unique to Mercury," and statements made by Mr. Aslett on the May 2, 2023 earnings call, in which he said "[t]he cost growth we're experiencing is associated with certain

new technology developments that are nearing completion" and "our challenges are . . . cost-related, they're short term, and they're not unique to Mercury." SAC ¶ 251.

The alleged corrective disclosures do not match the Cost Growth Statement. To support a price-impact inference, the alleged corrective disclosure must "expressly and specifically negate" or "directly render false" the alleged misstatement. *Goldman II*, 77 F.4th at 98. Purported corrective disclosures that converting unbilled receivables tied to challenged programs were leading to increased costs, *see* SAC ¶¶ 24-25, do not negate or directly render false Defendants' May 2, 2023 statements that Mercury was experiencing short-term cost growth challenges due to certain technology developments or that such challenges were unique to Mercury, SAC ¶ 251. All of those statements can simultaneously be true.

Moreover, Plaintiffs offer no explanation for why, under their theory, the Cost Growth Statement on May 2, 2023 was a supposedly false and misleading statement that impacted Mercury's stock price, but substantially the same comments made on Mercury's August 2, 2022 earnings call were not. *See* Ex. 4, Q4 2022 Earnings Call Tr. at 5. Nor could they. Instead, Plaintiffs appear to have cherrypicked one version of the statement and a series of unrelated disclosures associated with stock price drops and paired them together to maximize their alleged damages. That lack of internal consistency in Plaintiffs' claims only confirms the absence of a subject matter match between the alleged misstatements and the purported corrective disclosures.

**Margin Profile Statement:** The Margin Profile Statement—the August 15, 2023 statement by Mr. Ballhaus that Mercury's "reported margin in 2023 does not at all reflect a structural shift in our margin profile" and that execution problems with Mercury's challenged programs were "unanticipated" and "temporary"—also is not sufficiently related to either of the subsequent alleged corrective disclosures. SAC ¶ 255. The fact that Mercury disclosed that it

17

faced increased costs due to the conversion of unbilled receivables in November 2023 and February 2024, *see* SAC ¶¶ 24-25, does not mean that Mercury's margin profile experienced a structural shift, or that execution problems were not "unanticipated" or "temporary."  Much less that the Company's disappointing results in FY23 and FY24 were somehow caused by integration failures.  Again, as alleged, the corrective disclosures on their face have nothing to do with the Company's margin profile or with integration.  *See id.*  And, indeed, Mr. Ballhaus's comments about the short-term nature of these dynamics have been proven true by Mercury's subsequent performance: on August 11, 2025, Mercury announced that it achieved $119.4 million in adjusted EBITDA for FY25, a 1,194% increase over FY24.  Ex. 17, Aug. 11, 2025 Press Release.

Because none of the alleged misstatements had any price impact, Plaintiffs cannot meet the presumption of reliance and this Court must deny Plaintiffs' motion for class certification.

## II.    Even if a Class Could Be Certified, It Should End No Later Than August 15, 2023.

This Court may shorten a proposed class period so that the certified class complies with Rule 23.  *See, e.g.*, *Ruiz v. NEI Gen. Contracting, Inc.*, No. 21-cv-11722, 2024 WL 869445, at *9-10 (D. Mass. Feb. 29, 2024).  Assuming that it was appropriate to certify a class at all, and it is not, this Court should shorten the class period so that it ends no later than August 15, 2023.  If investors were misled by the Fully Integrated Statement, that belief would have been fully dispelled by Mr. Ballhaus's statements on August 15, 2023 that Mercury "*didn't fully integrate* some of the businesses and mature processes and management systems" and that the "*lack of full integration* of key functional areas have led to the serious challenges the company experienced forecasting business performance over the past several quarters."  SAC ¶ 255 (emphases added); *see Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.,* 348 F.R.D. 268, 281 (D. Mass. 2025) (shortening class period to date on which alleged misrepresentations were fully corrected by disclosure); *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521 (S.D.N.Y. 2018) (same).

18

Indeed, as explained in Dr. Roper's report, the only analyst to comment on Mercury's "full integration" before August 15, 2023 revised its commentary after that date. *See* Ex. 3, Roper Report ¶ 79. On May 7, 2023, Jefferies wrote that Mercury's margin growth "point[ed] to full integration," but on August 16, 2023, Jefferies dropped the phrase "full integration," writing instead that "management is focused on . . . integrating acquisitions." *See* Ex. 18, Jefferies at 2 (May 7, 2023); Ex. 19, Jefferies at 2 (Aug. 16, 2023).

Nor could any misunderstanding relating to the Cost Growth and Margin Profile Statements have remained after Mr. Ballhaus's August 15, 2023 statements. Under Plaintiffs' own theory, investors would have understood the Cost Growth and Margin Profile Statements as further assurances that Mercury faced no risk that its costs might increase or that its margins might experience a structural shift as a result of integration issues with its acquisitions. *See* SAC ¶¶ 252-53, 256. But after August 15, 2023, it would have been unreasonable for any investor to rely on a purported misstatement that concealed the company's integration challenges. *See Biogen,* 348 F.R.D. at 281; *Yi Xiang*, 327 F.R.D. at 521. Accordingly, the class period should be shortened.

