UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 1:23-cv-13065-WGY |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION |
| vs. | ) ) | FOR: (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) CLASS CERTIFICATION FOR SETTLEMENT |
| MERCURY SYSTEMS, INC., et al., | ) ) | PURPOSES; AND (3) APPROVAL OF NOTICE TO THE CLASS |
| Defendants. | ) ) ) | |

4928-6044-9915.v2

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................1

II. A BRIEF HISTORY OF THE LITIGATION .....................................................4

III. SETTLEMENT TERMS .........................................................................................5

IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ...................7

    A. Plaintiffs and Lead Counsel Have Adequately Represented the Class....................9

    B. The Proposed Settlement Was Negotiated at Arm's Length ...................................9

    C. The Settlement Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria ...........................10

        1. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal .......................................................................10

        2. The Proposed Method of Distributing Relief to Class Members and Processing Claims Is Effective ..................................................12

        3. Lead Counsel's Fee and Expense Request Is Fair and Reasonable ...........13

        4. Identification of Other Agreements ..............................................................14

    D. The Settlement Treats Class Members Equitably Relative to Each Other ............14

    E. The Reaction of the Class to the Settlement ..........................................................14

V. THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .................15

    A. The Class Meets the Requirements of Rule 23(a) .................................................15

    B. The Class Meets the Requirements of Rule 23(b)(3)............................................17

VI. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND SHOULD BE APPROVED .....................................................19

VII. PROPOSED SCHEDULE OF EVENTS...........................................................20

VIII. CONCLUSION...................................................................................................20

4928-6044-9915.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................................18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)......................................................................................................17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)......................................................................................................18

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass 2015),
*aff'd*, 809 F.3d 78 (1st Cir. 2015) ..................................................................................8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................8, 9, 10, 12

*Dahhan v. OvaScience, Inc.*,
No. 1:17-cv-10511-IT, ECF 210 (D. Mass. Dec. 20, 2022) ......................................13

*De Giovanni v. Jani-King Int'l, Inc.*,
262 F.R.D. 71 (D. Mass. 2009).....................................................................................17

*Einhorn v. AxoGen, Inc.*,
2019 WL 5636382 (M.D. Fla. Apr. 30, 2019).............................................................17

*Hill v. State St. Corp.*,
2015 WL 127728 (D. Mass. Jan. 8, 2015)...............................................................11, 19

*In re AVEO Pharms., Inc. Sec. Litig.*,
2017 WL 5484672 (D. Mass. Nov. 14, 2017) .............................................................16

*In re Bos. Sci. Corp. Sec. Litig.*,
604 F. Supp. 2d 275 (D. Mass. 2009) .....................................................................15, 16

*In re Credit Suisse-AOL Sec. Litig.*,
253 F.R.D. 17 (D. Mass. 2008).....................................................................................18

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
275 F.R.D. 382 (D. Mass. 2011)...............................................................................17, 18

4928-6044-9915.v2

**Page**

*In re Lupron Mktg. & Sales Pracs. Litig.*,
   228 F.R.D. 75 (D. Mass. 2005)..............................................................................................7

*In re Lupron Mktg. & Sales Pracs. Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ....................................................................................8

*In re Pegasystems Inc. Sec. Litig.*,
   No. 1:22-cv-11220-WGY, ECF 147 (D. Mass. May 15, 2024)...............................................15

*In re Puerto Rican Cabotage Antitrust Litig.*,
   269 F.R.D. 125 (D.P.R. 2010) ...............................................................................................9

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   630 F. Supp. 3d 241 (D. Mass. 2022) ...................................................................................14

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005).................................................................................7, 12, 17

*In re StockerYale, Inc. Sec. Litig.*,
   2007 WL 2410361 (D.N.H. Aug. 21, 2007) ..........................................................................20

*In re Suffolk Univ. Covid Refund Litig.*,
   2022 WL 6819485 (D. Mass. Oct. 11, 2022).........................................................................16

*Jean-Pierre v. J&L Cable TV Servs.*,
   538 F. Supp. 3d 208 (D. Mass. 2021) ...................................................................................10

*Lazar v. Pierce*,
   757 F.2d 435 (1st Cir. 1985).................................................................................................7

*Luna v. Carbonite, Inc.*,
   2023 WL 4539855 (D. Mass. July 14, 2023)........................................................................17

*Machado v. Endurance Int'l Grp. Holdings*,
   2019 WL 4409217 (D. Mass. Sept. 13, 2019) ......................................................................13

*Meaden v. Harbor One Bank*,
   2023 WL 3529762 (D. Mass. May 18, 2023) .........................................................................8

*Medoff v. CVS Caremark Corp.*,
   2016 WL 632238 (D.R.I. Feb. 17, 2016)..............................................................................13

4928-6044-9915.v2

**Page**

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters
Health Benefits Fund*,
582 F.3d 30 (1st Cir. 2009)........................................................................................8

*Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*,
348 F.R.D. 268 (D. Mass. 2025)..........................................................................15, 16

*Prinzo v. Hannaford Bros. Co.*,
343 F.R.D. 250 (D. Mass. 2023)................................................................................16

