UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERCURY SYSTEMS, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:23-cv-13065-WGY<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

4903-1456-4765.v2

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................................................3

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS............................................................................................................3

      A.    The Law Favors and Encourages Settlements ..............................................3

      B.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2) and
            *Grinnell* .........................................................................................................6

            1.    Plaintiffs and Lead Counsel Adequately Represented the Class ................6

            2.    The Settlement Was Reached After Significant Investigation and
                  Discovery and Is the Product of Arm's-Length Negotiations
                  Among Experienced Counsel .....................................................................7

            3.    The Risk, Complexity, and Expense of Continued Litigation
                  Favors Final Approval .................................................................................9

            4.    Comparing the Proposed Settlement to the Likely Result of
                  Continued Litigation Weighs in Favor of Final Approval.........................10

            5.    Plaintiffs Had Sufficient Information to Make Informed Decisions
                  About Settling This Litigation ..................................................................12

            6.    The Favorable Reaction of the Class to Date Supports the
                  Settlement .................................................................................................13

      C.    The Plan of Allocation Is Reasonable, Treats Class Members Equitably,
            and Should Be Approved ..............................................................................14

      D.    The Court Should Finally Certify the Class for Purposes of Effectuating
            the Settlement...............................................................................................15

      E.    Notice to the Class Satisfied the Requirements of Rule 23, Complies with
            Due Process, and Is Reasonable....................................................................16

IV.   CONCLUSION...........................................................................................................18

4903-1456-4765.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ...................................................................................8, 13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974), *abrogated sub nom.*,
   *Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)....................................................................................................5, 6, 11

*City of Fort Lauderdale Police & Firefighters' Ret. Sys. v.
   Pegasystems Inc.*,
   No. 1:22-cv-11220-WGY (D. Mass. Sept. 25, 2024) ................................................................15

*City of Providence v. Aéropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*,
   *Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ..............................................................................................14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
   100 F.3d 1041 (1st Cir. 1996)...................................................................................................7

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..................................................................................................................16

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir. 1974)...................................................................................................5, 16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................................15

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................................9

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................................12

*In re Cabletron Sys., Inc. Sec. Litig.*,
   239 F.R.D. 30 (D.N.H. 2006) ..............................................................................................14, 15, 17

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs.,
   & Prods. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) ............................................................................6

4903-1456-4765.v2

**Page**

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003)..................................................................................4, 5

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................12, 14

*In re Lupron Mktg. & Sales Pracs. Litig.*,
228 F.R.D. 75 (D. Mass. 2005)..................................................................................4, 5

*In re PaineWebber P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*,
117 F.3d 721 (2d Cir. 1997)...................................................................................11

*In re Penthouse Exec. Club Comp. Litig.*,
2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)..........................................................7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009)....................................................................................4

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011).......................................................................12

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)...............................................................................9, 11

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................15

*In re Stockeryale, Inc. Sec. Litig.*,
2007 WL 4589772 (D.N.H. Dec. 18, 2007)...........................................................9, 10, 13, 17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007).......................................................................5, 14

*KBC Asset Mgmt. NV v. Aegerion Pharms., Inc.*,
No. 1:14-cv-10105-MLW (D. Mass. Nov. 30, 2017) .............................................15

*Luna v. Carbonite, Inc.*,
No. 1:19-cv-11662-LTS (D. Mass. May 15, 2024) ................................................15

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
2019 WL 4409217 (D. Mass. Sept. 13, 2019) .......................................................15

- iii -

**Page**

*McGee v. Constant Contact, Inc.*,
  No. 15-13114-MLW (D. Mass. May 27, 2020) ........................................................................15

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 17, 2016) ...............................................................................18

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters*
  *Health Benefits Fund*,
  582 F.3d 30 (1st Cir. 2009) ......................................................................................................7

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ...................................................................................................11

*Roberts v. TJX Cos.*,
  2016 WL 8677312 (D. Mass. Sept. 30, 2016) ..........................................................................7

*Robinson v. Nat'l Student Clearinghouse*,
  14 F.4th 56 (1st Cir. 2021) .......................................................................................................4

