UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NORTH COLLIER FIRE CONTROL AND RESCUE DISTRICT FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | No. 1:23-cv-13065-WGY <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND |
| vs. <br><br> MERCURY SYSTEMS, INC., et al., | ) ) ) ) | EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |
| Defendants. | ) ) ) | |

4917-0451-7533.v2

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ...............................................................................1

II.     HISTORY AND BACKGROUND OF THE LITIGATION.............................................3

III.    ARGUMENT.........................................................................................................3

      A.      Lead Counsel Should Receive an Award of Attorneys' Fees from the Settlement Fund ............................................................................................3

      B.      The Court Should Award Attorneys' Fees Using the Percentage-of-the-Fund Method.................................................................................................4

      C.      Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable.....................................................7

           1.      The Amount of the Recovery and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee ...........8

           2.      The Skill and Experience of Counsel Support the Requested Fee...............8

           3.      The Complexity and Duration of the Litigation Support the Requested Fee ...............................................................................................10

           4.      The Risk of Non-Payment Was Extremely High in This Case..................11

           5.      The Amount of Time Devoted to the Litigation by Lead Counsel Supports the Requested Fee .....................................................................12

           6.      Awards in Similar Cass Support the Requested Fee..................................14

           7.      Public Policy Considerations Support the Requested Fee .........................14

           8.      The Endorsement of Plaintiffs and the Reaction of the Class Support the Requested Fee.........................................................................14

      D.      The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained ..........................................................................15

      E.      The Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) of the PSLRA Are Reasonable..........................................................................16

IV.     CONCLUSION...................................................................................................18

4917-0451-7533.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ahearn v. Credit Suisse First Bos. LLC*,
No. 03-cv-10956 (JLT) (D. Mass. June 7, 2006)......................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)..............................................................................................................4, 14

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*,
809 F.3d 78 (1st Cir. 2015)....................................................................................................9, 15

*Blum v. Stenson*,
465 U.S. 886 (1984)....................................................................................................................4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................................................................................................................3

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)..............................................................10

*Cohen v. Brown Univ.*,
2001 WL 1609383 (D.N.H. Dec. 5, 2001)................................................................................13

*Courtney v. Avid Tech., Inc.*,
2015 WL 2359270 (D. Mass. May 12, 2015) ................................................................7, 16, 17

*Dahhan v. Ovascience, Inc.*,
No. 1:17-cv-10511-IT (D. Mass. Dec. 20, 2022)................................................................7, 17

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
989 F. Supp. 375 (D. Mass. 1997) .........................................................................................5, 8

*Ford v. Takeda Pharms, U.S.A., Inc.*,
2023 WL 3679031 (D. Mass. Mar. 31, 2023)......................................................................13, 16

*Gordan v. Mass. Mut. Life Ins. Co.*,
2016 WL 11272044 (D. Mass. Nov. 3, 2016) ...................................................................5, 12, 13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).....................................................................................................................8

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).............................................................................4

4917-0451-7533.v2

**Page**

*Hill v. State St. Corp.*,
2015 WL 127728 (D. Mass. Jan. 8, 2015) ........................................................ *passim*

*In re Ariad Pharms., Inc. Sec. Litig.*,
No. 1:13-cv-12544-WGY (D. Mass. May 10, 2018) .....................................7, 16, 17

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ..............................................................................5

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) ...............................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................................10

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................16

*In re Pegasystems Inc. Sec. Litig.*,
2024 WL 4849656 (D. Mass. Sept. 25, 2024) .....................................................6, 17

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ...................................................................7, 8

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ..........................................................................7, 13

*In re Thirteen Appeals Arising Out of San Juan Dupont
Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) .........................................................................3, 4, 5, 13

*In re TJX Cos. Retail Sec. Breach Litig.*,
584 F. Supp. 2d 395 (D. Mass. 2008) ...................................................................7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ..........................................................3, 4, 13, 14

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................................9

*Luna v. Carbonite, Inc.*,
2024 WL 6470281 (D. Mass. May 15, 2024) ...........................................................6

4917-0451-7533.v2

**Page**

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 17, 2016)........................................................7, 11, 14

*Mo. v. Jenkins by Agyei*,
  491 U.S. 274 (1989)...........................................................................................13