**III.   Even if a Class Could Be Certified, it Should Not Include Activist Investors JANA and Starboard Because They Are Subject to Unique Defenses That Render Them Atypical.**

As this Court has recognized, "potential class members should be excluded based on lack of Rule 23(a)(3) typicality if the defenses against the potential class members would be atypical of their defenses against the named plaintiffs." *See, e.g.*, *MAZ Partners LP v. Shear*, No. 11-11049, 2016 WL 183519, at \*5 (D. Mass. Jan. 14, 2016) (excluding group of shareholders from class who were subject to unique "acquiescence" defense). This Court has likewise held that "shareholder activists" may be subject to a unique "reliance defense" that renders them atypical. *See In re Stone & Webster, Inc. Sec. Litig.*, No. 00-10874, 2007 WL 9822718, at \*7-8 (D. Mass.

Sept. 7, 2007) (finding activist shareholders subject to an atypical "reliance defense" in part because their investment thesis did not rely upon any alleged misstatements).

Here, assuming a class is certified, JANA and Starboard are atypical putative class members subject to a unique reliance defense, and must therefore be excluded from the class. JANA and Starboard share numerous similarities to the shareholder activists in *In re Stone*. For instance, JANA and Starboard invested in Mercury based on a thesis that it was mismanaged and that activist investors could help the Company unlock shareholder value. *See* SAC ¶ 176 (alleging JANA and Starboard were "agitating" to sell the Company); SAC ¶ 179 (alleging Defendants were motivated to sell Mercury to "appease" JANA and Starboard). In addition, during the putative class period, Mercury entered into separate cooperation agreements with both JANA and Starboard and each nominated a candidate to Mercury's Board of Directors. Ex. 20, June 24, 2022 Form 8-K. In July 2023, JANA entered into a voting agreement with Mercury, pursuant to which a Managing Partner at JANA was appointed to Mercury's Board. Ex. 21, July 7, 2023 Form 8-K. Shortly thereafter, JANA began filing insider holding forms with the SEC. Ex. 22, July 11, 2023 Form 3. Plaintiffs also allege that on January 13, 2022, Starboard wrote to Mercury's Board, stating that Starboard had held "conversations over the past several months with the Company's management team" about Mercury's strategic direction. SAC ¶ 174. JANA and Starboard thus had a more in-depth understanding of—and tolerance for—the risk Mercury faced with respect to integration. They based their investments on a belief that they could unlock shareholder value, and they would have purchased the same amount of shares regardless of the alleged misstatements. Accordingly, shares that JANA and Starboard purchased reflect different investment theses from a typical class member and should be excluded. *See In re Stone*, 2007 WL 9822718, at *7-8.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

Dated:  September 19, 2025
   Boston, Massachusetts

             /s/ C. Thomas Brown
             C. Thomas Brown (BBO No. 667558)
             William Davison (BBO No. 682390)
             Monica Mleczko (BBO No. 696607)
             Ropes & Gray LLP
             Prudential Tower
             800 Boylston Street
             Boston, MA 02199
             (617) 951-7464

             *Counsel for Defendants Mercury Systems, Inc.,*
             *and William Ballhaus*


             /s/ Ian D. Roffman
             Ian D. Roffman, Esq., BBO #637564
             Bryan M. Connor, Esq., BBO #688219
             NUTTER McCLENNEN & FISH LLP
             155 Seaport Boulevard
             Boston, MA 02210
             Telephone: (617) 439-2000
             Facsimile: (617) 310-9000
             iroffman@nutter.com
             bconnor@nutter.com

             *Counsel for Defendant Mark Aslett*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2025, a true and correct copy of the foregoing document was served via electronic mail upon:

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN (*pro hac vice)*
MICHAEL G. CAPECI (*pro hac vice)*
MAGDALENE ECONOMOU (*pro hac vice*)
JONATHAN A. OHLMANN (*pro hac vice)*
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com
meconomou@rgrdlaw.com
johlmann@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
SPENCER A. BURKHOLZ (*pro hac vice)*
LAURA M. ANDRACCHIO (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
landracchio@rgrdlaw.com

GRANT & EISENHOFER P.A.
KARIN E. FISCH (*pro hac vice* forthcoming)
CAITLIN M. MOYNA (*pro hac vice*)
CECILIA E. STEIN (*pro hac vice*)
TIMOTHY CLARK B. DAUZ (*pro hac vice*)
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: 646/722-8500
646/722-8501 (fax)
cmoyna@gelaw.com
cstein@gelaw.com
tdauz@gelaw.com
kfisch@gelaw.com

WEINBERG, ROGER & ROSENFELD, P.C.
EZEKIEL D. CARDER
1375 55th Street
Emeryville, CA 94608
Telephone: 510/337-1001
510/337-1023 (fax)
ecarder@unioncounsel.net

ABRAHAM, FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
JACK G. FRUCHTER
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone: 212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
jfruchter@aftlaw.com

HUTCHINGS BARSAMIAN
MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO
#557109110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone: 781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

*/s/ C. Thomas Brown*

C. Thomas Brown