*Rivero Souss v. Banco Santander S.A.*,
2011 WL 13350165 (D.P.R. June 9, 2011)................................................................11

*Robinson v. Nat'l Student Clearinghouse*,
14 F.4th 56 (1st Cir. 2021)........................................................................................10

*Roland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2020).....................................................................................8

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000).....................................................................................15

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4) ...............................................................................................1, 3, 5, 14
§78u-4(a)(7) ............................................................................................................19

4928-6044-9915.v2

**Page**

Federal Rules of Civil Procedure

Rule 23 ...................................................................................................................3, 20
Rule 23(a)...................................................................................................................15
Rule 23(a)(1) ..............................................................................................................15
Rule 23(a)(2) ...........................................................................................................3, 16
Rule 23(a)(3) ..............................................................................................................16
Rule 23(a)(4) ..........................................................................................................16, 17
Rule 23(b)(3).........................................................................................................15, 17, 18
Rule 23(b)(3)(A)-(D) ..................................................................................................18
Rule 23(c)(2) ..............................................................................................................19
Rule 23(e).............................................................................................................7, 13, 19
Rule 23(e)(1) ................................................................................................................7
Rule 23(e)(1)(B).....................................................................................................3, 7, 19
Rule 23(e)(2) .............................................................................................................7, 8
Rule 23(e)(2)(B)...........................................................................................................9
Rule 23(e)(2)(C)..........................................................................................................10
Rule 23(e)(2)(C)(i)......................................................................................................10
Rule 23(e)(2)(C)(ii).....................................................................................................12
Rule 23(e)(2)(C)(iii)....................................................................................................13
Rule 23(e)(2)(D) .........................................................................................................14

4928-6044-9915.v2

Plaintiffs[1] respectfully submit this memorandum in support of their motion for preliminary approval of a proposed Settlement to resolve this action against Defendants for $32.5 million in cash (the "Settlement Amount"). By the accompanying Motion, Plaintiffs seek entry of an order: (i) preliminarily approving the proposed Settlement; (ii) preliminarily certifying the Class for settlement purposes; (iii) approving the proposed form and manner of providing notice of the proposed Settlement to the Class; and (iv) setting a hearing date for the Court to consider final approval of the Settlement, approval of the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' applications for awards pursuant to 15 U.S.C. §78u-4(a)(4) (the "Final Approval Hearing"), as well as a schedule for deadlines relevant thereto ("Preliminary Approval Order").

## I.    INTRODUCTION

The proposed Settlement, which follows nearly two years of intense and complicated litigation, provides the Class with a $32.5 million cash recovery while avoiding the various risks inherent in litigating this case to trial. As set forth below, the Settlement satisfies Federal Rule of Civil Procedure ("Rule") 23(e), is fair, reasonable, and adequate under the governing standards, and warrants preliminary (and, ultimately, final) approval. The proposed Settlement is the product of good-faith, arm's-length negotiations between experienced counsel – each side well-versed in the

---

[1]    The proposed settlement of this Litigation (the "Settlement") between Lead Plaintiff Carpenters Pension Trust Fund for Northern California ("Carpenters" or "Lead Plaintiff") and named plaintiffs University of Puerto Rico Retirement System ("UPRRS") and North Collier Fire Control and Rescue District Firefighters' Pension Plan ("North Collier"; collectively, "Plaintiffs") and Defendants Mercury Systems, Inc. ("Mercury" or the "Company"), Mark Aslett ("Aslett"), William L. Ballhaus ("Ballhaus"), Michael D. Ruppert ("Ruppert"), and David E. Farnsworth ("Farnsworth") (Aslett, Ballhaus, Ruppert, and Farnsworth are the "Individual Defendants" and, with Mercury, "Defendants," and together with Plaintiffs, the "Settling Parties") is memorialized in the Stipulation of Settlement dated December 1, 2025 (the "Stipulation"), submitted herewith. All capitalized terms not otherwise defined shall have the meanings ascribed to them in the Stipulation. All internal citations are omitted and emphasis is added, unless otherwise indicated.

4928-6044-9915.v2

strengths and weaknesses of the claims and defenses – and guided by a highly respected mediator with extensive experience in complex litigation. Plaintiffs, who are sophisticated institutional investors experienced in overseeing securities fraud litigation, were highly involved throughout the course of the Litigation and approve the Settlement. Likewise, the Settlement is endorsed by Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer"), who Plaintiffs retained specifically because of their experience and acumen in complex securities matters, as these firms have litigated hundreds of cases to resolution.

When negotiating the Settlement, the Settling Parties were well-informed of the evidence, the legal arguments framing the claims and defenses, and the risks facing both sides in continuing to litigate the action. For instance, they had fully briefed, argued, and received rulings on Defendants' motion to dismiss and Plaintiffs' motion for leave to amend the complaint, and had commenced briefing on Plaintiffs' motion for class certification. Moreover, Plaintiffs had actively pursued fact discovery, including: (i) serving and responding to document requests and interrogatories; (ii) issuing and negotiating productions from 11 third parties in response to document subpoenas; (iii) reviewing and analyzing Defendants' production to Plaintiffs of over 400,000 pages of documents; and (iv) preparing to take at least 20 depositions. *See also infra*, §IV.A.