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ..............................................................................................5, 8

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................................................14

*Snyder v. Ocwen Loan Servicing, LLC*,
  2019 WL 2103379 (N.D. Ill. May 14, 2019) ...........................................................................6

*United States v. Davis*,
  261 F.3d 1 (1st Cir. 2001) .........................................................................................................3

*Voss v. Rolland*,
  592 F.3d 242 (1st Cir. 2010) .................................................................................................4, 5

4903-1456-4765.v2

**Page**

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23(a)..........................................................................................................15, 16
    Rule 23(b)(3)......................................................................................................15, 16
    Rule 23(c)(2)(B)................................................................................................16, 17
    Rule 23(e)(1).............................................................................................................16
    Rule 23(e)(1)(B)......................................................................................................16
    Rule 23(e)(2) ..................................................................................................2, 4, 5, 6
    Rule 23(e)(2)(A) .......................................................................................................6
    Rule 23(e)(2)(B).........................................................................................................7
    Rule 23(e)(2)(C)(i)....................................................................................................9
    Rule 23(e)(2)(C)(ii).................................................................................................14
    Rule 23(e)(3) .............................................................................................................4

## SECONDARY AUTHORITIES

Edward Flores, et al.,
    *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review*
    (NERA Jan. 21, 2026)………………………………………………………………11, 12

4903-1456-4765.v2

Plaintiffs, by and through their counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), requesting that the Court: (i) approve the proposed Settlement, which the Court preliminarily approved on December 18, 2025 (ECF 146) (the "Preliminary Approval Order"); (ii) finally certify the Class for purposes of Settlement; (iii) approve the proposed Plan of Allocation; (iv) find that notice to the Class satisfied due process; and (v) enter the proposed Order Approving the Plan of Allocation and proposed Final Judgment.[1]

## I.    INTRODUCTION

The $32,500,000 all-cash Settlement is an exceptional result for the Class. Indeed, it represents a significant percentage of recoverable damages, and many multiples of the median percentage recovery for securities cases settled in the 2016 to 2025 time frame with similar damages.

In addition, the Settlement was reached by experienced and knowledgeable counsel only after, *inter alia*: (i) extensively investigating the claims and supporting facts; (ii) filing the amended complaint; (iii) successfully moving for leave to file the second amended complaint (the "Complaint"); (iv) reviewing over 400,000 pages of documents produced by Defendants and third-parties; (v) taking two depositions, defending a market efficiency expert deposition, and preparing for numerous other depositions; and (vi) participating in arm's-length settlement negotiations conducted by a highly experienced, nationally recognized mediator, David M. Murphy, Esq.

---

[1]    Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement, filed on December 1, 2025 (ECF 145) (the "Stipulation"), and the Joint Declaration of Michael G. Capeci and Karin E. Fisch in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Capeci-Fisch Declaration" or "Capeci-Fisch Decl."), submitted herewith.

4903-1456-4765.v2

It is also Lead Counsel's informed opinion that, in light of the significant risks and the delay, expense, and uncertainty of pursuing the Litigation through trial and any post-trial appeals, the Settlement is beneficial because it is a certain and very favorable result for the Class. The benefit that the proposed Settlement will provide to the Class weighs in favor of final approval when considered against the risk that, absent the Settlement, the Class might recover less (or nothing at all) if the Litigation continued through class certification, summary judgment, trial, and any post-trial appeals that would likely follow – a process that could last many additional years.

While Plaintiffs believe they had meritorious responses to each of Defendants' arguments against liability and damages, the proposed Settlement, if approved, will enable the Class to be compensated now for its alleged damages without the risk of further litigation. Lead Counsel, with extensive experience in prosecuting shareholder class actions and other complex litigation, believe that the proposed Settlement: (i) satisfies each of the applicable Rule 23(e)(2) factors; (ii) is fair, reasonable, and adequate under the First Circuit's standards for approval; and (iii) is in the best interests of the Class. Likewise, the Plan of Allocation, which Lead Counsel developed with the assistance of their damages expert, is based on the out-of-pocket measure of damages (*i.e.*, the difference between what Class Members paid for their Mercury Systems, Inc. ("Mercury" or the "Company") common stock during the Class Period and what they would have paid had the misstatements not been made or omissions withheld), is a fair, reasonable, and adequate method for equitably distributing the Net Settlement Fund to Class Members, and should be approved.