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013)....................................................10

*Roberts v. TJX Cos.*,
  2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...................................................11

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)......................................................9

*Souss v. Banco Santander S.A.*,
  2011 WL 13350165 (D.P.R. June 9, 2011)..........................................................13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007).............................................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005), *superseded by rule as stated in*
  *Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ................................................................................5

*Zametkin v. Fidelity Mgmt. & Rsch. Co.*,
  No. 1:08-cv-10960-MLW (D. Mass. May 11, 2012)...........................................17

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(4) .............................................................................................3, 16, 17
  §78u-4(a)(6) .............................................................................................................5

**SECONDARY AUTHORITIES**

Edward Flores, et al.,
  *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review*
  (NERA Jan. 21, 2026)...........................................................................................6

4917-0451-7533.v2

Court-appointed Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Grant & Eisenhofer P.A. ("G&E," and with Robbins Geller, "Lead Counsel"), respectfully submit this memorandum of law in support of their motion for: (i) an award of attorneys' fees of 25% of the $32,500,000 Settlement Amount; (ii) an award of $381,236.78 for litigation expenses incurred in prosecuting this action; and (iii) payment of $4,013.00 to Plaintiffs, in the aggregate, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.     PRELIMINARY STATEMENT

The parties' $32,500,000 Settlement of this action is a substantial and certain recovery obtained for the Class.  As a percentage of recoverable damages, the Settlement is several times the median percentage recovery for securities cases with similar damages.  It was achieved through the efforts, skill, experience, and effective advocacy of Lead Counsel over the last two-plus years, overcoming significant hurdles posed by Defendants concerning the scope of damages and the size of the Class.  The efforts of Lead Counsel to accomplish this result, explained herein and in contemporaneously filed submissions, include the following:

(a)     Conducting a comprehensive investigation of the events underlying the claims alleged in the Litigation, including, *inter alia*, a review of publicly available information regarding the Defendants;

(b)     Researching the applicable law with respect to Plaintiffs' claims and Defendants' anticipated defenses;

(c)     Drafting the amended complaint;

(d)     Opposing Defendants' motion to dismiss;

---

[1]     Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement, filed on December 1, 2025 (ECF 145) (the "Stipulation"), and the Joint Declaration of Michael G. Capeci and Karin E. Fisch in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Capeci-Fisch Declaration" or "Capeci-Fisch Decl."), submitted herewith.

- 1 -

(e)    Drafting the operative complaint (ECF 102) (the "Complaint");

(f)    Successfully moving for leave to file the Complaint;

(g)    Requesting, negotiating for, and reviewing hundreds of thousands of pages of non-public documents, serving multiple discovery requests, and responding to Defendants' discovery requests;

(h)    Participating in three fact and expert witness depositions, and preparing for numerous others that were scheduled in the weeks immediately following the mediation;

(i)    Consulting with subject matter and damages experts;

(j)    Moving for class certification;

(k)    Preparing a detailed opening mediation statement and reply mediation statement, and participating in a formal arm's-length mediation process before a highly experienced mediator; and

(l)    Negotiating and documenting the Settlement.

*See generally* Capeci-Fisch Decl.

Plaintiffs' Counsel's efforts to date have been without compensation of any kind for their prosecution of this Litigation, which required them to collectively devote over 9,800 hours of billable time and risk more than $381,230 in litigation expenses. The recovery of any fees or expenses has been wholly contingent upon the result achieved. Thus, in accordance with – and even less than – fees awarded in similar actions in this Circuit and throughout the country, Lead Counsel seek a percentage fee of 25% of the Settlement Amount, plus interest earned thereon. As discussed herein and in the Capeci-Fisch Declaration, the method of compensating counsel and the amount requested are justified in light of: (i) the substantial recovery obtained for the Class; (ii) the quality of Lead Counsel's representation; (iii) the substantial time and labor expended by Lead Counsel; (iv) the significant risks presented in the prosecution and settlement of this securities class action under the PSLRA on a contingent basis; (v) the complexity and duration of the Litigation; and (vi) the professional standing of both Lead Counsel and Defendants' Counsel.