Although Plaintiffs believe in the merits of their claims, they are cognizant of the costs and risks of litigating this case to trial. For one, Plaintiffs would have to prove each element of their §10(b) claims to prevail at trial. Defendants would need to defeat just one element to succeed. Additionally, litigating this case through trial and appeals could take years, would exact enormous costs on both sides, and carries a real risk of recovering much less than $32.5 million, or nothing at all. Indeed, the difficulty in proving Plaintiffs' claims was made apparent with this Court's granting of the motion to dismiss without prejudice at the July 24, 2024 hearing, and its subsequent decision

4928-6044-9915.v2

to sustain only three of the originally pled misstatements when granting Plaintiffs' motion for leave to amend the complaint. ECF 100 at 47-48. Plaintiffs would have also faced significant arguments from Defendants regarding scienter and whether the alleged fraud caused investors' losses. *See infra*, §IV.C.1.

At this stage, the Court need only determine whether it will "likely be able to" approve the proposed Settlement under Rule 23(a)(2), such that the Class should be notified of the proposed Settlement. Fed. R. Civ. P. 23(e)(1)(B); *see infra*, §IV. Given the $32.5 million cash recovery obtained and the considerable risks and costs of prolonged litigation, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, which will, among other things: (i) preliminarily certify the Class for settlement purposes, and preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice, Proof of Claim, Summary Notice, and Postcard Notice, attached as Exhibits A-1, A-2, A-3, and A-4, respectively, to the Preliminary Approval Order; (iii) find that the procedures for distributing the Notice and Postcard Notice and publishing the Summary Notice as set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) set a schedule and procedures for: dissemination and publication of notice, requesting exclusion from the Class, objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and expenses, including awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4), submitting papers in support of final approval of the Settlement, and the Settlement Hearing.

4928-6044-9915.v2

## II.    A BRIEF HISTORY OF THE LITIGATION

North Collier filed the initial complaint in the Litigation on December 13, 2023. ECF 1. On February 27, 2024, the Court appointed Carpenters as Lead Plaintiff and approved its selection of Robbins Geller and Grant & Eisenhofer as Lead Counsel. ECF 22. Following their extensive investigation, on April 18, 2024, Plaintiffs filed the Amended Class Action Complaint for Violations of the Federal Securities Laws against defendants Mercury, Aslett, Ruppert, Ballhaus, and Farnsworth. ECF 57. Defendants moved to dismiss the amended complaint on May 24, 2024. ECF 64. At the hearing on July 24, 2024, after full briefing and oral argument, the Court granted the motion to dismiss but gave Plaintiffs leave to move to file a second amended complaint. Plaintiffs undertook further investigation and filed a motion for leave to file the proposed Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"). ECF 82, 84, 84-1. Following full briefing, on February 20, 2025, the Court issued an order partially granting and partially denying Plaintiffs' motion, directing the Complaint be filed, and instructing the parties to proceed to discovery, with a trial set to begin in March 2026.[2] ECF 100. The parties thereafter engaged in extensive fact discovery on a schedule significantly expedited compared to similar cases. On July 18, 2025, Plaintiffs filed a motion to certify the class and expert report. ECF 125, 126, 127-1. Defendants filed an opposing brief and expert report on September 19, 2025. ECF 132, 133.

While briefing class certification and after depositions had commenced, the Settling Parties participated in an all-day, in-person mediation session on September 11, 2025, with David Murphy of Phillips ADR Enterprises, a highly regarded and experienced mediator. The parties exchanged detailed mediation statements in advance of the mediation session. Despite their efforts, the Settling Parties did not reach a settlement during the mediation that day. Following subsequent negotiations

---

[2]    The Court's order dismissed all claims against Farnsworth and Ruppert.

- 4 -

4928-6044-9915.v2

facilitated by Mr. Murphy, on September 20, 2025, the parties accepted a mediator's proposal to settle the Litigation for $32.5 million.

## III.   SETTLEMENT TERMS

The Settlement requires Defendants to cause to be paid $32.5 million into the Escrow Account, which amount, plus any interest accrued thereon, comprises the Settlement Fund. Stipulation, ¶2.2. Notice and Administration Expenses, Taxes, and Tax Expenses will be paid from the Settlement Fund. *Id.*, ¶¶2.10, 2.12.[3] Plaintiffs propose the appointment of Verita Global, a nationally recognized class action settlement administrator, to oversee settlement notice and administration. *See* www.veritaglobal.com. The proposed plan for notice to the Class and claims processing is further discussed *infra* at §VI.