Further confirming the fairness, reasonableness, and adequacy of the Settlement is the fact that, to date, Class Members have reacted positively. Pursuant to the Preliminary Approval Order, over 50,800 Postcard Notices were sent to potential Class Members and nominees since January 8, 2026, and the Summary Notice was published once over a national newswire service and once in *The*

*Wall Street Journal* on January 15, 2026.[2]  Additionally, Settlement-related documents were posted by the Claims Administrator on the Settlement-specific website at www.MercurySecuritiesSettlement.com.[3]  Although the deadline for Class Members to object to the Settlement and Plan of Allocation is April 21, 2026, to date, Plaintiffs are not aware of a single objection to the Settlement.  Lead Counsel will address any timely objections in a reply memorandum due no later than May 5, 2026.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Capeci-Fisch Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Plaintiffs and their counsel during the course of the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    The Law Favors and Encourages Settlements

The First Circuit, like the others, has a "'strong public policy in favor of settlements'" over continued litigation, especially in complex actions.  *United States v. Davis*, 261 F.3d 1, 27 (1st Cir. 2001).[4]  To grant final approval of a class action settlement, the reviewing court must find that the

---

[2]    *See* Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date ("Murray Decl."), on behalf of the Court-appointed Claims Administrator for the Settlement, Verita Global, submitted herewith.

[3]    The briefs and declarations in support of the motions to approve the Settlement, Plan of Allocation, and attorneys' fees and expenses will likewise be posted to the website once they are filed.

[4]    Unless otherwise noted, all internal citations are omitted and all emphasis is added.

- 3 -

4903-1456-4765.v2

settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Voss v. Rolland*, 592

F.3d 242, 251 (1st Cir. 2010) (same).

Rule 23(e)(2) provides that:

(2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  *See also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir.

2021) ("Where 'the parties negotiated at arm's length and conducted sufficient discovery, the district

court must presume the settlement is reasonable.'") (quoting *In re Pharm. Indus. Average Wholesale*

*Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)).

While the First Circuit has not espoused any single test for determining whether a proposed

settlement is fair, reasonable, and adequate,[5] courts within this Circuit commonly reference the

---

[5]    *See, e.g.*, *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005) ("[T]he First Circuit has not established a formal protocol for assessing the fairness of a settlement."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206

- 4 -

factors identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated sub nom.*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). *See Lupron*, 228 F.R.D. at 93. Courts in this Circuit have further distilled the *Grinnell* factors into a more concise list, examining the:

> (1) risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259-60 (D.N.H. 2007).

When evaluating whether a settlement is fair, reasonable, and adequate, courts are to balance the benefits of settlement against the risks of continued litigation. *Voss*, 592 F.3d at 251. "'[T]he court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s].'" *Rolland v. Cellucci*, 191 F.R.D. 3, 14-15 (D. Mass. 2000) (last two alterations in original). As the First Circuit noted: "[A]ny settlement is the result of a compromise – each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion." *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974); *see also Compact Disc*, 216 F.R.D. at 211 ("I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *Lupron*, 228 F.R.D. at 97 (The court should not "hypothesize about larger amounts that might have been recovered."). The factors set forth in Rule 23(e)(2) are applied in tandem with the applicable First Circuit approval factors and "focus the court and the lawyers on the core concerns of procedure and substance that should guide

---

(D. Me. 2003) ("There is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement.").

- 5 -

the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes to 2018 Amendments. In this Litigation, an examination of these factors demonstrates that the Settlement satisfies both Rule 23(e)(2) and the applicable First Circuit standards, is fair, reasonable, and adequate to the Class, and should be approved by the Court.