Lead Counsel also seek payment of $381,236.78 in expenses and charges incurred in prosecuting the Litigation. As discussed herein, the expenses requested are reasonable in amount and were necessarily incurred for the successful litigation of the case. Finally, Carpenters Fund seeks $1,840.00, North Collier seeks $423.00, and UPRRS seeks $1,750.00 pursuant to 15 U.S.C. §78u-4(a)(4) for their efforts representing the Class in the Litigation. The requested amounts are reasonable and should be awarded.

The Notice described each of the above and the amounts requested herein are each lower than those disclosed in the Notice to the Class. To date, no Class Member has objected to any of these requests.[2]

## II.    HISTORY AND BACKGROUND OF THE LITIGATION

To avoid repetition, Lead Counsel respectfully refer the Court to the accompanying Capeci-Fisch Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the efforts undertaken by Plaintiffs and Lead Counsel during the course of the Litigation, the risks of continued litigation, and other factors supporting the fee and expense request.

## III.   ARGUMENT

### A.    Lead Counsel Should Receive an Award of Attorneys' Fees from the Settlement Fund

The U.S. Supreme Court and the First Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp.

---

[2]    The objection deadline is April 21, 2026. If any timely objections are received, Lead Counsel will address them in a reply memorandum due no later than May 5, 2026.

4917-0451-7533.v2

2d 249, 265 (D.N.H. 2007). Awards of reasonable attorneys' fees from a "common fund" provide compensation that "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *Tyco*, 535 F. Supp. 2d at 265.

The Supreme Court also has emphasized that private securities actions, such as this Litigation, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Department of Justice and the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (noting private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'"). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential: "Such actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005). Accordingly, Lead Counsel should be awarded attorneys' fees from the Settlement Fund.

### B. The Court Should Award Attorneys' Fees Using the Percentage-of-the-Fund Method

The Supreme Court has endorsed the percentage method: "[U]nder the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The First Circuit also has endorsed this method in common fund cases, noting that it is the prevailing method and that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *Thirteen Appeals*, 56 F.3d at 308. "Indeed, there is a 'clear consensus among federal and state courts' that the percentage of fund approach is the more efficient, better reasoned, and

- 4 -

effective method." *Gordan v. Mass. Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016). The percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] . . . is 'less burdensome to administer than the lodestar method,' . . . 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases.'" *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting method "'directly aligns the interests of the class and its counsel'"), *superseded by rule as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023).[3] For these reasons, courts assessing fee awards in securities fraud class actions generally apply the percentage method, with or without consideration of lodestar as a "cross-check." *See, e.g.*, *Hill v. State St. Corp.*, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015) (noting that lodestar crosscheck is sometimes used but would not be "particularly helpful or appropriate" to assess fees in that securities fraud action).

Indeed, one of the distinct advantages of the percentage-of-the-fund method is that it directly incorporates the recovery value into the fee calculation. *See Duhaime*, 989 F. Supp. at 377 (noting advantage of percentage method is that "it focuses 'on result, rather than process, which better approximates the workings of the marketplace'" and "the greater the value secured for the class, the greater the fee earned by class counsel").

Lead Counsel demonstrated a great deal of skill in achieving a settlement at this level in this particular case. As a percentage of reasonably recoverable damages, the Settlement falls in between 7% (assuming that Plaintiffs' full damages theory survived trial and the inevitable appeals) and 32%

---

[3]  The PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6). Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005).

4917-0451-7533.v2

(assuming that Defendants' class certification arguments regarding the removal of certain large shareholders from the Class and shortening the relevant Class Period were accepted by the Court). Even the low end of this range is several multiples of the median percentage recovery of 2.1% for securities cases settled between 2016 and 2025 with investor losses of between $400 million and $599 million (and the high end is many multiples of the median percentage recovery of 3.2% for investor losses of between $100 million and $199 million).  Edward Flores, et al., *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review*, at 27, fig. 23 (NERA Jan. 21, 2026) ("NERA Report") (attached as Ex. A to the Capeci-Fisch Decl.).  Furthermore, as explained in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and the Capeci-Fisch Declaration, the favorable nature of this Settlement is supported by the fact that in 2025, the median settlement value for securities cases was $17 million, the largest median settlement value over the 2016 to 2025 period.  *Id.* at 24.  This Settlement is nearly double that median settlement value – a very favorable recovery in light of Defendants' countervailing legal arguments.  Capeci-Fisch Decl., ¶¶122-146.  Moreover, the Settlement here is all cash, not dependent upon the number of claims made, and there is no reversion to Defendants.  Hundreds – if not thousands – of Class Members will now receive compensation that was otherwise uncertain when the Litigation began.