Should the Court grant preliminary approval of the Settlement, Lead Counsel intend to submit an application with their opening papers in support of final approval for: (a) an award of attorneys' fees not to exceed 30% of the Settlement Amount; (b) payment of costs and expenses resulting from the prosecution of the Litigation not to exceed $425,000.00; and (c) any interest accrued on both amounts. Such fees and expenses shall be paid from the Settlement Fund once the Court executes the Judgment and upon entry of the order awarding such fees and expenses. Stipulation, ¶6.2; *infra*, §IV.C.3. In addition, pursuant to 15 U.S.C. §78u-4(a)(4), Plaintiffs intend to request an amount not to exceed $36,000.00 (in the aggregate) in connection with their representation of the Class. Stipulation, ¶6.1. Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses, and any award pursuant to 15 U.S.C. §78u-4(a)(4) have been funded from the Settlement Fund, the remaining amount ("Net Settlement

---

[3]   Because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses shall be paid from the Settlement Fund.

Fund") shall be distributed pursuant to the Court-approved Plan of Allocation, to Authorized Claimants who are entitled to a distribution of at least $10.00. *Id.*, ¶5.9.[4]

In exchange for the benefits the Settlement provides, Class Members who do not opt out of the Settlement will be subject to the release of claims against Defendants as set forth in the Stipulation, ¶4.1. Moreover, if, prior to the Settlement Hearing, requests for exclusion from the Class exceed an agreed-upon threshold, Defendants may (but are not obligated to) terminate the Settlement. Stipulation, ¶7.3; *infra*, §IV.C.4.

Should the Court preliminarily approve the proposed Settlement, the Claims Administrator will take various steps to provide the Class with notice of the Settlement, including: (i) mailing or emailing the Postcard Notice (attached as Exhibit A-4 to the Preliminary Approval Order) to Class Members who can be identified with reasonable effort; and (ii) causing the Summary Notice (attached as Exhibit A-3 to the Preliminary Approval Order) to be published in *The Wall Street Journal* and over a national newswire service. Preliminary Approval Order, ¶12; *see also infra*, §VI; and Declaration of Ross D. Murray Regarding Notice and Administration ("Murray Decl."). Further, the Claims Administrator will establish a case-specific website where the Stipulation, Notice (attached as Exhibit A-1 to the Preliminary Approval Order), Proof of Claim (attached as Exhibit A-2 to the Preliminary Approval Order), and other case documents will be posted, and on which Claims may be submitted. *Id.*

The Notice provides Class Members with all of the information required by the PSLRA, including (*inter alia*): (i) the terms of, and reasons for, the Settlement; (ii) the terms of Lead

---

[4]  The Plan of Allocation treats all Class Members equitably based on the timing of their purchases, acquisitions, and sales of Mercury common stock. *See infra*, §IV.D.

4928-6044-9915.v2

Counsel's application for attorneys' fees and expenses; (iii) how to opt out or object to the Settlement; and (iv) the date, time, and location of the Settlement Hearing. *See infra*, §VI.

## IV.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Settlement is a highly favored means of resolving disputes in the First Circuit. *See United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (noting "the strong public policy in favor of settlements"). This is especially so in the context of class actions. *See In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (Young, J.) (same, quoting *Lupron* at 88); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (noting "the overriding public interest in favor of . . . voluntary settlement of . . . class actions").

Rule 23(e) requires judicial approval of a class action settlement. *See* Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), preliminary approval of a settlement is appropriate where "the parties[] . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a settlement is "fair, reasonable, and adequate," including whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

         (iv)     any agreement required to be identified under Rule 23(e)(3); and

   (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Additionally, courts in this Circuit have also "often employed" the factors

from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), to assess the fairness of a settlement.  *Bezdek v.*

*Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).  These

factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the
> range of reasonableness of the settlement fund to a possible recovery in light of all
> the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  When applying these considerations, district courts "enjoy[] considerable

range in approving or disapproving a class action settlement, given the generality of the standard."[5]

Thus, courts in this Circuit "presume[] [a] proposed settlement is fair and reasonable if '(1) the

negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the

settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"[6]

     The proposed Settlement readily satisfies the factors set forth in Rule 23(e)(2) and relevant

authority, each of which is addressed in §IV.A.-E. below (some factors together, to the extent they

---

[5]   *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d
30, 45 (1st Cir. 2009); *see also id.* at 44 ("[T]he ultimate decision by the judge involves balancing
the advantages and disadvantages of the proposed settlement as against the consequences of going to
trial or other possible but perhaps unattainable variations on the proffered settlement.").

[6]   *Meaden v. Harbor One Bank*, 2023 WL 3529762, at *3 (D. Mass. May 18, 2023) (quoting *In re
Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)).  District courts also
give significant weight to the judgment of experienced counsel who conducted arm's-length
negotiations.  *See Roland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2020).

4928-6044-9915.v2

overlap). Although the Settlement merits final approval, the Court need not make that determination at this time. Rather, at this stage, Plaintiffs are requesting only that the Court take the first step in the two-step settlement approval process and grant preliminary approval of the proposed Settlement. *See In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) ("At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement . . . .").