### B. The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2) and *Grinnell*

As explained in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for: (1) Preliminary Approval of Class Action Settlement; (2) Class Certification for Settlement Purposes; and (3) Approval of Notice to the Class (ECF 143, at 10-15), and as acknowledged by the Preliminary Approval Order, the Settlement meets all of the Rule 23(e)(2) requirements. Courts analyzing the Rule 23(e)(2) factors have noted that a plaintiff's satisfaction of these factors at final approval is virtually assured where, as here, little has changed between preliminary and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting that, in analyzing Rule 23(e)(2), "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

### 1. Plaintiffs and Lead Counsel Adequately Represented the Class

Plaintiffs and Lead Counsel have more than adequately represented the Class as required by Rule 23(e)(2)(A). They have diligently prosecuted this Litigation on the Class's behalf since December 2023. Among other things, Lead Counsel conducted a thorough investigation, prepared and filed a detailed amended complaint, successfully moved for leave to file the Complaint, obtained, reviewed, and analyzed over 400,000 pages of documents, took two depositions and

prepared for numerous upcoming depositions, moved for class certification, consulted with several experts, engaged in mediation and settlement negotiations, and achieved a Settlement of $32.5 million, which will provide a significant recovery to the Class. Plaintiffs actively and faithfully oversaw the prosecution of the case over the course of the Litigation in accordance with their duties as class representatives. *See* Declaration of William Feyling on behalf of Carpenters Fund ("Feyling Decl.") (¶¶3-5); Declaration of Thel Whitley on behalf of North Collier ("Whitley Decl.") (¶¶5-8); Declaration of Laura Santa Sànchez on behalf of UPRRS ("Sànchez Decl.") (¶¶5-7), submitted herewith. Plaintiffs and Lead Counsel at all times advocated for the best interests of the Class.

### 2. The Settlement Was Reached After Significant Investigation and Discovery and Is the Product of Arm's-Length Negotiations Among Experienced Counsel

Rule 23(e)(2)(B) is also satisfied. Where, as here, the settling parties have negotiated at arm's length, "'there is a presumption in favor of the settlement.'" *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (quoting *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)); *see also Roberts v. TJX Cos.*, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016) (Where "the parties' Settlement is the product of arms-length negotiation by competent counsel, . . . it is entitled to a presumption of reasonableness."). Moreover, where, as here, the settlement was reached with the assistance of an experienced mediator, there is "a 'presumption that the settlement achieved meets the requirements of due process.'" *In re Penthouse Exec. Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("The assistance of [an] experienced mediator[] . . . reinforces that the [s]ettlement [a]greement is non-collusive.").

At the time of the Settlement, the Settling Parties were in an excellent position to evaluate the strengths and weaknesses of their respective claims and defenses. As described more fully in the

4903-1456-4765.v2

Capeci-Fisch Declaration, Lead Counsel vigorously prosecuted this Litigation, and thus were well aware of the legal arguments for and defenses against the claims, as well as the evidence supporting each. In response to Plaintiffs' requests and following negotiations over the scope of discovery, Defendants and non-parties produced to Lead Counsel over 400,000 pages of documents. Settlement negotiations included the exchange of comprehensive mediation statements that detailed the parties' respective positions and included extensive citations to the evidentiary record, followed by a formal mediation session with Mr. Murphy and follow-on negotiations. At the mediation, the Settling Parties' positions were fully explored. This accumulation of information permitted Plaintiffs and Lead Counsel to be well-informed about the strengths and weaknesses of their claims, resulting in a significant recovery of $32,500,000 for the Class. Thus, the proposed Settlement is procedurally fair and entitled to a presumption of reasonableness. *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("[S]ettlement negotiations . . . conducted at arms' length . . . support 'a strong initial presumption' of the Settlement's substantive fairness.").