The requested 25% fee is both reasonable under the circumstances, well within (if not below) the typical range of percentage fees awarded in the First Circuit, and below the amount provided in the Notice to the Class.  *See, e.g.*, *In re Pegasystems Inc. Sec. Litig.*, 2024 WL 4849656 (D. Mass. Sept. 25, 2024) (Young, J.) (awarding 30% of $35 million settlement, plus expenses, with accrued interest earned on both amounts); *Luna v. Carbonite, Inc.*, 2024 WL 6470281, at *1 (D. Mass. May 15, 2024) (awarding 33-1/3% of $27.5 million settlement, plus expenses, with accrued interest

- 6 -

earned on both amounts); *Dahhan v. Ovascience, Inc.*, No. 1:17-cv-10511-IT, ECF 210, ¶4 (D.

Mass. Dec. 20, 2022) (awarding 33-1/3% of $15 million settlement, plus expenses, with accrued

interest earned on both amounts); *In re Ariad Pharms., Inc. Sec. Litig.*, No. 1:13-cv-12544-WGY,

ECF 257, ¶3 (D. Mass. May 10, 2018) (Young, J.) (awarding 25% of $3.5 million settlement, plus

expenses, with accrued interest earned on both amounts); *Courtney v. Avid Tech., Inc.*, 2015 WL

2359270, at *1 (D. Mass. May 12, 2015) (Young, J.) (awarding 30% of $2.595 million settlement,

plus expenses, with accrued interest earned on both amounts).

## C.    Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable

While "[t]he First Circuit has not endorsed a specified set of factors to be used in determining

whether a fee request is reasonable," *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass.

2005) (Young, J.), courts in this Circuit consider several factors when considering an award of

attorneys' fees, including:

> "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any."

*Hill*, 2015 WL 127728, at *17 (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp.

2d 448, 458 (D.P.R. 2011)); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *8 (D.R.I. Feb.

17, 2016) (same).  Courts have also considered whether plaintiffs support the requested fee and the

class's reaction.  *See Hill*, 2015 WL 127728, at *19-*20; *In re TJX Cos. Retail Sec. Breach Litig.*,

584 F. Supp. 2d 395, 401 (D. Mass. 2008) (considering "the reaction of the class members to the

settlement and proposed attorneys' fees" as one of the relevant factors).  As set forth below, all of

these factors weigh strongly in favor of finding that the requested fee award of 25% of the

Settlement Fund is reasonable.

### 1. The Amount of the Recovery and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee

Courts have consistently recognized that the result achieved is the most important factor to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *see also Puerto Rican Cabotage*, 815 F. Supp. 2d at 458 ("[T]he net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award."). The Settlement Fund of $32,500,000 has been obtained through the diligent efforts of Lead Counsel and eliminates the risk of trial and appeals.

Indeed, one of the distinct advantages of the percentage-of-the-fund method is that it directly incorporates the recovery value into the fee calculation. *See Duhaime*, 989 F. Supp. at 377 (noting advantage of percentage method is that "it focuses 'on result, rather than process, which better approximates the workings of the marketplace'" and "the greater the value secured for the class, the greater the fee earned by class counsel"). Furthermore, as explained above, the Settlement represents a significant percentage of recoverable damages, between 7% and 32% – well above the median percentage for securities cases that settled in 2025. The favorable nature of this Settlement is also supported by comparing median settlement values in recent securities class action settlements. The Settlement Amount is nearly double the median settlement in 2025, an admirable result under the circumstances presented. *See* NERA Report at 24; Capeci-Fisch Decl., ¶¶122-146.