### A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have adequately represented the Class by diligently prosecuting this Litigation on their behalf, including by, among other things: (i) investigating and drafting the detailed Complaint; (ii) opposing and arguing against Defendants' motion to dismiss; (iii) successfully briefing the motion for leave to file the Complaint; (iv) drafting, issuing, and negotiating the scope of party document requests, and 11 third-party document subpoenas; (v) obtaining and reviewing over 400,000 pages of documents from Defendants and third parties; (vi) drafting and negotiating the interrogatories served on Defendants; (vii) collecting and producing responsive documents in discovery; (viii) researching and briefing Plaintiffs' opening class certification motion; (ix) noticing and preparing for at least 20 depositions of Defendants and other key individuals; (x) taking two fact witness depositions and defending one expert deposition; and (xi) mediating this case to a $32.5 million cash recovery.[7]

### B.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B), which concerns whether "the proposal was negotiated at arm's length," is satisfied. Fed. R. Civ. P. 23(e)(2)(B). After exchanging mediation statements and replies thereto,

---

[7]    Given these and other facts, the overlapping third *Grinnell* factor – "the stage of the proceedings and the amount of discovery completed" – favors the Settlement.

4928-6044-9915.v2

the parties conducted an in-person mediation with Mr. David Murphy of Phillips ADR Enterprises on September 11, 2025.  On September 20, 2025, following subsequent negotiations facilitated by Mr. Murphy, the parties accepted a mediator's proposal to settle the Litigation.

The parties were well informed of the merits and challenges of their respective positions when they negotiated the Settlement.  Among other things, the parties had obtained a ruling on Plaintiffs' motion for leave to amend, and, as a result of the considerable document discovery conducted in preparation for upcoming depositions, were aware of the evidentiary strengths and weaknesses for both sides.  Accordingly, when they agreed to the Settlement, Plaintiffs and Lead Counsel fully appreciated the Class's claims and Defendants' defenses (which are further discussed *infra*, §IV.C.1.).  Having experienced counsel on both sides, each well aware of the other side's positions, reach the Settlement through arm's-length negotiations facilitated by an experienced mediator, weighs in favor of the Settlement.[8]

### C.        The Settlement Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

#### 1.        The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) concerns the adequacy of the settlement in light of the "costs, risks, and delay [that] trial and appeal" could inevitably impose. Fed. R. Civ. P. 23(e)(2)(c)(i).[9]  Courts assess "not whether the settlement represents the best possible recovery, but how the settlement relates to

---

[8]    *See Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 213 (D. Mass. 2021) ("'If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.'"); *see also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (same).

[9]    The discussion in §IV.C.1. also supports *Grinnell*'s first ("the complexity, expense and likely duration of the litigation"), fourth ("the risks of establishing liability"), fifth ("the risks of establishing damages"), sixth ("the risks of maintaining the class action through the trial"), and ninth factors ("the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"). *Grinnell*, 495 F.2d at 463.

4928-6044-9915.v2

the strengths and weaknesses of the case." *Hill v. State St. Corp.*, 2015 WL 127728, at \*10 (D. Mass. Jan. 8, 2015). A court need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Rivero Souss v. Banco Santander S.A.*, 2011 WL 13350165, at \*7 (D.P.R. June 9, 2011).

Given this case's complexities and the many disputed factual and legal issues, litigating this case to trial would have exacted tremendous costs. For instance, Lead Counsel expected to prepare for and take (or defend) dozens of fact and expert depositions, submit and receive various experts' reports, analyze a voluminous record to oppose summary judgment, and prepare for a lengthy and expensive trial. Given the high financial stakes, even had Plaintiffs prevailed on their claims at trial, an appeal was certain to follow.

Although Plaintiffs believe their case is strong, they are cognizant of the defenses they could potentially face in establishing liability and damages at trial. For instance, Defendants contend that their alleged misstatements and omissions were neither materially misleading nor made with scienter. *See* ECF 64, ECF 86; ECF 109 at 68-70 (Defendants asserting 15 affirmative and other defenses). Defendants were expected to contend at summary judgment and trial that the alleged misrepresentations were immaterial statements of corporate optimism, and in any case, Mercury had completely disclosed the risks relating to its ability to fully integrate its recent acquisitions. Moreover, Defendants strenuously asserted and were expected to continue to assert that Mercury's increased unbilled receivables were unrelated to any alleged failure to "fully integrate" its acquisitions, but actually were the result of program-specific technical engineering challenges, labor market disruptions, and/or industry-wide challenges brought on by COVID and supply chain delays. Further, Defendants have disputed that the alleged fraud caused any recoverable losses to the Class,

- 11 -

4928-6044-9915.v2

and were expected to challenge loss causation and damages at summary judgment and trial. *See* ECF 109 at 59-61, 68-69; ECF 132 at 15, 17.  Finally, even if the Court had granted Plaintiffs' motion for class certification, Defendants might have tried to undo that decision through appeals.[10]

In short, neither obtaining nor collecting on a large trial judgment was assured.  The Settlement creates a concrete, immediate, and significant cash recovery for the Class, while avoiding the hazards and delay inherent in litigating this case through trial and appeals.