Moreover, the judgment of experienced and well-informed class counsel should be afforded great weight by the Court. *Rolland*, 191 F.R.D. at 10 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie*, 50 F. Supp. 2d at 77 ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate."). Lead Counsel are national shareholders' rights law firms with significant experience in PSLRA securities litigation, as well as other shareholder and complex litigation. *See generally* www.rgrdlaw.com; www.gelaw.com. Also, Defendants' Counsel, Ropes &

Gray and Nutter (and Skadden before them), each has broad experience with these types of cases and is highly regarded. The experience of counsel on both sides, who negotiated this Settlement at arms' length, supports its reasonableness.

### 3. The Risk, Complexity, and Expense of Continued Litigation Favors Final Approval

The Settlement is also substantively fair. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). While Plaintiffs believe that the claims asserted against Defendants have merit, they recognize that there were significant risks as to whether Plaintiffs would ultimately be able to prove liability and establish damages on their claims while also overcoming Defendants' defenses. Continued litigation would be protracted, risky, and costly. *See In re Stockeryale, Inc. Sec. Litig.*, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (This factor "'captures the probable costs, in both time and money, of continued litigation.'"). Securities class actions are "notorious[ly] complex[]" and "[t]he difficulty of establishing liability is a common risk of securities litigation.'" *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8, *11 (S.D.N.Y. Apr. 6, 2006). The Settlement provides an immediate benefit to the Class that, when balanced against the potential costs and risks associated with continued litigation, supports a finding that the Settlement is fair, reasonable, and adequate. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 74 (D. Mass. 2005) ("'Although fully litigating the claims through trial could possibly result in a higher recovery, the settlement represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery.'").

Defendants vigorously contested liability on the merits and have denied, and continue to deny, every claim and allegation of wrongdoing by Plaintiffs. Specifically, Defendants have argued that the alleged misstatements were not actionable because they were sincerely held beliefs regarding the current state of the Company's full integration efforts, and were not intended to mislead investors. Capeci-Fisch Decl., ¶¶125-134.

- 9 -

4903-1456-4765.v2

Defendants also argued that Plaintiffs could not establish scienter. According to Defendants, Aslett did not intend to convey that Mercury had fully integrated every acquisition. *Id.*, ¶¶135-138. Moreover, Defendants contended that Aslett and Ballhaus did not have any motive to commit fraud because Aslett was not motivated by a potential sale of Mercury, and Ballhaus made his statements after Mercury's sales process had concluded. *Id.*

Plaintiffs also faced significant risks in proving loss causation and damages. As to loss causation, Defendants maintained that Plaintiffs could not offer any evidence that the alleged misrepresentations impacted Mercury's stock price, such that they would have caused investors' losses when the truth was disclosed. *Id.*, ¶¶139-146. Likewise, the amount of damages, if any, would have been the subject of expert testimony by each side. Which expert's position would be accepted by the Court or the jury was unknown. *Id.*

Although Plaintiffs believed they would have succeeded at class certification and at summary judgment, there remained significant hurdles to recovery, at trial and any post-trial appeals. *See, e.g.*, *Stockeryale*, 2007 WL 4589772, at *3 (This factor supported settlement where the defendants had defenses to liability and loss causation that "could result in no liability and zero recovery for the class."). Plaintiffs faced the further risks that: (i) the class would not be certified (or would later face a Rule 23(f) petition or motion to decertify or to shorten the class period); (ii) the Court would grant summary judgment on all or a portion of Plaintiffs' claims; or (iii) important evidence or expert testimony would be excluded at trial. Capeci-Fisch Decl., ¶¶122-125. This Settlement obviates all of those risks.

### 4.    Comparing the Proposed Settlement to the Likely Result of Continued Litigation Weighs in Favor of Final Approval

This factor requires the Court to consider the reasonableness of the Settlement in light of the possible recovery in the litigation and risks of further litigation. The issue is not whether the