### 2. The Skill and Experience of Counsel Support the Requested Fee

The prosecution and management of a complex national securities class action requires unique legal skills and abilities. As demonstrated by their respective firm résumés, Robbins Geller and G&E each have experienced and skilled practitioners in the securities class action field, and each

4917-0451-7533.v2

have a long and successful track record in such cases.  Lead Counsel's willingness and ability to undertake complex and difficult cases such as this, and their dedication to the Litigation, added valuable leverage to the settlement negotiations.  *See Hill*, 2015 WL 127728, at *17 (noting plaintiffs' counsel's "experience and expertise contributed to the achievement of the Settlement"); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

The quality of the work performed by Robbins Geller and G&E in attaining the Settlement should also be evaluated in light of the quality of the opposition.  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys . . . consistently put plaintiffs' counsel through the paces.  All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion.").  Here, throughout the Litigation, Defendants have been represented by highly experienced lawyers from Ropes & Gray and Nutter (and Skadden before them), international and well-respected law firms known for their vigorous defense in complex cases.

Notwithstanding this formidable opposition, Lead Counsel developed a case that was sufficiently strong to persuade Defendants to settle the Litigation on terms highly favorable to the Class.  *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.").  Accordingly, this factor further supports the requested attorneys' fees.

4917-0451-7533.v2

### 3.    The Complexity and Duration of the Litigation Support the Requested Fee

Courts have long recognized that securities class actions are notoriously complex and difficult to prove, and this Litigation was no exception. *See, e.g.*, *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at \*6 (C.D. Cal. July 9, 2013) (citation modified) ("Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) (citation modified) (recognizing securities class litigation is "notably difficult and notoriously uncertain"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Throughout the over two years of this Litigation, many complex legal and factual issues were raised. Lead Counsel undertook a comprehensive factual investigation and legal analysis to draft the amended complaint, oppose Defendants' motion to dismiss, draft the Complaint, and successfully move for leave to file the Complaint. Capeci-Fisch Decl., ¶¶22-42. Once the PSLRA-mandated discovery stay was lifted following the Court's ruling on Plaintiffs' motion for leave to file the Complaint, Lead Counsel propounded discovery requests on Defendants and numerous third parties. *Id.*, ¶¶43-109. The fruits of this discovery included over 400,000 pages of documents. *Id.*, ¶¶100-102. Plaintiffs moved for class certification, which Defendants vigorously opposed. *Id.*, ¶¶112-116. The motion was undecided at the time the Settling Parties reached the proposed Settlement. *Id.*, ¶117. Lead Counsel also retained experts, one of whom provided an opening report and sat for his deposition in connection with Plaintiffs' class certification motion. *Id.*, ¶¶118-121. In connection

- 10 -

4917-0451-7533.v2

with the mediation, Lead Counsel drafted opening and reply mediation statements that set out Plaintiffs' strongest evidence based on the discovery obtained. *Id.*, ¶148.

Confronting Lead Counsel at every turn were Defendants' compelling arguments in connection with their motion to dismiss, their opposition to Plaintiffs' motion for leave to file the Complaint, their opposition to class certification, and their mediation statements. These arguments included that Defendants had made no materially false statements or material omissions, had not omitted any information they had a duty to disclose, and that Plaintiffs could not establish scienter or loss causation. *See id.*, ¶¶122-146. Defendants also argued that if the Class suffered any damages, they were significantly lower than Plaintiffs' estimates. *Id.*, ¶¶139-144. These, and many other matters, required substantial attention by Lead Counsel, who needed to analyze carefully the factual record and relevant law during this multi-year Litigation. Accordingly, the complexity and duration of this Litigation support the conclusion that the requested fee is fair and reasonable.

### 4.      The Risk of Non-Payment Was Extremely High in This Case

In a case undertaken on a contingent fee basis, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts v. TJX Cos.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at *18 ("consider[ing] . . . contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class"). Where, as here, plaintiffs' counsel "undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *CVS*, 2016 WL 632238, at *9.