### 2.    The Proposed Method of Distributing Relief to Class Members and Processing Claims Is Effective

The proposed method of notice and claims administration satisfies Rule 23(e)(2)(C)(ii). The proposed notice plan, which is discussed further at §VI., includes: (i) direct mail or email of the Postcard Notice to those who can be identified with reasonable effort; and (ii) publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  Murray Decl., ¶¶6-13.  The Claims Administrator will utilize time-tested methods to ensure that Class Members who held Mercury common stock in their own names, and/or in street name, will receive a copy of the Postcard Notice.  The Claims Administrator will also contact assorted brokers, banks, and other institutions known as Nominee Holders, and send a Postcard Notice and cover letter to hundreds of Nominee Holders identified by the Claims Administrator based on its years of experience. Furthermore, the Claims Administrator will post important documents regarding the Settlement on a case-specific website, including the Stipulation, Notice, Proof of Claim, Preliminary Approval Order, and all briefs and declarations in support of the Settlement and the requested fees and expenses.  *Id.*, ¶17.

---

[10]    Given the risks inherent in trying this case through trial and appeals, the seventh and eighth *Grinnell* factors ("'the ability of the defendants to withstand a greater judgment'" and "'the range of reasonableness of the settlement fund in light of the best possible recovery'") both weigh in favor of the Settlement.  *Relafen*, 231 F.R.D. at 74.

The proposed method for processing Class Members' Claims – which includes a standard claim form that requests the information necessary to calculate the amount of a claimant's Claim pursuant to the Plan of Allocation, and which allows claimants to submit their Claims online or by mail – is also effective.  The Plan of Allocation (which was prepared with the assistance of Lead Counsel's damages expert) estimates the amount of alleged artificial inflation in the price of Mercury common stock during the Class Period.  The Plan of Allocation will govern how Class Members' Claims will be calculated, and how funds will be distributed to Authorized Claimants.  Thus, the proposed plan of notice and method of distributing relief to the Class is effective, and complies with Rule 23(e) and due process requirements.

### 3. Lead Counsel's Fee and Expense Request Is Fair and Reasonable

Rule 23(e)(2)(C)(iii), which addresses "the terms of any proposed award of attorney's fees, including timing of payment," is also satisfied.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Lead Counsel intend to request an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, and costs and expenses in an amount not to exceed $425,000.00, plus interest accrued on both amounts.  Plaintiffs' proposed fee award is in line with others granted in securities fraud cases within this District.  *See, e.g.*, *Dahhan v. OvaScience, Inc.*, No. 1:17-cv-10511-IT, ECF 210 at 2 (D. Mass. Dec. 20, 2022) (awarding 33-1/3% of $15 million recovery, plus expenses); *Machado v. Endurance Int'l Grp. Holdings*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019) (awarding 33-1/3% of $18.65 million cash settlement, plus expenses); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *1 (D.R.I. Feb. 17, 2016) (awarding "30% of the common pool and expenses").

Additionally, pursuant to 15 U.S.C. §78u-4(a)(4), Plaintiffs intend to request an award not to exceed $36,000.00 in the aggregate in connection with their representation of the Class.[11]

### 4.    Identification of Other Agreements

The Settling Parties have entered into a standard Supplemental Agreement, which provides that Defendants may (but are not obligated to) terminate the Settlement if certain conditions and thresholds are met with respect to Class Members who timely and validly request exclusion from the Class.  *See* Stipulation, ¶7.3.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

As reflected in the Plan of Allocation, the Settlement "treats class members equitably relative to each other" (*see* Fed. R. Civ. P. 23(e)(2)(D)), while taking into account the timing of their purchases, acquisitions, and sales of Mercury common stock.  The Settlement further provides that each Authorized Claimant, including Plaintiffs, shall receive its *pro rata* share of the Net Settlement Fund based on its recognized losses as calculated by the Plan of Allocation.  No Class Members are treated preferentially.  Accordingly, Rule 23(e)(2)(D) is satisfied.

### E.    The Reaction of the Class to the Settlement

Courts also consider "'the reaction of the class'" in assessing a settlement.  *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244 (D. Mass. 2022).  Plaintiffs actively participated in both the Litigation and the decision to agree to the Settlement.  This factor is otherwise inapplicable at this stage, as notice has not yet been effected.

---

[11]    Lead Counsel intend to request that any fees awarded be paid when the Court executes the Judgment and an order awarding such fees and expenses.  *See* Stipulation, ¶6.2.

- 14 -

4928-6044-9915.v2

## V.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Settling Parties have agreed to the certification of the Class for settlement purposes only.[12]    Courts within and without this Circuit overwhelmingly find securities fraud actions appropriate for class treatment.[13]    This action presents no exception, and the proposed Class satisfies the requirements of Rules 23(a) and 23(b)(3).    Plaintiffs submit that the Class should be preliminarily certified for settlement purposes, and that Plaintiffs and Lead Counsel should be preliminarily appointed as Class Representatives and Class Counsel, respectively.