- 10 -

Settlement represents the best possible recovery, but rather how it relates to the strengths and weaknesses of the case. Thus, the Court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. Courts agree that determining whether a settlement is "reasonable" "'is not susceptible of a mathematical equation yielding a particularized sum.'" *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *accord Relafen*, 231 F.R.D. at 73 ("'A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes.'"). Instead, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $32,500,000 cash Settlement is well within the range of reasonableness to warrant final approval of the Settlement. It represents between 7% and 32% of recoverable damages, which is many multiples of the median percentage recovery in securities cases settled in the 2016 to 2025 time frame with similar damages. At class certification, Defendants argued that certain large shareholders should not be part of the Class and that the relevant Class Period should be significantly shortened. If those arguments had been accepted by the Court, Plaintiffs' damages would have been significantly reduced. The Settlement represents a recovery of approximately 32% of those reduced damages. This far exceeds the median percentage recovery of 3.2% for investor losses of between $100 million and $199 million in 2025 in comparable class action litigation. Edward Flores, et al., *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review*, at 27, fig. 23 (NERA Jan. 21, 2026) (attached as Ex. A to the Capeci-Fisch Decl.). If Plaintiffs were successful in obtaining the full amount of recoverable damages through trial and the inevitable appeal of any favorable verdict, the Settlement represents a recovery of approximately 7% of recoverable damages,

which is several times the median percentage recovery of 2.1% for investor losses of between $400 million and $599 million in 2025.  *Id.*  Within this range of percentage recoveries, the Settlement is significant and represents a favorable result for the Class.

Thus, the Settlement represents a very good result for the Class and is certainly reasonable in light of even the best possible recovery.

### 5. Plaintiffs Had Sufficient Information to Make Informed Decisions About Settling This Litigation

This factor analyzes "'whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'"  *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012).  "The threshold necessary to render the decisions of counsel sufficiently well informed, . . . is not an overly burdensome one to achieve – indeed, formal discovery need not have necessarily been undertaken yet by the parties."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012); *see also In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 474 (D.P.R. 2011) (even where formal discovery had not occurred, counsel's investigation and informal discovery provided "sufficient information to make a well informed decision").

As detailed in the Capeci-Fisch Declaration, Lead Counsel conducted a thorough review of Mercury's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company.  Lead Counsel also researched the applicable law with respect to the claims asserted and the potential defenses thereto, prepared the amended complaint, opposed Defendants' motion to dismiss, and successfully moved for leave to file the Complaint.  Lead Counsel moved for class certification (including retaining and working with a damages expert), conducted extensive document and other written discovery, executed a careful review of over

- 12 -

4903-1456-4765.v2

400,000 pages of documents, took two fact depositions, and prepared for other scheduled depositions that were fast approaching. Finally, the Settling Parties exchanged detailed, evidence-based mediation statements and engaged in negotiations under the guidance of an experienced mediator. Thus, Plaintiffs and Lead Counsel engaged in sufficient investigation and discovery to understand the claims, merits, and weaknesses of the Litigation thoroughly before agreeing to the Settlement.

### 6. The Favorable Reaction of the Class to Date Supports the Settlement

Pursuant to the Preliminary Approval Order, beginning on January 8, 2026, the Claims Administrator caused a total of 50,849 Postcard Notices to be mailed or emailed to potential Class Members, including brokers and other nominees. *See* Murray Decl., ¶¶4-11. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire* on January 15, 2026. *Id.*, ¶12. To date, no objections have been filed, and no exclusion requests have been submitted. *See id.*, ¶¶15-17. Such a favorable reaction of the Class to the Settlement also supports its approval. While not dispositive, "[t]he number of requests for exclusion from the settlement, as well as the number and substance of objections filed . . . constitutes strong evidence of fairness of proposed settlement and supports judicial approval." *Bussie*, 50 F. Supp. 2d at 77.

Moreover, Plaintiffs fully support the Settlement. *See* Feyling Decl., ¶5; Whitley Decl., ¶9; Sànchez Decl., ¶7; *see also Stockeryale*, 2007 WL 4589772, at *3 ("The Court finds it significant that the . . . Plaintiffs are fully in support of the settlement."). Given their close oversight of and involvement in the Litigation on behalf of the Class, their approval weighs in favor of the Settlement's approval.