4917-0451-7533.v2

As noted throughout the Capeci-Fisch Declaration, from the outset of this Litigation in December 2023, it was apparent that Lead Counsel faced significant challenges to establishing liability and damages on behalf of Plaintiffs. Thus, there was a significant risk that the case could be litigated for many additional years, yet still result in no recovery for the Class and no payment to counsel. Lead Counsel faced substantial risks and uncertainties in, among other things, proving that Defendants' alleged misstatements were materially false and misleading and made with scienter, as required by the federal securities laws. There was also a significant risk that Defendants, through expert evidence, could successfully challenge loss causation, by establishing that Mercury's stock price decline was caused by something other than Defendants' allegedly false and misleading statements. And Plaintiffs' class certification motion was pending at the time the Settlement was reached. Even if Plaintiffs had prevailed on the motion, a Federal Rule of Civil Procedure 23(f) petition remained a significant risk, and Defendants could have moved to decertify the class before trial. Therefore, in the absence of the Settlement, the Class faced a substantial litigation risk with no guarantee of a greater, or any, recovery. Despite these very real risks, Lead Counsel worked vigorously to achieve a significant result for the Class, supporting the requested fee.

### 5.    The Amount of Time Devoted to the Litigation by Lead Counsel Supports the Requested Fee

The extensive time and effort expended by Lead Counsel in prosecuting the Litigation and achieving the Settlement since December 2023 also establish that the requested fee is justified and reasonable. *See Hill*, 2015 WL 127728, at *19. The Capeci-Fisch Declaration details the substantial efforts of Lead Counsel in prosecuting Plaintiffs' claims. While a lodestar crosscheck is not required, *see id.* at *17, "a lodestar analysis may be performed as a cross-check to ensure that the percentage award is fair and reasonable." *Gordan*, 2016 WL 11272044, at *2. Courts considering lodestar frequently note that lodestar multiples of 1.0 to 4.0 are generally considered appropriate.

- 12 -

4917-0451-7533.v2

*See, e.g.*, *Relafen*, 231 F.R.D. at 82 (approving settlement with 2.02 lodestar multiple). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307). In this case, the lodestar method, whether used directly or as a crosscheck on the percentage method, strongly demonstrates the reasonableness of the requested fee.

Here, Plaintiffs' Counsel collectively spent over 9,800 hours of attorney and other professional support staff prosecuting the Litigation. *See generally* Fee Declarations. Based on counsel's rates,[4] their collective lodestar is $8,074,482.50.[5] Lead Counsel's requested attorneys' fees therefore represent no multiplier to counsel's lodestar, *i.e.*, a lodestar multiplier of 1.0. *See Ford*, 2023 WL 3679031, at *2 (2.41 multiplier "well within the range of multipliers approved by district courts in the First Circuit"); *Gordan*, 2016 WL 11272044, at *3 (in awarding one-third fee, court concluded the 3.66 "multiplier is eminently reasonable and is within a range approved by[] numerous other courts"). The substantial time and effort devoted to this Litigation was critical in

---

[4]    This Court recently concluded that the following "national hourly rates" were reasonable in complex ERISA litigation in 2023: "$1,370 for attorneys with at least 25 years of experience; $1,165 for attorneys with 15-24 years of experience; $840 for attorneys with 5-14 years of experience; $635 for attorneys with 0-4 years of experience; and $425 for paralegals and Law clerks." *Ford v. Takeda Pharms, U.S.A., Inc.*, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (Young, J.). Lead Counsel's rates here are consistent with these accepted hourly rates. *See generally* Fee Declarations.

[5]    The Supreme Court and courts in this Circuit have approved the use of current hourly rates in calculating the base lodestar figure as a means of compensating for the delay in receiving payment and the loss of interest. *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *Cohen v. Brown Univ.*, 2001 WL 1609383, at *1 (D.N.H. Dec. 5, 2001); *Souss v. Banco Santander S.A.*, 2011 WL 13350165, at *12 (D.P.R. June 9, 2011).

4917-0451-7533.v2

obtaining the favorable result achieved by the Settlement, and confirms that the fee request here is reasonable.[6]

### 6.    Awards in Similar Cass Support the Requested Fee

As discussed above, Lead Counsel's requested fee of 25% of the Settlement Fund is well within the range of fee awards in class action cases in this Circuit.  *See* §III.A.-B.  Thus, this factor strongly supports the reasonableness of the requested fee.