### A.    The Class Meets the Requirements of Rule 23(a)

*Numerosity*: Rule 23(a)(1) is met because the proposed Class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In a securities fraud action, "the class size may be reasonably inferred to be in the hundreds of thousands when there are millions of shares outstanding and millions of transactions during the class period." *Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, 348 F.R.D. 268, 276 (D. Mass. 2025) (Young, J.) (citation modified). Numerosity is undoubtedly satisfied: Mercury averaged over 57 million shares outstanding, with an average weekly trading volume of 2.39 million shares, during the Class Period.  *See* ECF 126 at 13;

---

[12]    The "Class" is defined as: "All purchasers and acquirers of Mercury common stock during the period between February 3, 2021 and February 6, 2024, inclusive."  Excluded from the Class are Defendants and their immediate families, the Company's officers and directors at all relevant times, as well as their immediate families, Defendants' legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded is any Person who properly excludes himself, herself, itself, or themselves by submitting a valid and timely request for exclusion.  To the extent any Mercury employee benefit plan receives a distribution from the Net Settlement Fund, no portion shall be allocated to any person or entity who is excluded from the Class by definition.  Stipulation, ¶1.4.

[13]    *See In re Pegasystems Inc. Sec. Litig.*, No. 1:22-cv-11220-WGY, ECF 147 (D. Mass. May 15, 2024) (Young, J.) (preliminarily certifying settlement class of common stockholders); *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 280 (D. Mass. 2009) (class treatment is "particularly appropriate in the context of securities litigation"); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (securities cases are "particularly well-suited for class treatment").

- 15 -

ECF 127-1 at ¶¶62, 97.  Furthermore, over 241 million shares traded during the Class Period, a daily average of over 477,000 shares.  ECF 126 at 13; ECF 127-1 at ¶60.  *See, e.g.*, *In re AVEO Pharms., Inc. Sec. Litig.*, 2017 WL 5484672, at *3 (D. Mass. Nov. 14, 2017) (numerosity established with over 43 million shares outstanding).

*Commonality*: Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "'[C]ommonality is a low bar.'"  *Prinzo v. Hannaford Bros. Co.*, 343 F.R.D. 250, 252 (D. Mass. 2023) (Young, J.).  "Rule 23(a)(2) 'does not require that every question be common' and even a 'single common legal or factual issue can suffice.'"  *AVEO*, 2017 WL 5484672, at *4; *Biogen*, 348 F.R.D. at 276 ("a single significant common issue of fact or law is sufficient").  Here, common questions abound, including whether: (1) Defendants publicly misstated material facts; (2) Defendants acted with scienter; (3) the alleged fraud artificially inflated Mercury's stock price; and (4) Defendants' conduct harmed the Class.

*Typicality*: Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "is 'not a highly demanding' requirement,'" *In re Suffolk Univ. Covid Refund Litig.*, 2022 WL 6819485, at *1 (D. Mass. Oct. 11, 2022) (Young, J.), and is met "whenever there is 'congruence between particular claims of the named class representatives and the generalized claims that are common to the class.'"  *Biogen*, 348 F.R.D. at 277.  Here, Plaintiffs' and the Class's claims arise from the same alleged conduct – Defendants' alleged series of public, material misstatements and omissions that artificially inflated Mercury's stock price and caused Plaintiffs and the Class to suffer losses – and would be proven by common evidence on a class-wide basis.  *See Bos. Sci.*, 604 F. Supp. 2d at 282.

*Adequacy*: Rule 23(a)(4) is also satisfied.  Because Plaintiffs acquired Mercury stock during the Class Period and were injured in the same way as the Class, their interests are directly aligned

- 16 -

4928-6044-9915.v2

with those of the Class.  Moreover, Plaintiffs have already shown their commitment to "fairly and adequately protect[ing] the [Class's] interests," (Fed. R. Civ. P. 23(a)(4)) including by monitoring this action's prosecution for nearly two years, reviewing court filings, pursuing discovery, producing documents, answering Defendants' interrogatories, preparing for their depositions, and securing the proposed Settlement.  Courts have recognized Robbins Geller's and Grant & Eisenhofer's extensive experience in securities litigation,[14] and Lead Counsel have demonstrated their adequacy by prosecuting this case to a favorable outcome.

### B.  The Class Meets the Requirements of Rule 23(b)(3)

Common questions of law and fact predominate, and class treatment is superior to individual adjudication of the Class's claims, as Rule 23(b)(3) requires.  Predominance is satisfied where "questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013).  Rule 23(b)(3) "'requires merely that common issues *predominate*, not that all issues be common to the class.'" *De Giovanni v. Jani-King Int'l, Inc.*, 262 F.R.D. 71, 76 (D. Mass. 2009) (Young, J.) (emphasis in original).  "The First Circuit Court of Appeals has defined the predominance test as requiring the Court to find that 'a sufficient constellation of common issues binds class members together.'" *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 392 (D. Mass. 2011).  Where settlement-only certification is sought, "the Court 'need not inquire whether the case, if tried, would present intractable management problems.'" *Relafen*, 231 F.R.D. at 68.

---

[14]  *Luna v. Carbonite, Inc.*, 2023 WL 4539855, at *11 (D. Mass. July 14, 2023) ("[C]ourts 'have repeatedly found Robbins Geller to be adequate and well-qualified for the purpose of litigating class action lawsuits.'"); *Einhorn v. AxoGen, Inc.*, 2019 WL 5636382, at *2 (M.D. Fla. Apr. 30, 2019) ("[Lead plaintiff] hired counsel [Grant & Eisenhofer] with extensive experience in securities fraud litigation.").