4903-1456-4765.v2

###### C.    The Plan of Allocation Is Reasonable, Treats Class Members Equitably, and Should Be Approved

A plan of allocation of settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See Tyco*, 535 F. Supp. 2d at 262 ("Like the settlement itself, the plan of allocation must be fair, reasonable, and adequate."). A plan of allocation is fair and reasonable as long as it has a "'reasonable, rational basis.'" *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) ("A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'"), *aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable, and the plan "'need not necessarily treat all class members equally.'" *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005). A reasonable plan of allocation "'may consider the relative strength and values of different categories of claims.'" *IMAX*, 283 F.R.D. at 192; *see In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35 (D.N.H. 2006) (approving a plan of allocation that took into consideration "the strengths and weaknesses of the claims of the various types of class members").

Here, the Plan of Allocation was developed under the oversight of the damages expert retained by Lead Counsel, and it calculates Class Members' recognized losses based on the amount of the alleged inflation in Mercury common stock at various times during the Class Period allocable to the alleged fraud. Capeci-Fisch Decl., ¶¶156-158. Lead Counsel believe the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members and that it treats Class Members equitably relative to each other, by providing that each Authorized Claimant shall receive a *pro rata* share of the Net Settlement Fund based on his, her, or its recognized losses. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Further, Lead

4903-1456-4765.v2

Counsel's opinion is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel."); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("In determining whether a plan of allocation is reasonable, courts give great weight to the opinion of experienced counsel.").

Moreover, this Court and other courts within this District have repeatedly approved similar plans. *See*, *e.g.*, *City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*, No. 1:22-cv-11220-WGY, ECF 163 (D. Mass. Sept. 25, 2024) (Young, J.) (Order Approving Plan of Allocation); *Luna v. Carbonite, Inc.*, No. 1:19-cv-11662-LTS, ECF 194 (D. Mass. May 15, 2024) (Order Approving Plan of Allocation); *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019); *McGee v. Constant Contact, Inc.*, No. 15-13114-MLW, ECF 119 (D. Mass. May 27, 2020) (Order Approving Plan of Allocation); *KBC Asset Mgmt. NV v. Aegerion Pharms., Inc.*, No. 1:14-cv-10105-MLW, ECF 168 (D. Mass. Nov. 30, 2017) (Order Approving Plan of Allocation); *see also Cabletron*, 239 F.R.D. at 35 (approving a plan of allocation where claimants would "receive a pro rata share of the Net Settlement Fund").

### D.    The Court Should Finally Certify the Class for Purposes of Effectuating the Settlement

In their motion for preliminary approval of the Settlement, Plaintiffs requested that the Court preliminarily certify the Class for settlement purposes, so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proofs of Claim, could be issued. *See* ECF 143 at 14-19. The Court found that Plaintiffs had met the requirements for certification of the Class under Rules 23(a) and 23(b)(3)

- 15 -

for settlement purposes.  ECF 146, ¶¶4-5.  In addition, the Court preliminarily certified Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.  *Id.*, ¶6.

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class for settlement purposes.  Thus, for all of the reasons stated in Plaintiffs' motion for preliminary approval (incorporated herein by reference), Plaintiffs respectfully request that the Court certify the Class for purposes of carrying out the Settlement pursuant to Rules 23(a) and 23(b)(3), and appoint Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.

### E. Notice to the Class Satisfied the Requirements of Rule 23, Complies with Due Process, and Is Reasonable

The notice provided to the Class satisfied Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be directed "in a reasonable manner to all class members who would be bound" by the settlement (Fed. R. Civ. P. 23(e)(1)(B)), and that the notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'"  *Bogan*, 492 F.2d at 382.

Both the substance of the Court-approved Notice and the method of dissemination to potential Class Members satisfy these requirements.  The notice program was carried out by a nationally-recognized claims administrator, Verita Global.  The Notice contains the information required by Rule 23(c)(2)(B), including: (i) an explanation of the nature of the Litigation and claims asserted; (ii) the definition of the Class; (iii) a description of the claims, issues, and defenses in the Litigation and the key terms of the Settlement, including the consideration amount and the releases

- 16 -

to be given; (iv) the Plan of Allocation; (v) the Settling Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Class Members' right to enter an appearance through an attorney and to request exclusion from the Class and to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses, as well as the time and manner for requesting exclusion and filing objections; and (viii) notice of the binding effect of a judgment on Class Members.  The Notice also provides instructions for submitting a Proof of Claim to be eligible to receive a distribution from the Net Settlement Fund, relevant deadlines, and contact information, including a dedicated toll-free telephone hotline and a link to the Settlement website.