### 7.    Public Policy Considerations Support the Requested Fee

Public policy supports rewarding counsel for prosecuting securities class actions, especially where, as here, "counsel's dogged efforts – undertaken on a wholly contingent basis – result in satisfactory resolution for the class."  *CVS*, 2016 WL 632238, at *9 (citing *Tyco*, 535 F. Supp. 2d at 270).  As the Supreme Court has emphasized, private securities actions such as this provide "a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action."  *Bateman*, 472 U.S. at 310.

### 8.    The Endorsement of Plaintiffs and the Reaction of the Class Support the Requested Fee

Lead Plaintiff Carpenters Fund was appointed pursuant to the relevant provisions of the PSLRA.  As set forth in Plaintiffs' respective declarations, Plaintiffs carefully oversaw the prosecution and resolution of this Litigation, and had a sound basis for assessing the reasonableness of the fee request.  All Plaintiffs fully support and approve the request.  *See* Declaration of William Feyling on behalf of Carpenters Fund ("Feyling Decl.") (¶¶6-7); Declaration of Thel Whitley on

---

[6]    Moreover, the legal work on this action will not end with the Court's approval of the proposed Settlement.  Additional hours and resources already have been, and necessarily will continue to be, expended assisting Class Members with their Proof of Claim and Release forms, overseeing the claims process, and responding to Class Member inquiries.

behalf of North Collier ("Whitley Decl.") (¶¶10-11); Declaration of Laura Santa Sànchez on behalf of UPRRS ("Sànchez Decl.") (¶¶8-9), submitted herewith.

Furthermore, the reasonableness of the requested fee is supported by the reaction of the Class.  *See, e.g.*, *Hill*, 2015 WL 127728, at \*19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees.").  As of April 2, 2026, the Claims Administrator has disseminated a total of 50,849 Postcard Notices.  *See* Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date, ¶¶4-11, submitted herewith.  To date, no Class Member has objected to any portion of the Settlement or to the 30% fee of which the Class was advised in the Postcard Notice and Notice – more than the 25% fee now requested herein – which lends further support to the requested fee.[7]  *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 351 (finding "overwhelmingly positive" reaction of class to settlement and "quite low number of opt-outs" weighed in favor of requested fee).

In sum, Lead Counsel respectfully submit that the 25% fee is reasonable here and should be awarded.

### D.    The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained

Lead Counsel's fee application includes a request for litigation expenses and charges that were reasonable and necessary to the prosecution of the Litigation.  Where, as here, attorneys create a common fund for the benefit of a class, they are entitled to reasonable litigation expenses from the fund.  *See, e.g.*, *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the

---

[7]    Lead Counsel will address any fee-related objections that are received in their reply papers, to be filed with the Court on May 5, 2026.

4917-0451-7533.v2

benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."); *Ford*, 2023 WL 3679031, at \*3.  In the Notice and Postcard Notice, the Class was informed that Lead Counsel would ask the Court for an award of litigation expenses not to exceed $425,000, plus interest, which is an amount above the $381,236.78, plus interest, now requested.

Lead Counsel respectfully submit that these expenses were reasonably and necessarily incurred in prosecuting this Litigation and should be awarded from the Settlement Fund.  *See, e.g.*, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund."); *see also Avid Tech.*, 2015 WL 2359270, at \*1 (this Court awarding expenses of $505,992.62, plus interest); *Ariad Pharms.*, ECF 257, ¶3 (this Court awarding expenses of $288,846.02, plus interest).  The Fee Declarations submitted herewith provide itemized schedules of the expenses and charges incurred by each firm.  The expenses listed on those schedules are ones that are necessarily incurred in litigation and routinely charged to clients billed by the hour by each firm.

To date, no Class Member has objected to these requested expenses.  Thus, Lead Counsel respectfully request payment for these reasonable and necessary expenses.