- 17 -

4928-6044-9915.v2

Predominance is readily satisfied. Plaintiffs' and the Class's claims are premised on the same alleged conduct: Defendants' public misstatements that artificially inflated Mercury's stock price and caused Plaintiffs and the Class to suffer losses. Moreover, Plaintiffs' and the Class's claims depend on the same common questions and would be proven with evidence common to the Class. Additionally, because Plaintiffs are entitled to the fraud-on-the-market presumption of reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988), §10(b)'s reliance element (as well as all of §10(b)'s other elements) would be proven on a class-wide basis.

Securities cases readily satisfy Rule 23(b)(3)'s superiority requirement.[15] This case is no exception, and all four factors courts consider in assessing superiority are met. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). Most Class Members' interests in prosecuting separate actions is minimal, given the time and cost of doing so in comparison to the potential recoveries. Maintaining this class action in this District ensures consistent rulings on the Class's claims and an efficient expenditure of resources. Further, this District is a desirable forum (Mercury is located in this District and many of the alleged acts occurred in this District), and Plaintiffs do not foresee any management difficulties precluding this action from proceeding as a class action. Finally, not only is a class action the superior method for adjudicating the Class's claims, it is the only practical method of fairly and efficiently doing so. In short, certifying the Class would "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (ellipsis in original).

---

[15]  *See In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 31 (D. Mass. 2008) ("Investors seeking damages for violations of federal securities are often considered the prototypical class action plaintiffs."); *Evergreen*, 275 F.R.D. at 393 ("[C]lass actions . . . may be the 'only practicable means of enforcing investors' rights.'").

4928-6044-9915.v2

## VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND SHOULD BE APPROVED

Under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B). "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Hill*, 2015 WL 127728, at *14.

The proposed method of providing notice satisfies Rule 23(e). As outlined in the proposed Preliminary Approval Order, the Claims Administrator will cause the Postcard Notice to be mailed or emailed to all Members of the Class who can be identified with reasonable effort, utilizing multiple sources of data including: (i) Mercury's transfer records; and (ii) a proprietary list created and maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other Nominee Holders, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Postcard Notice will also highlight for Class Members the case-specific website on which important information and documents will be posted (including the Stipulation, Notice, and Proof of Claim). In addition to mailing or emailing the Postcard Notice, the Claims Administrator will cause publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.

As required by Rule 23(c)(2) and the PSLRA, the Notice – which will be available on the case-specific website or by mail upon request – describes in plain English, *inter alia*, the general terms of the Settlement, the fee and expense application, the proposed Plan of Allocation, the date, time and location of the Settlement Hearing, and other important information regarding the Settlement. *Compare* Notice (Exhibit A-1 to the Stipulation), *with* 15 U.S.C. §78u-4(a)(7). The proposed form and manner of providing notice to the Class is commonly used in securities class

actions and satisfies the requirements of due process, Rule 23, and the PSLRA. It is "the best notice practicable under the circumstances" and will provide "due and sufficient notice to all persons entitled thereto." *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 2410361, at *2 (D.N.H. Aug. 21, 2007). Lead Counsel submit that the proposed notice procedures will fairly apprise Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and should be approved.

## VII.    PROPOSED SCHEDULE OF EVENTS

Provided the Court grants this Motion, the Settling Parties respectfully propose, for the Court's consideration, the schedule of dates for class notice, final approval briefing, and other relevant events, set forth in the proposed Preliminary Approval Order.

## VIII.    CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED:  December 1, 2025                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
LAURA ANDRACCHIO
ASHLEY M. PRICE

       s/ Ashley M. Price
_____
       ASHLEY M. PRICE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
landracchio@rgrdlaw.com
aprice@rgrdlaw.com

- 20 -

4928-6044-9915.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MICHAEL G. CAPECI
MAGDALENE ECONOMOU
JONATHAN A. OHLMANN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com
meconomou@rgrdlaw.com
johlmann@rgrdlaw.com

GRANT & EISENHOFER P.A.
CAITLIN M. MOYNA
KARIN E. FISCH
CECILIA E. STEIN
TIMOTHY CLARK B. DAUZ
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone:  646/722-8500
646/722-8501 (fax)
cmoyna@gelaw.com
kfisch@gelaw.com
cstein@gelaw.com
tdauz@gelaw.com

Lead Counsel for Lead Plaintiff

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Local Counsel

4928-6044-9915.v2

WEINBERG, ROGER & ROSENFELD, P.C.
EZEKIEL D. CARDER
1375 55th Street
Emeryville, CA  94608
Telephone:  510/337-1001
510/337-1023 (fax)
ecarder@unioncounsel.net

Additional Counsel for Lead Plaintiff


ABRAHAM FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
JACK G. FRUCHTER
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone:  212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
jfruchter@aftlaw.com


Additional Counsel for University of Puerto Rico
Retirement System

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 1, 2025.

s/ Ashley M. Price

ASHLEY M. PRICE