In accordance with the Court's Preliminary Approval Order, Verita Global has emailed or mailed by first-class mail a total of 50,849 Postcard Notices to potential Class Members and their nominees.  *See* Murray Decl., ¶11.  In addition, Verita Global caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire* on January 15, 2026.  *Id.*, ¶12.  Copies of the Notice, Proof of Claim, Preliminary Approval Order, and Stipulation were made available on the Settlement website maintained by Verita Global, www.MercurySecuritiesSettlement.com.  *Id.*, ¶14.  This combination of individual emailed and first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in a widely circulated business publication, transmitted over a newswire, and set forth on a dedicated website, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Stockeryale*, 2007 WL 4589772, at \*3 (finding that due process was satisfied where notice mailed by first class mail to all class members who could be identified with reasonable effort and summary notice was published once in *Investor's Business Daily* and over *PR Newswire*); *Cabletron*, 239 F.R.D. at 35-36 (combination of individually mailed notice packets,

published notice in *The Wall Street Journal*, a dedicated website, and a dedicated phone hotline met the notice standard). *See also Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *7 (D.R.I. Feb. 17, 2016).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) grant final approval of the Settlement; (ii) certify the Class for the purpose of settlement; (iii) approve the proposed Plan of Allocation; (iv) find that notice to the Class satisfied due process; and (v) enter the proposed Order Approving Plan of Allocation and proposed Final Judgment.[6]

DATED:  April 7, 2026                    Respectfully submitted,

> ROBBINS GELLER RUDMAN
>   & DOWD LLP
> SAMUEL H. RUDMAN (*pro hac vice*)
> MICHAEL G. CAPECI (*pro hac vice*)
> MAGDALENE ECONOMOU (*pro hac vice*)
> JONATHAN A. OHLMANN (*pro hac vice*)
>
>
>                    s/ Michael G. Capeci
>                    MICHAEL G. CAPECI
>
> 58 South Service Road, Suite 200
> Melville, NY  11747
> Telephone:  631/367-7100
> 631/367-1173 (fax)
> srudman@rgrdlaw.com
> mcapeci@rgrdlaw.com
> meconomou@rgrdlaw.com
> johlmann@rgrdlaw.com

---

[6]    Lead Counsel will submit proposed orders with Plaintiffs' reply submission on May 5, 2026, after the April 21, 2026 deadline for Class Members to object has passed.

4903-1456-4765.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (*pro hac vice*)
LAURA ANDRACCHIO (*pro hac vice*)
ASHLEY M. PRICE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
landracchio@rgrdlaw.com
aprice@rgrdlaw.com

GRANT & EISENHOFER P.A.
KARIN E. FISCH (*pro hac vice*)
CECILIA E. STEIN (*pro hac vice*)
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone:  646/722-8500
646/722-8501 (fax)
kfisch@gelaw.com
cstein@gelaw.com

Lead Counsel for Lead Plaintiff

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Local Counsel

- 19 -

KRAW LAW GROUP
GEORGE M. KRAW
LISA SCHWANTZ
605 Ellis Street, Suite 200
Mountain View, CA  94043
Telephone:  650/314-7800
650/314-7899 (fax)
gkraw@kraw.com
lschwantz@kraw.com

Additional Counsel for Lead Plaintiff

ABRAHAM, FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
JACK G. FRUCHTER
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone:  212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
jfruchter@aftlaw.com

Additional Counsel for University of Puerto Rico
Retirement System

- 20 -

4903-1456-4765.v2

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 7, 2026.

s/ Michael G. Capeci

MICHAEL G. CAPECI