### E.    The Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) of the PSLRA Are Reasonable

The Class was also advised that Plaintiffs might ask the Court to approve awards not to exceed $36,000 (in the aggregate) in connection with their representation of the Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly

- 16 -

relating to the representation of the class" may be made "to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4); *see also Pegasystems*, 2024 WL 4849656, at *2 (this Court awarding total of $13,947.30 to lead plaintiffs); *Ariad Pharms.*, ECF 257, ¶4 (this Court awarding a total of $61,450 to lead plaintiffs); *Avid Tech.*, 2015 WL 2359270, at *1 (this Court awarding $10,000 to one lead plaintiff); *Ovascience*, ECF 210, ¶9 (awarding $10,000 to lead plaintiff); *Zametkin v. Fidelity Mgmt. & Rsch. Co.*, No. 1:08-cv-10960-MLW, ECF 115, ¶16 (D. Mass. May 11, 2012) (awarding $14,910 to lead plaintiff); *Ahearn v. Credit Suisse First Bos. LLC*, No. 03-cv-10956 (JLT), ECF 82, ¶19 (D. Mass. June 7, 2006) (awarding total of $35,000 to two lead plaintiffs).  The congressional record makes clear the intended purpose of plaintiff awards: "These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, at 731 (1995).

As set forth in their declarations, Plaintiffs have effectively fulfilled their obligations as representatives of the Class, complying with the demands placed upon them, and providing valuable assistance to Lead Counsel.  For example, Plaintiffs: (i) located and produced documents; (ii) reviewed Defendants' discovery requests and assisted in providing responses; (iii) reviewed filings provided by counsel; (iv) reviewed court orders and hearing transcripts; (v) discussed case strategy with counsel; (vi) discussed settlement status; and (vii) were consulted during the mediation process. *See* Feyling Decl., ¶¶3-5; Whitley Decl., ¶¶5-8; and Sànchez Decl., ¶¶5-7.  These actions are precisely the type that support reimbursement to representative parties under the PSLRA.

Thus, in recognition of Plaintiffs' time and effort expended for the benefit of the Class, Lead Counsel respectfully request an award of $1,840.00 to Carpenters Fund, an award of $423.00 to

4917-0451-7533.v2

North Collier, and an award of $1,750.00 to UPRRS. These amounts are reasonable and justified under the PSLRA based on each of the Plaintiff's extensive involvement in the Litigation. Therefore, Lead Counsel and Plaintiffs respectfully submit that these awards should be granted.

## IV.    CONCLUSION

For the reasons set forth above, Lead Counsel respectfully request that the Court enter an Order awarding them fees in the amount of 25% of the Settlement Amount, plus accrued interest; and $381,236.78 in litigation expenses, plus accrued interest. Lead Counsel further request that Plaintiffs be awarded a total of $4,013.00 in connection with their representation of the Class.[8]

DATED:  April 7, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (*pro hac vice*)
MICHAEL G. CAPECI (*pro hac vice*)
MAGDALENE ECONOMOU (*pro hac vice*)
JONATHAN A. OHLMANN (*pro hac vice*)


                          s/ Michael G. Capeci
                          MICHAEL G. CAPECI

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com
meconomou@rgrdlaw.com
johlmann@rgrdlaw.com

---

[8]    Lead Counsel will submit proposed orders with Plaintiffs' reply submission on May 5, 2026, after the April 21, 2026 deadline for Class Members to object has passed.

- 18 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (*pro hac vice*)
LAURA ANDRACCHIO (*pro hac vice*)
ASHLEY M. PRICE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
landracchio@rgrdlaw.com
aprice@rgrdlaw.com

GRANT & EISENHOFER P.A.
KARIN E. FISCH (*pro hac vice*)
CECILIA E. STEIN (*pro hac vice*)
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone:  646/722-8500
646/722-8501 (fax)
kfisch@gelaw.com
cstein@gelaw.com

Lead Counsel for Lead Plaintiff

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Local Counsel

- 19 -

KRAW LAW GROUP
GEORGE M. KRAW
LISA SCHWANTZ
605 Ellis Street, Suite 200
Mountain View, CA  94043
Telephone:  650/314-7800
650/314-7899 (fax)
gkraw@kraw.com
lschwantz@kraw.com

Additional Counsel for Lead Plaintiff

ABRAHAM, FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
JACK G. FRUCHTER
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone:  212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
jfruchter@aftlaw.com

Additional Counsel for University of Puerto Rico
Retirement System

- 20 -

4917-0451-7533.v2

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 7, 2026.

s/ Michael G. Capeci

MICHAEL G. CAPECI